William Most (CA # 279100)
AQUA TERRA AERIS LAW GROUP
828 San Pablo Ave., Ste. 115B
Albany, CA 94706
T: (650) 465-5023
williammost@gmail.com

Garret S. DeReus (LA # 35105)
Andrew D. Bizer (LA # 30396)
Jacqueline K. Hammack (MS # 104556)
BIZER & DEREUS, LLC
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996
gdereus@bizerlaw.com
andrew@bizerlaw.com
jhammack@bizerlaw.com

*Attorneys for Plaintiffs Scott Crawford and Jarvis Jernigan, Jr.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT CRAWFORD and JARVIS JERNIGAN, JR., <br><br> Plaintiffs, <br><br> v. <br><br> UBER TECHNOLOGIES, INC. and RASIER, LLC, <br><br> Defendants. | Case No.: <br><br> Judge: <br><br> Magistrate: |

**COMPLAINT AND JURY DEMAND**

"I now lift my pen to sign this Americans with Disabilities Act and say: Let the shameful wall of exclusion finally come tumbling down. God bless you all."

- President George H. W. Bush, July 26, 1990

1                                                                                        COMPLAINT

## I. INTRODUCTION

1. Scott Crawford and Jarvis Jernigan, Jr., are persons with disabilities who live in Jackson, Mississippi and its surrounding suburbs. Both Scott and Jarvis have multiple sclerosis and use wheelchairs to get from place to place. They can do practically everything a non-disabled person can do with the appropriate accommodations for their disabilities – work, travel, and enjoy their lives. Neither of them, however, is able to drive. As a result, they rely on buses, taxis, and other services to get around the Jackson metro area.

2. Defendants Uber Technologies, Inc. and Rasier, LLC (collectively, "Uber") provide a mobile-phone app service that allows users to call a car to drive them from point A to point B for a fee. The app also allows people who own cars to sign up as drivers to provide those rides.

3. In some cities, Uber has options for disabled users. For example, if a user is in San Francisco, Portland, or Washington, D.C., they are shown an icon in the Uber app for "Uber Access." By selecting that icon, those users shown options – UberASSIST and/or UberWAV. UberASSIST allows a person with a disability to hail a driver who has been specifically trained to assist riders into vehicles and who can accommodate folding wheelchairs, walkers, and scooters. UberWAV allows a person with a disability to hail a driver with a wheelchair-accessible vehicle.

4. But Uber does not make *any* Uber Access program available to Jackson users – even though Jackson has a metro area population nearly as large as Portland or Washington, D.C.

5. As a result, persons with disabilities in Jackson have no ability to call a wheelchair accessible vehicle or a specially trained driver through the Uber app. Even if there are drivers on the road who have such a vehicle or training, there is no way for Jackson users with a disability to find a trained driver or accessible vehicle through the app. For this reason, Scott and Jarvis are excluded from Uber's services.

6. Under the Americans With Disabilities Act, Uber is required to make reasonable modifications to its services, provide auxiliary aids and services, and remove barriers that deter persons with disabilities. Uber is plainly able to do these things – as evidenced by the fact that they offer Uber Access elsewhere. Furthermore, Uber's ability to revise their app is evident by their periodic special promotions in which they alter the app to connect users to puppies, cake, and donuts for a single day. Despite their clear ability to alter the app, defendants have chosen not to provide any wheelchair-accessible services in Jackson, Mississippi.

7. As such, Uber has violated their legal obligations under the Americans With Disabilities Act ("ADA"), 42 U.S.C. Section 12181, *et seq.*, the California Disabled Persons Act, California Civil Code § 54 *et seq*. ("CDPA"), and Cal. Civ. Code Section 55 *et seq*.

8. According to the U.S. Department of Justice, Title III lawsuits over inaccessible transportation go "to the very heart of the ADA's goals 'to assure equality of opportunity, full participation, independent living, and economic self-sufficiency' for individuals with disabilities."[1] Scott and Jarvis seek here to vindicate the promises of federal and state law.

## II. JURISDICTION AND PARTIES

9. Jurisdiction: This is an action for relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. § 12181 *et seq*. This Court is vested with original jurisdiction pursuant to 28 U.S.C. § 1331 and 1343. This court is vested with supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 as this claim arises out of the same case or controversy as the federal claim.

10. Intradistrict Assignment: Because the claims described *infra* arose in the County of San Francisco, this case should be assigned to the San Francisco or Oakland Division of the Northern District of California per Local Rule 3-2(d).

