MORGAN, LEWIS & BOCKIUS LLP
Anne Marie Estevez (*pro hac vice*)
200 Biscayne Boulevard, Suite 5300
Miami, FL 33131
T: 305.415.3000
F: 305.415.3001
annemarie.estevez@morganlewis.com

Stephanie Schuster (*pro hac vice*)
Clara Kollm (*pro hac vice*)
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T: 202.739.3000
F: 202.739.3001
stephanie.schuster@morganlewis.com
clara.kollm@morganlewis.com

Kathy H. Gao (CA Bar No. 259019)
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071
T: 213.612.2500
F: 213.612.2501
kathy.gao@morganlewis.com

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

SCOTT CRAWFORD and JARVIS JERNIGAN, JR.,

Plaintiffs,

v.

UBER TECHNOLOGIES, INC. and RASIER, LLC,

Defendants.

Case No. 3:17-cv-02664-RS

**JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER**

Date: December 21, 2017
Time: 10:00 a.m.
Place: Courtroom 3 – 17th Floor

# JOINT INITIAL CASE MANAGEMENT STATEMENT

Pursuant to Local Rule 16-9, and the Court's Standing Orders, Plaintiffs Scott Crawford and Jarvis Jernigan, Jr. ("Plaintiffs"), and Defendants Uber Technologies, Inc. and Rasier, LLC ("Defendants") (collectively, "Parties"), through counsel, submit this Joint Initial Case Management Statement. The parties have met and conferred concerning the subjects identified in Federal Rule of Civil Procedure 26(f) and in the Standing Order for All Judges of the Northern District of California on the Contents of Joint Case Management Statement. This Joint Initial Case Management Statement reflects the positions of each party as to the sections or subsections so attributed, and reflects the agreed position of all parties only insofar as not otherwise attributed.

**1. Jurisdiction and Service.** All Defendants have been served with Plaintiffs' Complaint. In the Complaint, Plaintiffs assert that this Court has original jurisdiction over their claim under the Americans with Disabilities Act pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over their claims under California law pursuant to 28 U.S.C. § 1367.

**2. Facts**

**Plaintiffs' Statement.** Plaintiffs are persons with disabilities that use electric wheelchairs and reside in Jackson, Mississippi. Plaintiffs bring this action because defendants, Uber Technologies, Inc. and Raiser, LLC (collectively "Uber") operate a transportation system and have failed to make their transportation system accessible for persons who use wheelchairs in Jackson, Mississippi.

On occasion, Uber offers short-term promotions that allow app users to order special sale items by clicking on an icon that appears in the user's app for the duration of the promotion. When the promotion is over, the special icon disappears and the app returns to its usual appearance. Crawford and Jernigan have never downloaded the Uber app because they are aware that their electric wheelchairs cannot fit into a standard car. If Uber were to offer ride services that could accommodate electric wheelchairs, Crawford and Jernigan would use the Uber app. Because Uber could add a mechanism for connecting riders to wheelchair accessible vehicles but does not do so in Jackson, Crawford and Jernigan assert that Uber prevents drivers with such vehicles from

offering those services to disabled persons.

Uber has taken steps to make its services accessible in other cities (Washington, D.C., Chicago, IL, etc.,). Despite the ease at which Uber can modify its app, and the steps Uber has taken to increase accessibility in other cities, Uber has not made its services in Jackson accessible to persons who use electric wheelchairs. Plaintiffs bring this action under Title III of the Americans With Disabilities Act ("ADA") and two California state-law statutes: the California Disabled Persons Act, California Civil Code § 54 *et seq*. ("CDPA"), and Cal. Civ. Code Section 55 *et seq*.

Without waiving any factual issues or limiting themselves, the principal disputed factual issues Plaintiffs foresee are: is Uber operating a demand responsive transportation system (mixed legal/factual issue); to what extent does Uber control the individuals who provide services on Uber's behalf in Jackson, Mississippi; on how many instances have Plaintiffs been deterred from using Uber's services; what steps has Uber taken to increase accessibility in Jackson, Mississippi (if any); what steps has Uber taken to increase accessibility in other markets; what steps must be taken to bring Uber's services into compliance with the ADA in Jackson, Mississippi; what impediments exist, if any, to making Uber's services accessible in Jackson, Mississippi; what accessibility plans did Uber have before it entered the Jackson, Mississippi market; what level of control has Uber asserted over the Jackson, Mississippi market from San Francisco, California; what factual support exists for Uber's affirmative defenses.

