UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SCOTT CRAWFORD, et al.,

Plaintiffs,

v.

UBER TECHNOLOGIES, INC., et al.,

Defendants.

Case No. 17-cv-02664-RS

**ORDER DENYING IN PART AND GRANTING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS**

# I. INTRODUCTION

Scott Crawford and Jarvis Jernigan bring this action against Uber Technologies, Inc. (Uber) and its subsidiary Raiser, LLC for failure to make reasonable accommodations under federal and California state disability law. After answering the complaint, Uber moved for judgment on the pleadings, arguing that plaintiffs lack standing to bring their claims, the relevant ADA provisions do not apply to Uber, and the relevant California state law provisions cannot regulate conduct that occurs solely outside of California. Pursuant to Civil Local Rule 7-1(b), the motion is suitable for disposition without oral argument. For the reasons set forth below, the motion is denied as to plaintiffs' federal claims, but granted as to their California state law claims.

# II. BACKGROUND

Uber operates a ride-for-hire service that utilizes a mobile phone app to connect riders with drivers who have signed up with the app. Uber app users can request and pay for a ride or other service through their credit card linked Uber account. On occasion, Uber offers short-term

promotions that allow app users to order special sale items by clicking on an icon that appears in the user's app for the duration of the promotion. When the promotion is over, the special icon disappears and the app returns to its usual appearance.

The Uber app offers users services that vary from locality to locality. In some cities, such as Portland, San Francisco, Los Angeles, and Washington, D.C., the app displays an icon called "Uber Access." When a user taps on the icon, one of two options appear, "UberASSIST" or "UberWAV." UberASSIST connects app users with specially trained drivers who will assist riders into vehicles and can accommodate folding wheelchairs, walkers, and scooters. UberWAV offers app users the option to call a wheelchair accessible vehicle. Neither of these options is available to Uber app users in Jackson.

Crawford and Jernigan are persons with disabilities who live in Jackson, Mississippi, and its surrounding suburbs. Both plaintiffs have multiple sclerosis and use wheelchairs for mobility. Because neither can drive, Crawford and Jernigan rely on buses, taxis, and other services to get around the Jackson metro area. One service they cannot utilize is Uber's ride-sharing service, which allows mobile phone app users to call a car to get from one place to another. Because the Uber app in Jackson does not provide an option for riders to call a wheelchair-accessible vehicle, Crawford and Jernigan are unable to use the service. Accordingly, plaintiffs allege, Uber has violated its obligations under the Americans with Disabilities Act ("ADA"), the California Disabled Persons Act ("CDPA"), and the California Unfair Competition law ("UCL").

Crawford and Jernigan have never downloaded the Uber app because they are aware that their electric wheelchairs cannot fit into a standard car. If Uber were to offer ride services that could accommodate electric wheelchairs, Crawford and Jernigan would use the Uber app. Because Uber could add a mechanism for connecting riders to wheelchair accessible vehicles but does not do so in Jackson, Crawford and Jernigan assert that Uber prevents drivers with such vehicles from offering those services to disabled persons. Crawford and Jernigan seek declaratory and injunctive relief under Title III of the ADA, 42 U.S.C. § 12181 *et seq.*, the CDPA, Cal. Civ. Code § 54.1 *et seq.*, and the UCL, Cal. Bus. & Prof. Code § 17200 *et seq*.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." A motion for judgment on the pleadings is "functionally identical" to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). "Judgment on the pleadings is properly granted when there is no material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Picard*, 581 F.3d 922, 925 (9th Cir. 2009). When deciding a 12(c) motion, all material allegations in the complaint are accepted as true and construed in the light most favorable to the non-moving party. *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004).

## IV. DISCUSSION

### A. Standing

The United States Constitution restricts federal judicial power to the adjudication of "cases" or "controversies." U.S. Const. art. III, § 2, cl. 1. Plaintiffs seeking to adjudicate their grievances in federal court must first demonstrate that they have standing to sue—"an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). To establish standing, a plaintiff must show (1) he or she has suffered or is threatened with an injury that is both "concrete and particularized," and "actual or imminent, not conjectural or hypothetical;" (2) there is a causal link between the injury and the conduct of which the plaintiff complains—that is, the injury is "fairly traceable" to the challenged conduct; and (3) the injury is "likely" to be "redressed by a favorable decision." *Bates v. United Parcel Serv., Inc.,* 511 F.3d 974, 985 (9th Cir. 2007) (quoting *Lujan,* 504 U.S. at 560–61).

