MORGAN, LEWIS & BOCKIUS LLP
Anne Marie Estevez (*pro hac vice*)
200 Biscayne Boulevard, Suite 5300
Miami, FL 33131
T:  305.415.3000
F:  305.415.3001
annemarie.estevez@morganlewis.com

Stephanie Schuster (*pro hac vice*)
Clara Kollm (*pro hac vice*)
1111 Pennsylvania Avenue, NW
Washington, DC  20004
T:  202.739.3000
F:  202.739.3001
stephanie.schuster@morganlewis.com
clara.kollm@morganlewis.com

Kathy H. Gao (CA Bar No. 259019)
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071
T: 213.612.2500
F: 213.612.2501
kathy.gao@morganlewis.com

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| SCOTT CRAWFORD and JARVIS JERNIGAN, JR.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>UBER TECHNOLOGIES, INC. and RASIER, LLC,<br><br>                    Defendants. | Case No. 3:17-cv-02664-RS<br><br>**DEFENDANTS' NOTICE OF MOTION FOR LEAVE TO FILE A MOTION FOR RECONSIDERATION OF THE COURT'S MARCH 1, 2018 ORDER AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: May 3, 2018<br>Time: 1:30 p.m.<br>Place: Courtroom 3 – 17th Floor |

1

## NOTICE OF MOTION

2     PLEASE TAKE NOTICE that in the courtroom of the Hon. Richard Seeborg, located at

3 450 Golden Gate Avenue San Francisco, CA 94102, on May 3, 2018 at 1:30 p.m., or as soon as

4 practicable that counsel may be heard, Defendants Uber Technologies, Inc. and Rasier, LLC

5 (together, "Uber") will move the Court for leave to file a motion for reconsideration of the

6 Court's March 1, 2018 Order (ECF No. 80), pursuant to Federal Rule of Civil Procedure 54(b)

7 and Local Civil Rule 7-9.

8     As explained in the accompanying Memorandum of Points and Authorities, in holding

9 that Plaintiffs have sufficiently alleged the requirements of Article III standing, and that Plaintiffs

10 have plausibly alleged that Uber violated 42 U.S.C. § 12184(a), the Court failed to address

11 dispositive legal arguments that Uber raised, which, if considered, ought to have compelled the

12 Court to enter judgment for Uber.

13                                           Respectfully submitted,

14 Dated:   March 28, 2018                   MORGAN, LEWIS & BOCKIUS LLP

15

16                                           By: s/ Anne Marie Estevez
                                                 Anne Marie Estevez
17                                               Stephanie Schuster
                                                 Clara Kollm
18                                               Kathy H. Gao

19                                               *Attorneys for Defendants*

20

21

22

23

24

25

26

27

28

i

1

<u>**TABLE OF CONTENTS**</u>

2

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................1

3

BACKGROUND ........................................................................................................................3

4

ARGUMENT ..............................................................................................................................4

5

6

    I.     THE COURT'S HOLDING THAT PLAINTIFFS' ALLEGATIONS SUFFICE FOR
           ARTICLE III STANDING PURPOSES WARRANTS RECONSIDERATION.........4

7

         A.   The Court Applied The Wrong Pleading Standard And Did Not Address
              Uber's Dispositive Arguments Under The Correct Standard ...............................4

8

         B.   The Court Based Its Redressability Holding On A Factual Dispute That
              Does Not Exist And Did Not Consider Uber's Dispositive Argument That

9

              Plaintiffs Have Conceded Drivers Are Independent Actors................................7

10

         C.   The Theory Of Redress The Court Posited Was Not Advanced By Plaintiffs
              And Raises Additional Pleading Problems...........................................................7

11

    II.    THE COURT'S HOLDING THAT PLAINTIFFS PLAUSIBLY ALLEGED THAT

12

           UBER VIOLATED SECTION 12184 WARRANTS RECONSIDERATION ...........9

13

         A.   The Court Did Not Consider Uber's Arguments As To The Proper
              Interpretation Of The Statutory Phrase "Primarily Engaged In The Business

14

              Of Transporting People." ......................................................................................9

15

         B.   The Court Did Not Consider Controlling Regulations Which Limit Covered
               Entities' Obligations To Provide WAV Service .................................................11

16

CONCLUSION.........................................................................................................................13

17

18

19

20

21

22

23

24

25

26

27

28

ii

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...........................................................................................5, 6

*Auer v. Robbins,*
    519 U.S. 452 (1997) ..............................................................................................11

*Barnes v. Mariott Hotel Servs.,*
    No. 15-1409, 2017 WL 635474 (N.D. Cal. Feb. 16, 2017) ...................................6