---

[1] *National Federation of the Blind of California v. Uber Technologies, Inc.*, N. D. Cal. 14-cv-4086, R. Doc. 29 at 4.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants are headquartered in San Francisco, California.

12. **Plaintiff SCOTT CRAWFORD** is a citizen and resident of Jackson, Mississippi. He uses a wheelchair for mobility. He is disabled within the meaning of the ADA. He requires wheelchair accessible vehicles for transportation or other reasonable accommodations such as assistance with storing his wheelchair. He uses a motorized wheelchair that cannot be folded into the trunk of a car.

13. **Plaintiff JARVIS JERNIGAN, JR.** is a citizen and resident of Clinton, Mississippi, in the Jackson metro area. He uses a wheelchair or a scooter for mobility. He is disabled within the meaning of the ADA. He requires wheelchair accessible vehicles for transportation or other reasonable accommodations such as assistance with storing his wheelchair. He uses a motorized wheelchair and a motorized scooter, neither of which can be folded into the trunk of a car.

14. **Defendant UBER TECHNOLOGIES, INC.** is a foreign corporation, organized under the laws of the State of Delaware, with its principal place of business located in San Francisco, California. Uber Technologies, Inc.'s subsidiary, Rasier, LLC is registered with the Mississippi Secretary of State as business ID number 1050810.

15. **Defendant RASIER, LLC** is a foreign corporation, organized under the laws of the State of Delaware, with its principal place of business located in San Francisco, California. Rasier, LLC is registered with the Mississippi Secretary of State as business ID number 1050810.

16. Together, Defendants provide an extremely popular vehicles-for-hire service whereby Uber drivers pick up customers and provide them with transportation in an automobile. Defendants do not provide vehicles-for-hire services to mobility-impaired consumers in Jackson who require wheelchair-accessible transportation vehicles or other accommodating services.

## III.   FACTS

<u>Plaintiffs Are Unable to Use Defendants' Jackson App in Its Current Form</u>

17. Defendants pioneered the vehicle-for-hire market across the United States. Anyone with access to a smartphone can request travel services from Defendants. Defendants' customers use a smartphone application to locate, schedule, and pay for their travel. Consumers enter into contracts and business relationships by contacting Defendants via electronic notification using an application downloaded to their smartphone (hereinafter known as the "Uber Application"). Upon receipt of a request from a customer, Defendants then dispatch a driver and vehicle to pick up the customer for transport to their desired location. Through use of the Uber Application, consumers agree to pay for the services with a credit card via their smartphone. These charges may include safety fees, municipal fees, and other fees.

18. SCOTT CRAWFORD and JARVIS JERNIGAN, JR. desire service from vehicles for hire to run errands, attend community meetings, reach medical appointments, access medical services, engage in recreational activities, and to participate in civic engagement events. Sometimes, Plaintiffs are able to utilize public transportation services or private medical transportation services. Taxi services in the Jackson metro area are generally not accessible to wheelchair users such as Plaintiffs.

19. Neither SCOTT CRAWFORD nor JARVIS JERNIGAN, JR. can successfully use Defendants' application because it has completely failed to provide a button, option, or icon on its Uber Application for the Jackson metro market which would allow a wheelchair user to summon an accessible vehicle.

20. Plaintiffs SCOTT CRAWFORD and JARVIS JERNIGAN, JR. are presently aware that if they tried to install and use the Uber Application that they would experience serious difficulty accessing the goods and utilizing the services offered by that service as a result of

Defendants' (1) failure to provide a button, option, or icon which provides access to an accessible vehicle, (2) failure to provide auxiliary aids and services necessary to allow full use and enjoyment of its transportation services, and (3) failure to ensure that a minimum number of accessible vehicles in Defendants' fleet are wheelchair-accessible.

21. SCOTT CRAWFORD and JARVIS JERNIGAN, JR. desire to use the Uber Application, but fear that they will experience serious difficulty in utilizing the application due to the discrimination detailed herein.

22. Plaintiffs' decisions to go out and participate in public life are based, in part, on whether they will be able to get back home, especially for events after dark. An accessible transportation option through the Uber app would make SCOTT CRAWFORD and JARVIS JERNIGAN, JR. more independent.

23. The ADA violations detailed herein exclude SCOTT CRAWFORD and JARVIS JERNIGAN, JR. from the programs, services, and accommodations offered by Defendants to the public.