**Defendants' Statement.** Defendants offer a smartphone application (the "Uber App") that networks riders seeking rides and independent, third-party transportation providers ("Drivers") looking to provide rides in several U.S. cities, including Jackson, Mississippi. Drivers who choose to seek and accept ride requests via the Uber App do so using vehicles they obtained on their own. Defendants neither own the vehicles used nor employ any Drivers.

Uber's technology has been revolutionary for riders and Drivers with accessibility needs, increasing mobility options and economic opportunities for individuals with disabilities. Uber has also made significant strides in enhancing the ability of riders who use non-folding, motorized wheelchairs to more easily request rides from Drivers who both choose to possess wheelchair accessible vehicles ("WAVs") and choose to use the Uber App to seek and accept ride requests. In

a handful of cities where there is a sufficient quantity of such Drivers, Defendants have piloted an option within the Uber App, called "uberWAV."[1]  The uberWAV option in the Uber App networks Drivers who possess WAVs and who have chosen to seek and accept ride requests via the Uber App to network with riders seeking WAV service.  Uber also has piloted an option within the Uber App called "uberASSIST," which allows riders who need an extra hand getting into and out of vehicles and/or stowing their belongings to request rides from specially trained Drivers.

At this time, neither option is available in the Uber App in Jackson, Mississippi.  Plaintiffs allege that they live in or around Jackson, Mississippi.  Plaintiffs allege that they require WAVs for transportation.  Plaintiffs have never used or downloaded the Uber App.

Without waiving any arguments or otherwise limiting themselves, Defendants assert that, at this early stage of the litigation, the disputed factual issues may include, but are not necessarily limited to, the following: whether Plaintiffs require WAVs for transportation; whether Plaintiffs have been deterred from using the Uber App; whether Plaintiffs intend to use the Uber App in the future; whether Plaintiffs would request rides via the uberASSIST option in the Uber App.

**3.     Legal Issues**

**Plaintiffs' Statement.** Without waiving any legal issues/theories or limiting themselves, the major legal issues Plaintiffs foresee are:

- Whether Uber has violated Section 12184(a), which provides a general rule that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce.
- Whether Uber is operating a demand responsive transportation system under 42 U.S.C. § 12181(3).
- Whether, as a result of the control Uber asserts over its drivers, Uber is providing a service under contract pursuant to 49 C.F.R. §37.23(d).
- Whether Uber has committed discrimination "against an individual with a disability in connection with the provision of transportation service", in violation of 49 C.F.R. § 37.5(a).

---

[1]     Plaintiffs contend that Uber should simply turn on an uberWAV option in Jackson and that refusing to do so may discourage persons who own such vehicles to sign up for the Uber App.  But simply turning on the option with only a minimal number of active Drivers does not provide reliable service that is beneficial to riders who seek WAV trips.

- Whether Uber is in the business of "transporting people."
- Whether Uber has committed denial of participation, in violation of 42 U.S.C. § 12182(b)(1)(A)(i).
- Whether Uber has failed to make reasonable modifications in policies, practices, or procedures, in violation of 42 U.S.C. § 12182 (b)(2)(A)(ii).
- Whether Uber has failed to take steps to ensure persons with disabilities are not excluded from its services, unless fundamental alteration or undue burden, in violation of 42 U.S.C. § 12182 (b)(1)(A)(iii).
- Whether Uber is obligation to comply with the equivalent service standard, 42 U.S.C. § 12182(b)(2)(C)(i), and if so, what it must do to comply with this requirement.
- Whether Uber violated the California Disabled Persons Act, California Civil Code § 54 *et seq*. ("CDPA"), and Cal. Civ. Code Section 55 *et seq*. by and through its control of the Jackson, Mississippi market from San Francisco, California.