"The Supreme Court has instructed us to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits 'are the primary method of obtaining compliance with the Act.'" *Doran v. 7–Eleven, Inc.,* 524 F.3d 1034, 1039 (9th Cir. 2008) (quoting *Trafficante v. Metro. Life Ins. Co.,* 409 U.S. 205, 209 (1972)). The ADA provides that a plaintiff is entitled to bring an action to correct both barriers he actually

encountered and those he was deterred from encountering. 42 U.S.C. § 12188(a)(1). A person with a disability is not required to "engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions." *Id*.

"For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" to establish a concrete injury. *Defenders of Wildlife,* 504 U.S. at 561. In addition, the plausibility determinations as required by "*Twombly* and *Iqbal* are ill-suited to application in the constitutional standing context" because " '[t]he jurisdictional question of standing precedes, and does not require, analysis of the merits.' " *Maya v. Centex Corp*., 658 F.3d 1060, 1068 (9th Cir. 2011) (quoting *Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008)).

Uber argues that Crawford and Jernigan lack standing to seek injunctive relief because they cannot establish injury in fact or that their requested remedy will redress that injury. According to Uber, plaintiffs' alleged injury—being denied access to Uber's service—is insufficiently concrete because they have never downloaded the Uber app and do not plausibly allege that they were deterred from doing so. This argument is unpersuasive. As Uber acknowledges, under Ninth Circuit precedent, plaintiffs suing under Title III are not required to engage in a "futile gesture" in order to show actual injury under the ADA. *See Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1136-37 (9th Cir. 2002). In *Civil Rights Education & Enforcement Center v. Hospitality Properties Trust*, 867 F.3d 1093 (9th Cir. 2017), the Ninth Circuit explicitly rejected the requirement that ADA plaintiffs "personally encounter" barriers in order to have standing. 867 F.3d at 1099. Plaintiffs who had telephoned hotels to inquire about transportation services available to disabled guests sufficiently alleged that they were deterred from patronizing those establishments until barriers to access were removed. *See id.* (It is the

plaintiff's "actual knowledge" of a barrier, rather than its source, that is determinative.).

Nonetheless, Uber contends that plaintiffs have not offered specific facts sufficient to make their conclusory allegations of deterrence plausibly genuine and concrete. According to Uber, plaintiffs cannot establish injury because they do not allege possession of the equipment, accounts, and payment methods necessary to create an Uber account, and do not describe specific moments when they were deterred from using the service or when they will do so in the future. The ADA does not place such heavy pleading burdens on persons seeking to remove barriers to access. Crawford and Jernigan state they have actual knowledge that the Uber app in Mississippi does not have a mechanism for summoning a WAV vehicle, which precludes them from using the transportation services the app facilitates. Thus, they are deterred from downloading the Uber app. According to their complaint, Crawford and Jernigan "plan to and will attempt to use the Uber Application . . . in the future as patrons should those programs, services, and accommodations become wheelchair-accessible." Compl. at 6. At the pleading stage, plaintiffs are not required to do more to demonstrate a concrete and imminent injury under the ADA.

Even if plaintiffs can show concrete injury, Uber contends that a favorable ruling on their request for injunctive relief will not redress that injury. Uber points out, and plaintiffs do not dispute, that it is a private entity that may not be ordered to purchase WAV vehicles. Because Uber does not currently own the cars used by Uber drivers, an injunction requiring them to acquire WAV vehicles would, according to Uber, impermissibly compel a fundamental alteration to the nature of its business. An alternative injunction requiring Uber merely to modify the Uber app to include UberASSIST and UberWAV options would also be problematic, Uber argues, because the modification could not ensure that any drivers participate in either service. Should Uber be required to use monetary or other incentives to encourage drivers to participate in UberASSIST and UberWAV programs, the drivers themselves retain "broad and legitimate discretion" regarding the choice to convert their personal vehicles into WAVs or undergo training to work with UberASSIST. Therefore, Uber concludes, plaintiffs fail to establish redressability because the prospective benefits of their requested remedy turn on the independent decisions of third party

drivers. *See Glanton ex. Rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123, 1125 (9th Cir. 2006).