*Bell Atlantic Corp v. Twombly,*
    550 U.S. 544 (2007) ...........................................................................................5, 6

*Chevron v. NRDC,*
    467 U.S. 837 (1984) ..............................................................................................12

*Clinton v. Babbit,*
    180 F.3d 1081 (9th Cir. 1999) ...............................................................................9

*Davidson v. Kimberly-Clark Corp.,*
    873 F.3d 1103 (9th Cir. 2017) ...............................................................................6

*Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.,*
    276 F.3d 1150 (9th Cir. 2002) ...............................................................................9

*Feitelson v. Google Inc.,*
    80 F. Supp. 3d 1019, 1029 (N.D. Cal. 2015) .........................................................6

*Levine v. Vilsack,*
    587 F.3d 986 (9th Cir. 2009) .................................................................................8

*Lomayaktewa v. Hathaway,*
    520 F.2d 1324 (9th Cir. 1975) ...............................................................................9

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ...........................................................................................5, 8

*Maya v. Centex Corp.,*
    658 F.3d 1060 (9th Cir. 2011) ............................................................................5, 6

*Native Vill. of Kivalina v. ExxonMobil Corp.,*
    696 F.3d 849 (9th Cir. 2012) ............................................................................6, 8

*Navarro v. Encino Motorcars, LLC*,
    845 F.3d 925 (9th Cir. 2017)..........................................................................................10, 11

*Noel v. NYC Taxi & Limousine Comm'n*,
    687 F.3d 63 (2d Cir. 2012)...............................................................................................10, 11

*Opperman v. Path, Inc.*,
    84 F. Supp. 3d 962, 988 (N.D. Cal. 2015) ..............................................................................6

*Strong v. Johnson*,
    No. 16-1289, 2017 WL 201737 (S.D. Cal. Jan. 18, 2017)......................................................6

*Toomer v. City Cab*,
    443 F.3d 1191 (10th Cir. 2006).............................................................................................11

*Vill. of Bedfrod Park v. Expedia, Inc.*,
    876 F.3d 296 (7th Cir. 2017)........................................................................................9, 10, 11

**STATUTES, REGULATIONS, AND REGULATORY MATERIALS**

28 U.S.C. § 1292(b) ..........................................................................................................................3

42 U.S.C. § 12186(a)(1) ..................................................................................................................11

49 C.F.R., Pt. 37, App'x D...........................................................................................................11, 12

49 C.F.R. § 37.29(b) .....................................................................................................................11, 12

**RULES**

Fed. R. Civ. P. 54(b) .......................................................................................................................4

Fed. R. Civ. P. 12(b)(7).....................................................................................................................9

Local Rule 7-9(b) ..............................................................................................................................4

Local Rule 7-9(b)(3) ..........................................................................................................................4

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Through this lawsuit, Plaintiffs push the outer limits of both Article III standing and the already broad protections afforded by Title III of the Americans with Disabilities Act too far. They sue Uber claiming that a technological solution for the ridesharing industry (the "Uber App") that they have never even attempted to use is discriminatory because it does not include an option called "uberWAV" in Jackson, Mississippi—an option that is only yet available to Uber App users through pilots in a handful of major cities. As Uber argued in its motion for judgment on the pleadings, Plaintiffs' threadbare and conclusory allegations are insufficient to demonstrate Article III standing and otherwise fail to make out any claim under the ADA as a matter of law.

In its March 1, 2018 order, this Court disagreed and allowed Plaintiffs' ADA claim to continue without oral argument. In the process, however, the Court did not address several dispositive arguments advanced by Uber in support of its motion. Reconsideration and oral argument are warranted to reconcile the Court's ruling with those overlooked arguments and the controlling authority on which they were based.

*First*, the Court found Plaintiffs had sufficiently alleged standing, but not that Plaintiffs had *plausibly* alleged standing. Uber demonstrated that Supreme Court and Ninth Circuit precedent require standing allegations to be plausible to survive a dispositive motion at the pleading stage, and even Plaintiffs agreed that the plausibility standard applied to those allegations. The Court, however, held that the Ninth Circuit had exempted standing allegations from the plausibility requirement and, as a result, treated Plaintiffs' conclusory allegations of injury and imminence as sufficient. Precedent calls for a different result.

*Second*, the Court rejected Uber's argument that Plaintiffs' claimed injury is not redressable because the Court assumed that whether Drivers are independent actors, such that redress turns on their choices, was a disputed fact that could not be resolved by the pleadings. However, in the order, the Court does not appear to have considered Uber's argument that Plaintiffs *conceded* that Drivers are independent actors, both through the allegations in their complaint and in their opposition to the motion.