24. Both SCOTT CRAWFORD and JARVIS JERNIGAN, JR. plan to and will attempt to use the Uber Application and Defendants' programs, services, and accommodations in the future as patrons should those programs, services, and accommodations become wheelchair-accessible.

25. SCOTT CRAWFORD and JARVIS JERNIGAN, JR. presently fear that they will encounter the mobility-related barriers which exist within Defendants' Uber Application and services.

26. Both SCOTT CRAWFORD and JARVIS JERNIGAN, JR. continue to desire to utilize the Uber Application and service, but will continue to experience serious difficulty until the ADA violations detailed herein are removed.

27. SCOTT CRAWFORD and JARVIS JERNIGAN, JR. intend to and will attempt to utilize Defendants' programs, services, and accommodations in the future, but fear that Defendants will continue to discriminate against them by failing to bring their Uber Application and service into compliance with the requirements of the ADA.

28. Upon information and belief, making the programs, services, and accommodations offered through the Uber Application accessible to persons with mobility-related disabilities is readily achievable, reasonably feasible, and easily accomplished, and would not place an undue burden on Defendants.

29. Upon information and belief, making the programs, services, and accommodations offered through the Uber Application accessible would provide SCOTT CRAWFORD and JARVIS JERNIGAN, JR. with an equal opportunity to participate in, or benefit from, the programs, services, and accommodations which Defendant offers to the general public.

30. SCOTT CRAWFORD and JARVIS JERNIGAN, JR. have been obligated to retain the undersigned counsel for the filing and prosecution of this action. SCOTT CRAWFORD and JARVIS JERNIGAN, JR. are entitled to have their reasonable attorneys' fees, costs, and expenses paid by Defendant, pursuant to 42 U.S.C. § 12205.

<u>Uber's History of App Modifications</u>

31. Upon information and belief, modification of the programs, services, and accommodations offered through the Uber Application could be easily accomplished, as is evidenced by the various promotions and modifications which are commonly made by Defendants during the regular course of their operations.

32. On January 5, 2015, Defendants ran a promotion in New Orleans known as "Uber King Cakes." During this promotion, the Uber Application would display a small King Cake.[2]

---
[2] See Exhibit "A."

1  Customers could select this "King Cake" icon and have drivers deliver a King Cake to them for a
2  fee. This change to Defendants' Uber Application was only present for one day. At the conclusion
3  of the promotion, Defendants restored the Uber Application to its original state.

4  33. On Thursday, August 27, 2015, in Philadelphia, Pennsylvania Defendants ran a
5  promotion known as "UberPUPPIES."[3] During this promotion customers could utilize the Uber
6  Application to have drivers deliver a live Puppy to their office for "15 minutes of puptastic
7  playtime." Upon information and belief, at the end of the "UberPUPPIES" promotion, the Uber
8  Application returned to its original state.

9  34. On April 13, 2016, in New Orleans, Defendants ran a promotion known as
10 "UberDONUTS."[4] From 10:00am to 12:00pm, users could select a donut icon in their Uber app to
11 have a driver deliver two free donuts to their door. At the end of the "UberDONUTS" promotion,
12 the Uber Application returned to its original state.

13 35. The above examples demonstrate how easy it would be for Defendants to provide a
14 wheelchair-accessible icon or button on its Uber Application for the Jackson metro market, as it
15 does in other cities. Despite the ease with which Defendants could make its service available to
16 persons in a wheelchair, Defendants have intentionally chosen to not provide services to persons in
17 wheelchairs in Jackson.

---

[3] See Exhibit "B."
[4] https://newsroom.uber.com/us-louisiana/uberversary-donuts-on-demand/

36. In some limited locations, Defendants have installed an icon on its Uber Application in an attempt to comply with the ADA. In some cities, including San Francisco, Los Angeles, Portland, and Washington D.C., Defendants have installed on its Uber Application an icon known as Uber Access. (*See* Figure One, *infra*.).



**Fig. 1**: An image of Uber Access, available in some cities – but not Jackson, MS.
(*Source*: https://newsroom.uber.com/canada/uberwav/)

37. Once a user selects the Access icon, one or two of two options appear: UberASSIST and UberWAV.

38. UberASSIST, according to Defendants, "is designed to provide additional assistance to seniors and people with disabilities. Driver-partners are specifically trained by Open Doors Organization to assist riders into vehicles and can accommodate folding wheelchairs, walkers, and scooters."[5]

39. However, according to Defendants, "Note: ASSIST vehicles do not have accessible ramps."[6]

---

[5] See Exhibit "C"
[6] *Id*.