**Defendants' Statement.** Without waiving any arguments or otherwise limiting themselves, Defendants assert that, at this early stage of the litigation, the disputed legal issues may include, but are not necessarily limited to, the following:

- Whether Plaintiffs have Article III standing;
- Whether the Uber App is a "place of public accommodation" within the meaning of 42 U.S.C. § 12182(a). *See Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000).
- Whether Defendants are "primarily engaged in the business of transporting people" within the meaning of 42 U.S.C. § 12184(a)(1) even though it does not own vehicles, employ drivers, or actually transport people.
- Whether Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, requires Defendants to include any particular option within the Uber App in Jackson, Mississippi. *See Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1047 (9th Cir. 2000)
- Whether Title III of the ADA requires any entity to offer WAV service. *See* 49 C.F.R. § 37.29(b); *Toomer v. City Cab*, 443 F.3d 1191, 1195 (10th Cir. 2006).
- Whether the relief Plaintiffs seek would require Defendants' to fundamentally alter their business. *See* 42 U.S.C. §§ 12182(b)(2)(A)(ii), 12184(b)(2)(A).
- Whether California's Disabled Persons Act and Unfair Competition Law apply extraterritorially. *See Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 (Cal. 2011).
- Whether the Uber App is a "place of public accommodation" within the meaning of California Civil Code § 54.1(a)(1).
- Whether Plaintiffs have asserted any basis for their claims under California's Disabled Persons Act and Unfair Competition Law that is independent of their claim under Title III of the ADA.

**4. Motions**.

**a. Past Motions.** On August 17, 2017, Defendants moved to transfer this action to the Southern District of Mississippi. ECF No. 21. This Court denied that motion by order dated October 11, 2017. ECF No. 43. On October 13, 2017, Plaintiffs moved to lift the discovery stay imposed by General Order No. 56. ECF No. 45. This Court granted that motion by order dated October 30, 2017. ECF No. 53. On November 6, 2017, Plaintiffs moved the Court to consider whether this action and the action styled *Namisnak, et al. v. Uber Technologies, Inc., et al.*, No. 3:17-cv-06124 (N.D. Cal.), should be related. ECF No. 55. This Court granted that motion by order dated November 14, 2017. ECF No. 58.

**b. Pending Motions.** On December 14, 2017 the Parties filed a joint motion to extend their deadline to complete the mediation required by General Order No. 56 and to continue the Initial Case Management Conference scheduled for December 21, 2017. ECF No. 60.

**c. Anticipated Motions.** Defendants also anticipate filing a dispositive motion for judgment on the pleadings.

**5. Amendment of Pleadings.** Neither party intends to amend pleading at this time.

**6. Evidence Preservation.**

**Plaintiffs' Statement.** Plaintiffs, through their counsel, have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and the parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. Plaintiffs have no reason to believe that Defendants have failed to preserve evidence in this matter. However, Plaintiffs' counsel is concerned over reports of Uber's use of ephemeral messaging—apps such as Wickr or Telegram—in the case of in *Waymo v. Uber*, before U.S. District Judge William Alsup. Based on the conferral of counsel to prepare the Case Management Conference, it is Plaintiffs' understanding that defense counsel does not believe that any such evidence-preservation issues will be present in the instant litigation; however, defense counsel is going to investigate and confirm.

**Defendants' Statement.** Defendants certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information. The Parties have conferred

pursuant to Federal Rule of Civil Procedure 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonable evident in this action. Defendants' counsel has no reason to believe any evidence-preservation issues Plaintiffs' raise above exist in connection with this action, and counsel has and will continue to take all reasonable steps related to evidence preservation.

**7. Disclosures.** The Parties exchanged initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) on August 9, 2017. Plaintiffs are concerned that defendants' initial disclosures are non-compliant (failure to list addresses and phone numbers of most witnesses) and are excessively thin and vague (listing nine individuals and describing them as merely "likely to have discoverable information concerning Uber's operations in Jackson, Mississippi"). However, these initial disclosures were drafted by defendants' previous counsel. Defendants' counsel will evaluate the August 9, 2017 initial disclosures and, if appropriate, Defendants will supplement those disclosures.

**8. Discovery.**

**a. Discovery Taken.** On November 7, 2017, Plaintiffs propounded one set of requests for production and one set of interrogatories upon Defendants. On December 7, 2017, Plaintiffs provided written responses and objections to Plaintiffs requests for production and interrogatories. Defendants will produce non-privileged documents responsive to Plaintiffs' discovery requests, within the scope of Defendants' objections, if any, and any related privilege log, on a rolling basis, within one week of this Court's entry of an appropriate protective order. Defendants have not yet propounded any discovery.