Once again, Uber's arguments are unpersuasive. Whether drivers exercise the degree of independence described by Uber is a question of fact that cannot be determined on the pleadings alone. For example, if further factual development demonstrates that drivers must satisfy certain requirements in order to sign up on the Uber app, or that drivers must conduct rides in a manner prescribed by Uber, that would undercut Uber's view that injunctive relief is entirely dependent on drivers' choices. For example, on the present record there is no reason to believe that Uber could not institute possession of a WAV as a prerequisite for drivers who wish to provide rides through the app. Such a modification to Uber's policies would arguably redress plaintiffs' alleged injury. Nor is it possible to determine conclusively that there are *no other* reasonable modification options available that would enable Uber to meet the requirements of the ADA. Plaintiffs request "injunctive relief to require Defendants to bring their transportation service into compliance and remain in compliance with state and federal anti-discrimination statutes." Compl. at 18. Uber points to no authority indicating that plaintiffs are required to allege the precise means of redress at the pleading stage. Here, plaintiffs plausibly state a claim for relief that is not beyond the power of the Court to address. Accordingly, Uber's motion for judgment on the pleadings for lack of standing is denied.

**B. Applicability of the ADA**

Should plaintiffs have standing to assert their claims, Uber argues that judgment on the pleadings is warranted on the grounds that Uber is not a covered entity under 42 U.S.C. § 12184.[1] This section, Uber reasons, is inapplicable because Uber is not an entity "primarily engaged in the business of transporting people." 42 C.F.R. § 37.29. Uber views itself as a technology company that is engaged in the business of facilitating networking between drivers and riders. Because Uber

---

[1] Although Uber also asserts that it is not a covered entity under Section 12182, plaintiffs deny asserting a claim under that section and will be held to that representation. Thus, Uber's arguments on that point need not be addressed.

does not own its own vehicles or lease them to Uber drivers, it believes it cannot be categorized as a taxi service under Section 12184. According to Uber, the service it offers is akin to that provided by expedia.com, a website through which individuals can book rooms at third-party hotels. In the recent opinion, the Seventh Circuit held that the operators of expedia.com were not "engaged in the business of renting hotel rooms" because they lacked ownership of the hotel rooms or independent power to grant possession. *See Village of Bedford Park v. Expedia, Inc.*, 876 F.3d 296, 299-300 (7th Cir. 2017). In Uber's view, no factual development is necessary because plaintiffs admit that drivers, rather than Uber, convey passengers in vehicles not owned by Uber.

These arguments miss the mark. First, nothing in Section 12184 requires that an entity own or lease its own vehicles in order to qualify as a private entity providing taxi service within the meaning of the statute. Second, whether Uber exerts sufficient control over its drivers such that drivers operate as an extension of Uber when they transport riders is a mixed question of law and fact that cannot be determined on the pleadings. Setting aside the need for further factual development, Uber's analogy to expedia.com is a strained one. Expedia facilitates a transaction that is not dependent on the service it offers. Hotels have rented rooms to guests long before the creation of expedia.com, and can do so without the website's assistance. By contrast, without Uber and its competitors, non-professional drivers would find it difficult—if not impossible—to locate a rider and transport her to the destination of her choice for monetary compensation. To say that Uber merely *facilitates* connections between "both sides of the two-sided ridesharing market" obscures the fact that Uber arguably *created* a market for this type of transportation. While Expedia does not exercise control over how hotels listed on its website price their rooms or deal with hotel guests, whether the same can be said of Uber's relationship to its drivers is not clear from the pleadings alone. In at least one case in this district, a court determined that there were significant factual questions as to Uber's degree of control over its drivers for employment law purposes, precluding summary judgment before trial. *See O'Conner v. Uber Technologies, Inc.*, 82 F. Supp. 3d 1133 (N.D. Cal. 2015). Here, because plaintiffs have plausibly alleged that Uber is "primarily engaged in the business of transporting people" within the meaning of Section 12184,

Uber cannot defeat ADA liability on the grounds that it is not a covered entity.