1

*Third*, the Court found Plaintiffs' claimed injury redressable in this action, but not for the reasons Plaintiffs urged.  Instead, the Court went beyond the briefing and posited that Plaintiffs hypothetically could obtain redress if Uber refused to license its technology to Drivers who do not possess WAVs.  Uber had no prior opportunity to address that theory of redress.  If it had, it would have shown that limiting access to the Uber App in such a way would not redress Plaintiffs' claimed injury, since under Plaintiffs' own allegations, Drivers still retain discretion to not sign up instead of acquiring a WAV.  In addition, Uber would have explained that mandating WAV-possession as a prerequisite to Drivers' access to the Uber App would have created other, insurmountable pleading defects.  Specifically, that theory of redress would break the causal chain necessary for Article III standing, and it would make indispensable parties of every Driver who currently licenses Uber's technology in Jackson, Mississippi.

*Fourth*, on the merits, the Court rejected an analogy between Uber and Expedia, which has been held to not be an entity "primarily engaged in the business of renting hotel rooms" by virtue of its role in facilitating hotel reservations via expedia.com.  However, the Court did not interpret the key statutory phrase at issue here: "primarily engaged in the business of transporting people."  Nor did the Court otherwise address Uber's argument—not refuted by Plaintiffs—that, as a matter of plain language and ordinary meaning, that phrase means actually, directly, and chiefly conveying passengers.  And because the Court did not interpret the statute, it did not address Uber's argument that Uber is not "primarily engaged in the business of transporting people" because, as Plaintiffs allege, Uber does not actually convey passengers.

*Finally*, relying on the broad nondiscrimination mandate in Section 12184, the Court rejected Uber's argument that Section 12184 obligates covered entities to provide WAV service only if they first acquire a new, large van that is not wheelchair-accessible.  However, in the order, the Court does not appear to have considered the Department of Transportation's applicable regulation and guidance—binding and controlling authority cited and discussed by the parties at length—which confirm Uber's reading of the statute.

1  Reconsideration and oral argument are warranted and necessary for all these reasons,
2  expanded upon below.[1]

3  ## BACKGROUND

4  Plaintiffs Scott Crawford and Jarvis Jernigan require WAVs for transportation.   ECF
5  No. 1 ("Compl.") ¶ 12–13.   In Jackson, Mississippi, where Plaintiffs live, there is no option
6  within the Uber App for riders to specifically request rides from independent, third-party
7  transportation providers ("Drivers") who transport passengers in WAVs.   *Id.* ¶ 4.   Neither
8  Plaintiff has downloaded or used the Uber App; each alleges he wants to use it someday.   *Id.* ¶ 24.
9  Plaintiffs sued Uber, claiming that the absence of a WAV-specific option within the Uber App in
10  Jackson, Mississippi violates Title III of the Americans with Disabilities Act and two California
11  statutes.   After answering, Uber moved for judgment on the pleadings, arguing that Plaintiffs lack
12  standing and that, accepting the allegations in the complaint as true, Uber is entitled to judgment
13  on the merits as a matter of law.

14  By order dated March 1, 2018, this Court granted Uber's motion as to Plaintiffs' state law
15  claims, but denied the motion as to Plaintiffs' ADA claim, however.   The Court did not hear oral
16  argument prior to ruling.   The Court held Plaintiffs adequately alleged the requirements for
17  Article III standing to seek injunctive relief.   Although Plaintiffs have not used the Uber App, the
18  Court deemed Plaintiffs' allegations that they want to and plan to use the Uber App at some point
19  in the future sufficient to allege a "concrete and imminent injury."   *Id.* at 5.   And although
20  Plaintiffs conceded that Drivers are independent actors who retain discretion whether to seek and
21  accept rides via the Uber App and with which types of vehicles, the Court held Plaintiffs' claimed
22  injury is redressable because Uber hypothetically can limit access to its technology to Drivers
23  who possess WAVs.   *Id.* at 6.
24  On the merits, the Court held that Plaintiffs "have plausibly alleged that Uber is 'primarily
25  engaged in the business of transporting people' within the meaning of Section 12184."   The Court

26  ---
27  [1]   Concurrently with this motion, Uber filed a motion to certify the March 1, 2018 order for interlocutory appeal under 28 U.S.C. § 1292(b), as an alternative to reconsideration.   For the reasons set forth in support of that motion, if the Court declines to reconsider, it should certify the
28  order for immediate appeal.