40. Persons who use an electric wheelchair are unable to use UberASSIST as they require transportation with a ramp.

41. Further, according to a Technical Assistance Manual published by the Department of Justice, carrying a person with a disability is contrary to the goals of the ADA.[7] Thus, the "extra hand" provided by Defendants' UberASSIST service merely perpetuates paternalistic discrimination instead of providing independent access.

42. Upon information and belief, in San Francisco, Los Angeles, and other cities, Defendants offers UberWAV, which provides wheelchair accessible vehicles.

43. Upon information and belief, Defendants can remove their accessible icons at any time, thereby creating a significant need for injunctive relief. On September 2, 2014, Defendants issued a press release stating that it was offering disabled accessible services in Houston, Texas.

44. Upon information and belief, Defendants began offering service in Houston, Texas called UberACCESS.

45. As of May 6, 2017, the Uber Application for Houston, Texas does not feature or display UberACCESS. (*See* Figure 2, *Infra*).

---

[7] See The Americans with Disabilities Act, Title II Technical Assistance Manual, http://www.ada.gov/taman2.html "Carrying is contrary to the goal of providing accessible programs, which is to foster independence." Last accessed on 1/21/2016.



**Fig. 2**: An image of Uber's app available in Houston, Texas as of May 6, 2017.
(*Source*: Screenshot taken by plaintiff's counsel)

46. Upon information and belief, Defendants either discontinued its UberACCESS service in Houston, Texas or no longer publicly displays the UberACCESS option. This demonstrates that Defendants have the capability to reduce or eliminate its accessibility options at will, and evidences the need for injunctive relief.

47. On information and belief, when a driver with a wheelchair-accessible vehicle in a city without UberWAV contacts Uber, they are told that they cannot participate in UberWAV.

### IV. CAUSES OF ACTION

### COUNT I – VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

48. Plaintiffs re-allege and incorporate by reference the above allegations set forth in the Complaint as if fully set forth herein.

49. Title III of the ADA prohibits discrimination against persons with disabilities by places of public accommodation and by private entities providing certain services, including specified public transportation services. *Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 128 (2005) ("Title III of the ADA prohibits discrimination against the disabled in the full and equal enjoyment of public accommodations, 42 U.S.C. § 12182(a), and public transportation services, § 12184(a)."); 42 U.S.C. § 12182 ("Prohibition of discrimination by public accommodations"); 42 U.S.C. § 12184 ("Prohibition of discrimination in specified public transportation services provided by private entities").

50. "The term 'specified public transportation' means transportation by bus, rail, or any other conveyance (other than by aircraft) that provides the general public with general or special service (including charter service) on a regular and continuing basis." 42 U.S.C. § 12181(10). Public transportation services include "demand responsive systems," which means "any system of providing transportation of individuals by a vehicle, other than a system which is a fixed route system." 42 U.S.C. § 12181(3).

51. In addition, regulations promulgated by the United States Secretary of Transportation provide that: "No entity shall discriminate against an individual with a disability in connection with the provision of transportation service." 49 C.F.R. § 37.5(a).

52. Defendants provide a demand responsive transportation system as defined by 42 U.S.C. § 12181. Defendants have been held to be a covered entity under Title III of the ADA. *See, e.g., Ramos v. Uber Technologies*, 2015 WL 758087 at *5-6 (W.D. Tex., Feb. 20, 2015).

53. Under Section 12184(a)(2) of the ADA, discrimination includes the failure of an entity to:

    (A)    make reasonable modifications consistent with those required under section 12182(b)(2)(A)(ii) of this title;
    (B)    provide auxiliary aids and services consistent with the requirements of section 12182(b)(2)(A)(iii) of this title; and

(C) remove barriers consistent with the requirements of section 12182(b)(2)(A) of this title and with the requirements of section 12183(a)(2) of this title;

54. Under Section 12182(b)(2)(C)(i) of the ADA, discrimination can also include: "a failure of a private entity which operates a demand responsive system and which is not subject to section 12184 of this title to operate such system so that, when viewed in its entirety, such system ensures a level of service to individuals with disabilities, including individuals who use wheelchairs, equivalent to the level of service provided to individuals without disabilities."