**b. Scope of Anticipated Discovery.**

**Plaintiffs' statement.** Based on an initial assessment, and without waiving any legal issues/theories, the scope of Plaintiffs' anticipates discovery may include:

- All facts related to whether Uber is operating a demand responsive transportation system;
- The degree of control Uber is asserting over the individuals who utilize the UberApp to provide transportation services;
- How many instances have Plaintiffs been deterred from using Uber's services;
- The steps Uber has taken (and could take) to increase accessibility in Jackson, Mississippi

(if any);

- The steps Uber has taken to increase accessibility in other markets;
- The steps that could be taken to bring Uber's services into compliance with the ADA in Jackson, Mississippi;
- What impediments exist, if any, to making Uber's services accessible in Jackson, Mississippi;
- What accessibility plans Uber had before it entered the Jackson, Mississippi market;
- The degree of control that Uber has asserted over its operations in Jackson, Mississippi from San Francisco, California;
- The number of new vans and SUVs that are being operated on Uber's transportation system in Jackson, Mississippi;
- The ease at which Uber could modify its application to display the UberWAV feature in Jackson, Mississippi;
- What number of accessible vehicles would bring Uber into compliance with the equivalent service standard in Jackson, Mississippi;
- What factual support exists for Uber's affirmative defenses.

**Defendants' statement.** Without waiving any arguments or otherwise limiting themselves, Defendants assert that, at this early stage of the litigation the scope of discovery may including the following:

- Defendants' voluntary actions in certain cities to pilot an uberWAV option within the Uber App;
- Demand for WAV service in Jackson, Mississippi;
- Number of WAVs and number of Drivers with safe WAVs in Jackson, Mississippi who would choose to seek and accept WAV ride requests via the Uber App;
- WAV service available in Jackson, Mississippi;
- Plaintiffs' allegations of having been deterred from using the Uber App;
- Plaintiffs' allegations of desiring to use the Uber App in the future;
- Plaintiffs' transportation habits, patterns, preferences, and needs;
- Plaintiffs' access to technology and/or equipment necessary to use the Uber App;
- Plaintiffs' access to a mode of payment necessary to use the Uber App;
- Whether Plaintiffs would agree to Uber's Terms and Conditions;
- Whether Plaintiffs would agree to Uber's Privacy Policy; and
- Whether Plaintiffs use a smartphone application offered by one of Defendants' competitors (*e.g.*, Lyft).

      **c. Discovery Orders.** The Parties have agreed to confer and attempt to stipulate to an appropriate protective order and an e-discovery order (including an order under Federal Rule of Evidence 502(d), and an ESI protocol.

**d. Discovery Disputes.**

**Plaintiffs' Statement.** On December 13, 2017, the parties held a meet-and-confer on defendants' responses and objections to plaintiffs' first set of written discovery. While the parties were able to work through many of the issues (both sides have follow-up tasks), there are several areas of disagreement. One of the main areas of disagreement is over Xchange Leasing, LLC. Plaintiff has requested any documents showing the range of vehicles which this company has entered into leasing agreements with drivers since October 1, 2015. Uber responded that Xchange Leasing, LLC is a "separate corporate entity" and any of Xchange Leasing, LLC's information or documents are beyond Uber's possession, custody, or control. There is, however, countervailing evidence. For example, Xchange Leasing describes itself as "an Uber company" and "related by common ownership or control" to Uber Technologies, Inc. And at least some of Xchange Leasing's documents are hosted on Uber's Box website. In lieu of a motion to compel, Plaintiffs' counsel hopes that the parties can confer before the Honorable Magistrate Judge and avoid the formal motion practice.

**Defendants' Statement.** Defendants do not believe that a pre-motion conference on the question whether documents of Xchange Leasing, LLC are within Defendants' possession, custody, or control, would be beneficial without the Parties having first briefed the issue. Plaintiffs could also simply subpoena Xchange Leasing, LLC, without involving the Court unnecessarily.

**9. Class Actions.** Not applicable.

**10. Related Cases.** On Plaintiffs' motion, this Court has deemed this action and the action styled *Namisnak, et al. v. Uber Technologies, Inc., et al.*, No. 3:17-cv-06124 (N.D. Cal.), to be related. ECF No. 58.