Nonetheless, Uber insists that plaintiffs cannot proceed under the ADA because Section 12184 does not require private entities providing taxi service to furnish WAV service or acquire WAV vehicles. Focusing on Sections 12184(b)(3) and (b)(5), Uber rejects plaintiffs' assertion that a covered entity has only two choices: purchase accessible vehicles or provide equivalent service. On the contrary, an entity may maintain a fleet of exclusively non-accessible vehicles without violating the ADA. Uber's fixation on whether WAVs are specifically required by statute is unavailing in light of the broad language of the ADA. A covered entity under Section 12184 is subject not just to the narrow requirements associated with the purchase of new vehicles, but the statute's broader anti-discrimination mandate. Included in that mandate is an affirmative obligation to make reasonable accommodations, to provide auxiliary aides and services, and remove barriers to access. *See* 42 U.S.C. § 12184(b)(2). Uber could very well be required to provide WAV service through some mechanism in order to comply with the anti-discrimination provisions of Section 12184(b)(2). Whether providing WAV service will "fundamentally alter" the nature of Uber's business is a question of fact that cannot be resolved on the pleadings. Therefore, Uber's motion for judgment on the pleadings as to plaintiffs' ADA claims is denied.

**C. State Law Protections for Out-of-State Plaintiffs**

With respect to plaintiffs' state law claims, Uber asserts the CDPA does not protect Mississippi plaintiffs whose alleged harm occurred outside of California. Crawford and Jernigan disagree, arguing they were injured by the decisions that were made at Uber's headquarters in California.

California has a strong presumption against extraterritorial application of its laws. *North Alaskan Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916). "The intention to make the act operative with respect to occurrences outside the state will not be declared to exist unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject-matter, or history." *Id.* (internal quotations omitted). The CDPA contains no language that indicates its protections should be extended to individuals in other states, for injuries that took

place outside of California. *See Sousanis v. Northwest Airlines, Inc. et al.*, 2000 WL 34015861 at 7 (N.D. Cal. Mar. 3, 2000) (concluding that "[t]here is no reason to infer from the language or purpose of Civil Code section 54.1 that it is meant to prohibit discrimination against individuals outside of California."). Indeed, because other states have their own disability rights laws, the basic principles of federalism prevent the extension of the California protections to people who do not live in California and have not suffered harm in the state.

Plaintiffs contend they were injured in California because the corporate decision to make the Uber app inaccessible to Mississippi wheelchair users took place at Uber headquarters in San Francisco. Although plaintiffs' theory of liability supported denial of Uber's motion to transfer venue from its home jurisdiction to Mississippi, the mere existence of a corporate decision in California that ultimately impacts an individual outside of California does not necessarily mean the individual was "injured" in California. The crux of plaintiffs' claim is that the Jackson, Mississippi, version of Uber's product is deficient as compared to the San Francisco, California, version, which has accessible options. Thus, the alleged discrimination in this case occurred in Mississippi, where Crawford and Jernigan claim they were denied access to Uber's transportation services. Plaintiffs fail to point to any evidence from the CDPA's statutory language, implementing regulations, or legislative history that supports the notion that plaintiffs who use or desire to use Uber in another state may sue Uber under California's disability law as long as the alleged harm was in some way traceable back to Uber headquarters. Therefore, Uber's motion for judgment on the pleadings is granted with respect to plaintiffs' CDPA claims.

Plaintiffs' remaining state law claim under the UCL is predicated on their ADA claim, which survives judgment on the pleadings. Yet as with the CDPA claim, plaintiffs cannot point to any evidence showing that the UCL authorizes the regulation of business activities occurring outside the state of California and affecting only non-California residents. *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011) ("Neither the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially."). Because plaintiffs' claims are rooted in Uber's alleged denial of reasonable accommodation,

which took place in Mississippi, the challenged conduct is beyond the reach of the UCL. Accordingly, Uber's motion for judgment on the pleadings as to plaintiffs' UCL claim is granted.

## V. CONCLUSION

For the reasons explained above, Uber's motion for judgment on the pleadings is denied as to plaintiffs' ADA claims and granted as to their claims under the CDPA and the UCL.

**IT IS SO ORDERED**.

Dated: March 1, 2018

RICHARD SEEBORG
United States District Judge