3

did not interpret the quoted statutory phrase, but distinguished the Uber from Expedia, which is not an entity "primarily engaged in the business of renting hotel rooms." *Id.* at 7. And based on the ADA's "broader anti-discrimination mandate," the Court held that a covered entity's failure to provide WAV service may constitute "discrimination" under Section 12184, even when that entity has not acquired a new, large van that is not a WAV. *Id.* at 8.

## ARGUMENT

Reconsideration may not be the norm, but neither is it extraordinary. Reconsideration is a useful vehicle for litigants to highlight controlling law the court may have overlooked, and for courts to correct any resulting mistakes. Reconsideration is particularly warranted when there has been "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before [the] interlocutory order." Civil Local Rule 7-9(b)(3); *see also* Fed. R. Civ. P. 54(b) (an interlocutory order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities").

Reconsideration is warranted here because the Court does not appear to have considered several dispositive legal arguments that Uber raised in support of the motion. Those arguments are in tension with the Court's conclusions that Plaintiffs sufficiently alleged both standing to pursue injunctive relief and a valid claim for relief under Section 12184. Thus, for the reasons discussed below, the Court should grant Uber leave to file a motion for reconsideration and hold oral argument on the motion.[2]

## I.     THE COURT'S HOLDING THAT PLAINTIFFS' ALLEGATIONS SUFFICE FOR ARTICLE III STANDING PURPOSES WARRANTS RECONSIDERATION.

### A.     The Court Applied The Wrong Pleading Standard And Did Not Address Uber's Dispositive Arguments Under The Correct Standard.

Uber challenged Plaintiffs' standing on the ground that they have not "allege[d] specific facts to *plausibly* satisfy Article III's standing requirements." ECF No. 63 ("Uber Br.") at 6 (emphasis added); *see id.* at 6–12; ECF No. 77 ("Uber Reply") at 1–4. For their part, Plaintiffs

---

[2]     Local Rule 7-9(b) further requires the movant to "specifically show reasonable diligence in bringing the motion." Uber has done so. Uber advised plaintiffs and the Court of its intent to file this motion on March 15, 2018 (ECF No. 82 ¶ 4(b)); the Court gave instructions regarding this motion during the March 22, 2018 status conference; and Uber has now filed.

4

1    did not dispute that their standing allegations must be "plausible" in order to survive Uber's

2    motion.  ECF No. 70 ("Pl. Br.") at 10.  Rather, Plaintiffs insisted they have "plausibly" alleged

3    the requirements for Article III standing.  *Id.* at 10–11.

4         The Court did not apply the "plausibility" standard, however.  It determined that the

5    "plausibility" standard applies only when assessing whether a plaintiff has stated a claim for

6    which relief may be granted, but not when assessing whether the plaintiff's allegations satisfy

7    Article III's standing requirements.  Order 4.  The Court then credited Plaintiffs' conclusory

8    assertions of injury, without regard to whether they were supported by sufficient facts to be

9    plausible.  That was error, and reconsideration is warranted to correct it.

10        The Supreme Court has instructed that each standing "element must be supported in the

11   same way as any other matter of which the plaintiff bears the burden of proof, *i.e.*, with the

12   manner and degree of evidence required at the successive stages of the litigation."  *Lujan v.*

13   *Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see* Uber Br. 6.  And in both *Bell Atlantic Corp*

14   *v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court

15   set the standard for allegations at the pleading stage:  they must be plausible.  Notwithstanding

16   these authorities, the Court dispensed with the plausibility standard, relying on the Ninth Circuit's

17   statement *Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011), that "*Twombly* and *Iqbal* are

18   ill-suited to application in the constitutional standing context."  *Id.* at 1068.

19        *Maya* did not hold that the *Twombly*/*Iqbal* plausibility standard falls away when standing

20   is challenged at the pleading stage.  The court's "ill-suited" statement was in response to a district

21   court's determination that the plaintiffs lacked standing because they had "failed to plead facts

22   sufficient to raise *a right to relief* above the speculative level."  *Maya*, 658 F.3d at 1067–68

23   (emphasis added).  The *Maya* court hastened to clarify that it was not carving standing allegations

24   out of the general requirement that a plaintiffs' allegations be plausible:  "This is not to say that

25   plaintiff may rely on *a bare legal conclusion* to assert injury-in-fact, or engage in an ingenious

26   academic exercise in the *conceivable* to explain how a defendants' actions caused his injury."  *Id.*

27   at 1068 (emphases added).  And, in fact, the *Maya* court went on to consider whether the

28   plaintiff's allegations made each element of Article III standing "plausible," rather than

5

1    conclusory or merely conceivable. *Id.* at 1070.