55. "Equivalent" is defined under the ADA's regulations at 49 CFR § 37.105 to mean "equivalent to the service provided other individuals with respect to the following service characteristics:

(a) (1) Schedules/headways (if the system is fixed route);
    (2) Response time (if the system is demand responsive);
(b) Fares;
(c) Geographic area of service;
(d) Hours and days of service;
(e) Availability of information;
(f) Reservations capability (if the system is demand responsive);
(g) Any constraints on capacity or service availability;
(h) Restrictions priorities based on trip purpose (if the system is demand responsive).

56. Defendants and their service providers have failed to provide any mechanism by which to adequately serve mobility-impaired individuals such as Plaintiffs or others similarly situated. Moreover, Defendants have refused to make reasonable accommodations in policies, practices, and procedures or to provide auxiliary aids and services necessary to allow full use and enjoyment of their transportation services by Plaintiffs. Defendants have failed to remove the barriers to Plaintiffs' use of their services.

57. Defendants have discriminated and are discriminating against Plaintiffs in violation of the ADA by failing to provide accessible transportation services.

58. Defendants continue to discriminate against the Plaintiffs by failing to make reasonable modifications in policies, practices or procedures, when such modifications are

necessary to afford accessible transportation services to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied goods and services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

59. Additionally, by failing to provide access options to Jackson users, Defendants have failed to meet the requirements of 49 C.F.R. § 37.167 that "the entity shall make available to individuals with disabilities adequate information concerning transportation services, [which] includes making adequate communications capacity available, though accessible formats and technology, to enable users to obtain information and schedule service."

60. Plaintiffs have been injured by the discrimination they encountered when they were deterred from using Defendants' transportation services and they continue to be injured by their inability to patronize Defendants' services. They have additionally been injured by the stigma of Defendants' discrimination.

61. Plaintiffs' injuries are traceable to Defendants' discriminatory conduct, policies, or lack of policies alleged herein and will be redressed by the relief requested. Plaintiffs have been injured and will continue to be injured by Defendants' failure to comply with the ADA and Defendants' ongoing, continued acts of discrimination.

62. Defendants have control over their drivers' ADA compliance. For example, a term of the contract between Uber and its drivers bars drivers from denying users who have service animals:

> You understand and agree that you have a legal obligation under the Americans with Disabilities Act and similar state laws to transport Users with Service Animals (as defined by applicable state and federal law), including guide dogs for the blind and visually impaired Users, and there is no exception to this obligation for allergies or religious objections. Your knowing failure to transport a User with a Service Animal shall constitute a material breach of this Agreement. You agree that a "knowing failure" to comply with this legal obligation shall constitute either: (1) a denial of a ride where you state the

denial was due to a Service Animal; or (2) there is more than one (1) instance in which a User or the companion of a User alleges that you cancelled or refused a ride on the basis of a Service Animal.

63. The Uber contract with drivers does *not*, however, have a provision barring drivers from denying service to wheelchair users.

64. As a result of their inability to use Defendants' services, Plaintiffs are suffering irreparable harm.

65. Although Plaintiffs have not downloaded or used the Uber Application, Title III of the ADA does not "require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions." 42 U.S.C. § 12188; *Pickern v. Holiday Quality Foods, Inc.,* 293 F.3d 1133, 1136–37 (9th Cir.2002) ("under the ADA, once a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury," and "[s]o long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues").

66. Here, Plaintiffs are being deterred from patronizing Defendants' services as a result of their personal knowledge of the violations stated above. Defendants' refusal to provide service to people with disabilities in Jackson is a topic of conversation among Plaintiffs' community. Plaintiffs have researched online and found that Uber Acess, UberASSIST, and UberWAV are offered in other cities but not in Jackson.

67. Plaintiffs have experienced the humiliation of past denials of services, including transportation services, in other contexts, and so chose not to engage in a process they know to be futile with Uber.

68. Pursuant to 42 U.S.C. § 12188, this Court has authority to grant Plaintiffs' injunctive relief, including an Order that Defendants' transportation services are in violation of the ADA and requiring Defendants' to alter the Uber Application to make it accessible to and useable by individuals with mobility disabilities to the full extent required by Title III of the ADA.

**COUNT II - VIOLATION OF THE
CALIFORNIA DISABLED PERSONS ACT**

69. Plaintiffs re-allege and incorporate by reference the above allegations set forth in the Complaint as if fully set forth herein.

70. Pursuant to the remedies, procedures, and rights set forth in Cal. Civ. Code § 52, Plaintiffs pray for judgment as set forth below.