**11. Relief.**

**Plaintiffs' Statement.** Plaintiffs seek the following relief: that this Court declare that Defendants' policies, procedures, and services have been provided in a discriminatory manner

which violates the ADA, the Unruh Civil Rights Act, the California Disabled Persons Act, and California's Business & Professions Code § 17200; that this Court declare that Defendants' violations of the anti-discrimination statutes of California were intentional; that this Court Order injunctive relief to require Defendants to bring their transportation service into compliance and remain in compliance with state and federal anti-discrimination statutes; that this Court award damages in restitution to Plaintiffs; that this Court award reasonable attorneys' fees and costs (including expert fees) and other expenses of suit; and that this Court award such other and further relief as it deems necessary, just, proper, and appropriate.

As it relates to damages, Plaintiffs, through counsel of record, are unsure of the quantum a jury will place on their claims for discrimination and/or emotional distress stemming from Defendants' discrimination. Plaintiffs, through their counsel of record, reasonably forecast that their claim for actual damages for discrimination and/or emotional distress is approximately $20,000 each. Plaintiffs, through their counsel of record, reasonably forecast that their claim for minimum statutory damages for invasion of their civil rights is approximately $10,000 each (based on an estimated 10 instances of deterrence per plaintiff).

**Defendants' Statement.** Defendants dispute that Plaintiffs are entitled to any relief.

**12. Settlement and ADR.** The Parties are participating in the mediation required by General Order No. 56. In addition, on December 11, 2017, the Parties participated in a global summit involving counsel for Defendants, counsel for Plaintiffs, and counsel for plaintiffs asserting similar claims in actions pending in other jurisdictions.

**13. Consent to Magistrate Judge.** All parties do not consent to have a magistrate judge conduct all further proceedings.

**14. Other References.** At this early stage of the litigation, the Parties have not yet determined whether this matter is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15. Narrowing of Issues.** The Parties agree that any narrowing of issues will be determined by discovery and/or by dispositive motion.

**16. Expedited Trial Procedure.** The Parties agree that this litigation is not the type of

case to be handled on an expedited basis or with streamlined procedures.

**17. Scheduling.** The Parties agree that fact and expert discovery in this action should proceed as follows:

- **November 30, 2018:** Fact discovery cutoff
- **March 1, 2019:** Expert discovery cutoff

**18. Trial.** Plaintiffs have demanded a jury trial. At this early stage of the litigation, the Parties are unable to reasonably or reliably estimate the length of any trial.

**19. Disclosure of Non-party Interested Entities or Persons.** Defendants have file a "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15" (ECF No. 17). The contents of that certification are included below:

Pursuant to Fed. R. Civ. P. 7.1, Defendants Uber Technologies, Inc. and Rasier, LLC ("Defendants") states that Uber Technologies, Inc. is a privately held corporation, is not a subsidiary of any entity, and no publicly held corporation owns ten percent or more of its stock. Rasier, LLC is a wholly-owned subsidiary of Uber Technologies, Inc.

Pursuant to Civil Local Rule 3-15, Defendants certify that, to their knowledge, other than the named parties in this action, there are no other persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities have either (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) a nonfinancial interest that could be substantially affected by the outcome of the proceeding.

By Plaintiffs: Plaintiffs have not yet filed a "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15, but will do so shortly. Plaintiffs' counsel anticipates that Plaintiffs will certify that, to their knowledge, other than the named parties in this action, there are no other persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities have either (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) a nonfinancial interest that could be substantially affected by the outcome of the proceeding.

**20. Professional Conduct.** All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct in the Northern District of California.

Dated: December 14, 2017

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By: s/ Anne Marie Estevez

    Anne Marie Estevez
    Stephanie Schuster
    Clara Kollm
    Kathy H. Gao

*Attorneys for Defendants*

BIZER AND DEREUS, LLC

By: s/ Garret DeReus

    Garret DeReus
    Andrew Bizer
    *Attorneys for Plaintiffs*

AQUA TERRA AERIS LAW GROUP

By: s/ William Most

    William Most

*Attorneys for Plaintiffs*

## CASE MANAGEMENT ORDER

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions.

IT IS SO ORDERED.

Dated: ________________________

The Honorable Richard Seeborg
United States District Judge