2         Nor has any other court interpreted *Maya* as dispensing with the *Twombly/Iqbal*

3    plausibility requirement in the standing context.  To the contrary, since *Maya*, the Ninth Circuit

4    has repeatedly made clear that "the complaint must allege sufficient facts *plausibly* establishing

5    each element of the standing inquiry."  *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d

6    849, 867 (9th Cir. 2012) (emphasis added) (citing *Twombly* & *Lujan*); *see Davidson v. Kimberly-*

7    *Clark Corp.*, 873 F.3d 1103, 1115 (9th Cir. 2017) (allegations of future harm necessary for

8    standing to pursue injunctive relief must be "plausible"); *Feitelson v. Google Inc.*, 80 F. Supp. 3d

9    1019, 1029 (N.D. Cal. 2015) (allegations of injury must satisfy "plausibility standard set forth in

10   *Twombly* and *Iqbal*"); *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 988 (N.D. Cal. 2015).  And as

11   Uber argued, courts in this circuit (even after *Maya*) routinely dismiss for lack of standing when

12   an ADA plaintiff fails to allege sufficient, specific facts to make her or his allegations of having

13   been deterred from patronizing the defendant's facility and intent to do so in the future plausible.

14   *See, e.g.*, *Barnes v. Mariott Hotel Servs.*, No. 15-1409, 2017 WL 635474, at *7–9 (N.D. Cal. Feb.

15   16, 2017); *Strong v. Johnson*, No. 16-1289, 2017 WL 201737, at *3 (S.D. Cal. Jan. 18,

16   2017);Uber Br. 6–12; Uber Reply 1–3.[3]

17        This Court did not address any of those cases when determining that Plaintiffs sufficiently

18   (but not plausibly) alleged standing.  The reasoning and conclusions in those decisions stand in

19   marked contrast to the Court's conclusion in this case that, "[a]t the pleading stage, plaintiffs are

20   not required to do more to demonstrate a concrete and imminent injury under the ADA" than

21   allege that (i) "they have actual knowledge that the Uber app in Mississippi does not have a

22   mechanism for summoning a WAV ... , which precludes them from using the transportation

23   services the app facilitates," and (ii) they "plan to and will attempt to use the Uber App[] in the

24   future as patrons."  Order 5.

25   _____

[3]    Indeed, in explaining the limits of its "ill-suited" comment, the *Maya* court cited the Ninth
26   Circuit's pinnacle case on the "deterrent effect doctrine," in which the court held "that a plaintiff
     who did not allege which barriers existed at a store and how they impacted his disability could not
27   establish injury-in-fact simply by claiming that the store deprived him of 'full and fair enjoyment'
     in violation of the ADA."  *Maya*, 658 F.3d at 1068 n.3 (citing *Chapman v. Pier 1 Imports, Inc.*,
28   631 F.3d 939, 954–55 & n.9 (9th Cir. 2011) (en banc)).

6

1    Because the Court denied judgment on the pleadings without considering and addressing

2    dispositive legal arguments and authorities, reconsideration and oral argument are warranted.

3    Properly assessed against the plausibility standard, Plaintiffs fail to sufficiently allege standing.

4    Accordingly, upon reconsideration, the Court should dismiss the complaint for lack of subject-

5    matter jurisdiction.

6        **B.    The Court Based Its Redressability Holding On A Factual Dispute That Does
              Not Exist And Did Not Consider Uber's Dispositive Argument That Plaintiffs**
7             **Have Conceded Drivers Are Independent Actors.**

8        Uber argued that Plaintiffs have not alleged a redressable injury because it is up to the

9    independent Drivers who provide the rides requested via the Uber App to choose whether, when,

10   where, how frequently, and with which vehicle to provide those rides.  *See* Uber Br. 11–12.  The

11   Court disagreed, reasoning that "[w]hether drivers exercise the degree of independence described

12   by Uber is a question of fact that cannot be determined on the pleadings alone."   Order 6.

13   However, the Court overlooked the fact that Plaintiffs *conceded* that Drivers are independent

14   actors—both in their complaint and in opposition to the motion.  *See* Compl. ¶ 2; Pl. Br. 12; Uber

15   Br. 11; Uber Reply 3; *see also* Pl. Br. 24 ("Under Plaintiffs' theory of the case, it is irrelevant

16   whether defendants' drivers are employees or independent contractors.").   Reconsideration is

17   warranted to permit the Court to analyze redressability arguments in light of the fact that there is

18   no dispute in this case that Drivers are independent actors.

19       **C.    The Theory Of Redress The Court Posited Was Not Advanced By Plaintiffs
              And Raises Additional Pleading Problems.**

20       The Court found Plaintiffs' injury redressable because, "on the present record there is no

21   reason to believe that Uber could not institute possession of a WAV as a prerequisite for drivers

22   who wish to provide rides through the app."   Order 6.   Plaintiffs did not advance that theory.