71. Defendants operate, within the jurisdiction of the State of California, places of public accommodation and/or places to which the general public is invited and, as such, is obligated to comply with the provisions of the California Disabled Persons Act (CDPA), Cal. Civ. Code § 54, *et seq*.

72. The conduct alleged herein violated the CDPA, including without limitation Cal. Civ. Code, § 54.1, *et seq*. The CDPA guarantees, *inter alia*, that persons with disabilities are entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, and privileges of covered entities.

73. Defendants have violated the CDPA by, *inter alia*, denying Plaintiff and members of the proposed class, as persons with disabilities, full and equal access, as other members of the general public, to accommodations, advantages, and facilities offered by Defendants.

74. Defendants have violated the CDPA by, *inter alia*, failing to operate their services on a nondiscriminatory basis and failing to ensure that persons with disabilities have nondiscriminatory access to their transportation services.

75. In committing the acts and/or omissions alleged herein, Defendants wrongfully and unlawfully denied access to their transportation services to individuals with disabilities and acted with knowledge of the effect their conduct was having on persons with physical disabilities.

76. Defendants have violated the CDPA by being, as listed above, in violation of both California Standards and the ADA. Plaintiffs are not required to prove intent or actual damages to recover minimum statutory damages under the CPDA.

77. Plaintiffs are deterred from patronizing Defendants' transportation services as a result of their actual knowledge of the violations stated above.

78. Pursuant to the remedies, procedures, and rights set forth in California law, including Cal. Civ. Code § 54, Plaintiff prays for judgment as set forth below.

**COUNT III – VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**

79. Plaintiffs re-allege and incorporate by reference the above allegations set forth in the Complaint as if fully set forth herein.

80. California's Unfair Competition Law ("UCL") (Business & Professions Code § 17200 *et seq.*) bars "unfair competition," which includes any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

81. In passing the UCL, the legislature "intended to permit courts to enjoin ongoing wrongful business conduct in whatever context such activity might occur." Comm. *on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 210 (1983).

82. The UCL "'borrows' violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under [the UCL]." *Farmers Ins. Exch. v. Super. Ct.*, 2 Cal. 4th 377, 383 (1992); *Clerkin v. MyLife.com, Inc.*, No. C 11– 00527 CW, 2011 WL 3607496, at *6 (N.D. Cal. Aug. 16, 2011) ("Violation of almost any federal, state or local law may serve as the basis for a UCL claim.").

83. Defendants business practices described above are unfair competition under the UCL because they violate the ADA and CDPA.

84. Defendants business practices described above are unfair competition also because Defendants' failure to provide accommodations gives them an unfair advantage relative to traditional taxi cab companies.

85. As a result of Defendants unfair competition business practices described above, Plaintiffs have suffered injury in fact and have lost money. For example, they have been forced to take more expensive taxi cabs, thus losing money.

## V. JURY DEMAND

86. Plaintiffs request a trial by jury.

## VI. RELIEF REQUESTED

WHEREFORE, Plaintiffs demand judgment against Defendants, and request the following relief:

A. that this Court declare that Defendants' policies, procedures, and services have been provided in a discriminatory manner which violates the ADA, the Unruh Civil Rights Act, the California Disabled Persons Act, and California's Business & Professions Code § 17200;

B. that this Court declare that Defendants' violations of the anti-discrimination statutes of California were intentional;

C. that this Court Order injunctive relief to require Defendants to bring their transportation service into compliance and remain in compliance with state and federal anti-discrimination statutes;

D. that this Court award damages in restitution to Plaintiffs;

E. that this Court award reasonable attorneys' fees and costs (including expert fees) and other expenses of suit; and

F. that this Court award such other and further relief as it deems necessary, just, proper, and appropriate.

Respectfully submitted, this the ninth day of May, 2017,

By Plaintiffs, by and through their counsel,

/s/ William Most_____
William Most (CA # 279100)
AQUA TERRA AERIS LAW GROUP
828 San Pablo Ave., Ste. 115B
Albany, CA 94706
Phone: (504) 509-5023
Email: williammost@gmail.com

Bizer & DeReus, LLC
Garret S. DeReus (LA # 35105)
Admission *pro hac vice* – To Be Filed
gdereus@bizerlaw.com
Andrew D. Bizer (LA # 30396)
Admission *pro hac vice* – To Be Filed
andrew@bizerlaw.com
Jacqueline K. Hammack (MS # 104556)
Admission *pro hac vice* – To Be Filed
jhammack@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996