23   Plaintiffs argued that Uber could redress their injuries with its "power to pay" and/or by

24   launching (presumably after prototyping, manufacturing, and/or purchasing from some

25   unspecified source) a fleet of self-driving WAVs.   Pl. Br. 12.   As a result, Uber had no

26   opportunity to address the WAV-prerequisite theory of redress before the Court issued the Order.

27   If it had, it would have explained that a WAV-prerequisite does not solve Plaintiffs' redressability

28

7

DEFENDANTS' MOTION FOR LEAVE TO FILE
A MOTION FOR RECONSIDERATION

1    problem and creates other insurmountable problems for Plaintiffs.

2            *First*, the WAV-prerequisite would not remedy Plaintiffs' claimed injury—the inability to

3    request and receive WAV rides via the Uber App.  Suppose Uber were to permit only Drivers

4    with WAVs to sign up to seek and accept ride requests via the Uber App.  Whether riders could

5    successfully request and obtain WAV rides via the Uber App would still turn on whether enough

6    Drivers exercise their discretion and choose to obtain WAVs, choose to sign up to seek and

7    accept ride requests via the Uber App, and choose to actually provide the rides requested.

8    Redressability fails when, as here, "a plaintiff's asserted injury arises from" one entity's

9    "allegedly unlawful regulation (or lack of regulation) of *someone else*," because redress for such a

10   plaintiff "depends on the unfettered choices made by independent actors not before the court and

11   whose exercise of broad and legitimate discretion the courts cannot presume either to control or to

12   predict."  *Lujan*, 504 U.S. at 562 (emphasis in original); *see Levine v. Vilsack*, 587 F.3d 986, 992

13   (9th Cir. 2009) (redressability "standard is altered somewhat when third parties not before the

14   court must change their behavior in order for an injury suffered to be redressed").

15           *Second*, if a WAV-prerequisite is necessary for Plaintiffs to obtain *redress* in this

16   litigation, Plaintiffs cannot satisfy Article III's *causation* requirement.   For the Court's

17   WAV-prerequisite redressability holding necessarily presumes that Plaintiffs' claimed injury

18   flows from the fact that Drivers have exercised their choice to sign up to seek and accept ride

19   requests via the Uber App using vehicles that are not WAVs.  When, as here, "independent action

20   of some third party not before the court" breaks the causal chain between the defendant and the

21   plaintiff's claimed injury, the plaintiff lacks standing.  *Lujan*, 504 U.S. at 560; *see Native Village*,

22   696 F.3d at 867 ("causal chain" is especially "weak ... at the pleading stage" when it "involves

23   numerous third parties whose independent decisions collectively have a significant effect on

24   plaintiffs' injuries").

25           *Finally*, the WAV-prerequisite theory of redress makes indispensable parties of every

26   Driver who currently licenses Uber's technology to seek and accept ride requests using vehicles

27   other than WAVs in Jackson, Mississippi.  Those licenses are contracts, and a party to a contract

28   is a necessary party to litigation that "threatens to impair [her or his] contractual interests."

8

*Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1157 (9th Cir. 2002).  And here, those contracting parties are indispensable.  That is because nothing in the complaint would render Drivers who seek and accept rides in Mississippi subject to the personal jurisdiction of a court seated in California.  *See id.* ("[A] party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract."); *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975) ("No procedural principle is more deeply embedded in common law that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable.").  In other words, if not reconsidered, the Court's WAV-prerequisite holding requires dismissal under Federal Rule of Civil Procedure 12(b)(7).[4]  *See Clinton v. Babbit*, 180 F.3d 1081, 1088 (9th Cir. 1999) ("[A] district court cannot adjudicate an attack on the terms of a negotiated agreement without jurisdiction over the parties to that agreement.").

## II.     THE COURT'S HOLDING THAT PLAINTIFFS PLAUSIBLY ALLEGED THAT UBER VIOLATED SECTION 12184 WARRANTS RECONSIDERATION.

### A.     The Court Did Not Consider Uber's Arguments As To The Proper Interpretation Of The Statutory Phrase "Primarily Engaged In The Business Of Transporting People."

The Court concluded that "plaintiffs have plausibly alleged that Uber is 'primarily engaged in the business of transporting people' within the meaning of Section 12184."  Order 7.  The Court, however, did not interpret that key statutory phrase.  Nor did the Court address Uber's arguments that ordinary principles of statutory interpretation compel the conclusion that an entity is "primarily engaged in the business of transporting people" only if it actually, directly, and chiefly conveys people for money.  *See* Uber Br. 14–15; Uber Reply 4–7.  Instead, the Court characterized Uber's argument as simply that "the service it offers is akin to that provided by [Expedia vis-a-vis] expedia.com," *id.*, which the Seventh Circuit has held is not "primarily engaged in the business of renting hotel rooms," *Vill. of Bedfrod Park v. Expedia, Inc.*, 876 F.3d 296, 305 (7th Cir. 2017).

---

[4]     As pleaded and argued by Plaintiffs, Uber had no cause to assert a defense in this action for failure to join indispensable parties.  However, if the Court declines to reconsider, Uber hereby seeks leave to amend its answer to assert that defense.

9

1     *Expedia* illustrated Uber's statutory interpretation argument; it did not provide the basis

2    for it.  Rather, starting (as the inquiry must) with the statute's text, Uber showed that, as a matter

3    of plain and ordinary meaning, the phrase "primarily engaged in the business of transporting

4    people" means actually and directly conveying passengers, not through intermediaries.   Uber

5    Br. 14; Uber Reply 5–6.  Uber then showed how that plain language interpretation is consistent

6    with decisions interpreting similar phrases in different statutes (*i.e.*, statutes that applied to

7    someone "primarily engaged in" one activity or another).   Uber Br. 14–15; Uber Reply 5–6.

8    *Expedia* was one of those decisions, but there were others, including binding precedent from the

9    Ninth Circuit—*Navarro v. Encino Motorcars, LLC*, 845 F.3d 925, 931 (9th Cir. 2017) (holding

10   the phrase "primarily engaged in" an activity "most naturally encompasses only those who are

11   actually occupied in" the activity)—which the Court did not address in the Order.  *See* Uber

12   Br. 14–15; Uber Reply 5–6.  Plaintiffs neither disputed Uber's interpretation of the statute nor

13   offered a competing interpretation.  *See* Uber Reply 4–5.  The Court could have assumed

14   Plaintiffs had no response.  *Id.*

15       Moreover, the Court rejected the analogy between expedia.com and the Uber App for two

16   reasons, but neither affects the analysis under the proper, undisputed interpretation of the phrase

17   "primarily engaged in the business of transporting people" as an entity that actually, directly, and

18   chiefly transports people from place to place for money.  First, the Court reasoned that "Expedia

19   does not exercise control over how hotels listed on its website price their rooms or deal with hotel

20   guests," but "whether the same can be said of Uber's relationship to its drivers is not clear from

21   the pleadings alone."  Op. 7.  However, whether Uber has the power to "exercise control over,"

22   for example, how Drivers who seek and accept ride requests via the Uber App price the rides they

23   provide is not relevant to whether Uber is "primarily engaged in the business of transporting

24   people" within the meaning of Section 12184.  The Second Circuit confirmed as much in *Noel v.*

25   *NYC Taxi & Limousine Commission*, 687 F.3d 63 (2d Cir. 2012), where it held that an entity's

26   "control" over third-parties who are subject to Section 12184, "however pervasive" that control

27   may be, does not make the entity responsible for the controlled third-parties' compliance.  *Id.* at

28

71–72.  As with *Navarro*, Uber cited and discussed *Noel* (Uber Br. 17–18), but neither case was addressed in the Court's order.[5]

Second, the Court reasoned that "[h]otels have rented rooms to guests long before the creation of expedia.com," while "uber arguably *created* a market for this type of transportation." Order 7 (emphasis in original).  However, as a matter of plain meaning, whether an entity created a market has no bearing on whether that entity is "primarily engaged in" the activity of providing the service for the market it created.  Section 12184 does not impose obligations on entities "engaged in the business of creating a new market for transportation."  The statute regulates private entities "engaged in the business of *transporting people*."  Creating a market where others can sell services is not the same thing as actually selling those services.

   **B.    The Court Did Not Consider Controlling Regulations Which Limit Covered Entities' Obligations To Provide WAV Service.**

The Court acknowledged that an entity subject to Section 12184 "may maintain a fleet of exclusively non-accessible vehicles without violating the ADA."  Order 8.  Nevertheless, the Court disagreed with Uber's argument that the statute requires covered entities to provide WAV service only in narrow circumstances not alleged to be present in this case.  *Id.*  The Court reasoned that "Uber could very well be required to provide WAV service through some mechanism in order to comply with ... Section 12184(b)(2)," which requires covered entities "to make reasonable accommodations, to provide auxiliary aides and services, and remove barriers to access."  *Id.*  However, the Court did not address the Department of Transportation's applicable regulation, 49 C.F.R. § 37.29(b), and its "definitive guidance concerning the meaning and implementation of" that regulation, 49 C.F.R., Pt. 37, App'x D, both of which are controlling authority for what constitutes "discrimination" under Section 12184.  *See* 42 U.S.C. § 12186(a)(1); *Toomer v. City Cab*, 443 F.3d 1191, 1197 (10th Cir. 2006); *cf. Auer v. Robbins*,

---

[5]    Nor was "control" or a lack of it relevant to the Seventh Circuit's holding in *Expedia* that Expedia is not an entity "primarily engaged in the business of renting hotel rooms."  The Seventh Circuit based its conclusion on the plain and ordinary meaning of the words in that phrase: "renting implies ownership and granting possession of property—here, hotel rooms. ... [Expedia] do[es] not own hotels or hotel rooms and [it] cannot independently grant consumers access to hotel rooms.  Therefore, [it] cannot rent hotel rooms to customers."  *Expedia*, 876 F.3d at 305.

Case No. 3:17-cv-02664-RS

DEFENDANTS' MOTION FOR LEAVE TO FILE
A MOTION FOR RECONSIDERATION

1  519 U.S. 452, 461 (1997); *Chevron v. NRDC*, 467 U.S. 837, 843–43 (1984).

2        The applicable regulation requires a provider of "taxi service" to provide equivalent

3  service to individuals who use wheelchairs *only if* two conditions are met: (i) the entity purchases

4  or leases a new "vehicle other than an automobile," and (ii) that non-automobile vehicle is not

5  already wheelchair-accessible.  49 C.F.R.§ 37.29(b); *see* 49 C.F.R., Pt. 37, App'x D (for purposes

6  of this regulation, "taxi service" includes any for-hire vehicle service); Uber Br. []; Reply [].  The

7  Department of Transportation elaborated on this point in its "definitive guidance," explaining:

8        Under the ADA, no private entity is required to purchase an accessible
         automobile. *If a taxi company purchases a larger vehicle, like a van, it is subject*
9        *to the same rules as any other private entity primarily engaged in the business of*
         *transporting people which operates a demand responsive service. That is, unless*
10       *it is already providing equivalent service, any van it acquires must be accessible.*
         Equivalent service is measured according to the criteria of § 37.105.  Taxi
11       companies are not required to acquire vehicles other than automobiles to add
         accessible vehicles to their fleets.
12

13  49 C.F.R., Pt. 37, App'x D (emphasis added).

14        In addition, the Department of Transportation also has specifically spelled out such

15  entities' other "nondiscrimination obligations"; providing WAV service even when the regulatory

16  (and statutory) preconditions are not present is not among those obligations.  *Id.*  Rather,

17  according to the Department of Transportation, the following acts constitute "discrimination" by a

18  "provider of taxi service" under Section 12184:

19     •  "deny[ing] a ride to an individual with a disability who is capable of using taxi
          vehicles";
20
       •  "pass[ing] up a passenger because he or she ... used a wheelchair, if the
21        wheelchair was one that could be stowed in the cab and the passenger could
          transfer to a vehicle seat";
22
       •  "insist[ing] that a wheelchair user wait for a lift-equipped van if the person could
23        use an automobile";

24     •  "refus[ing] to assist with stowing a wheelchair in the trunk";

25     •  "charg[ing] a higher fee or fare for carrying a passenger with a disability than for
          carrying a non-disabled passenger"; and

26     •  "charg[ing] ... a higher fee for stowing a wheelchair than for stowing a suitcase."

27  *Id.*

28

1    Reconsideration is necessary to determine whether Plaintiffs' have plausibly alleged

2  "discrimination" under Section 12184 as authoritatively interpreted by the Department of

3  Transportation.

4                                        **CONCLUSION**

5        For all of these reasons, the Court should grant Uber leave to file a motion for

6  reconsideration, should reconsider its decision to deny Uber's motion as to Plaintiffs' ADA claim,

7  and upon reconsideration, should hold that Plaintiffs lack standing and/or that Uber is entitled to

8  judgment as a matter of law.  Alternatively, for the reasons set forth in Uber's separate motion

9  (filed contemporaneously with this one), in the event he Court declines to reconsider, it should

10  certify the March 1, 2018 for immediate appeal.

11                                                Respectfully submitted,

12  Dated: March 28, 2018                    MORGAN, LEWIS & BOCKIUS LLP

13

14                                      By: s/ Anne Marie Estevez
                                            Anne Marie Estevez
15                                          Stephanie Schuster
                                            Clara Kollm
16                                          Kathy H. Gao

17                                          *Attorneys for Defendants*

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION FOR LEAVE TO FILE
A MOTION FOR RECONSIDERATION