MORGAN, LEWIS & BOCKIUS LLP
Anne Marie Estevez (*pro hac vice*)
600 Brickell Avenue, Suite 1600
Miami, FL 33131
T: 305.415.3000
F: 305.415.3001
annemarie.estevez@morganlewis.com

Stephanie Schuster (*pro hac vice*)
Patrick A. Harvey (*pro hac vice*)
1111 Pennsylvania Avenue NW
Washington, DC 20004
T: 202.739-3000
stephanie.schuster@morganlewis.com
patrick.harvey@morganlewis.com

Kathy H. Gao (CA Bar No. 259019)
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071
T: (213) 612-2500
F: (213) 612-2501
kathy.gao@morganlewis.com

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| SCOTT CRAWFORD,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>UBER TECHNOLOGIES, INC. and RASIER, LLC,<br><br>　　　　　　Defendants. | Case No. 3:17-cv-02664-RS<br><br>**DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF DR. JAMES M. COOPER UNDER FRE 702**<br><br>Hearing Date: July 1, 2021 1:30 p.m.<br>Judge: Hon. Richard Seeborg<br>Courtroom #3, 17th Floor |
| STEPHAN NAMISNAK and FRANCIS FALLS,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>UBER TECHNOLOGIES, INC. and RASIER, LLC,<br><br>　　　　　　Defendants. | Case No. 3:17-cv-06124-RS<br><br>**DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF DR. JAMES M. COOPER UNDER FRE 702**<br><br>Hearing Date: July 1, 2021 1:30 p.m.<br>Judge: Hon. Richard Seeborg<br>Courtroom #3, 17th Floor |

Case No. 3:17-cv-02664-RS
Case No. 3:17-cv-06124-RS

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

UBER'S MOTION TO EXCLUDE DR.
COOPER UNDER FRE 702

# NOTICE OF MOTION

PLEASE TAKE NOTICE that, in the courtroom of the Honorable Richard Seeborg, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or via a remote hearing as directed by the Court, on July 1, 2021 at 1:30 p.m., or as soon thereafter as counsel may be heard, Defendants Uber Technologies, Inc. and Rasier, LLC (together, "Uber") will move the Court to exclude the testimony of Plaintiffs' expert James M. Cooper, PhD as inadmissible under Federal Rule of Evidence 702 for the reasons stated in the accompanying Memorandum of Points and Authorities.

Dated: April 19, 2021

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By: s/ Anne Marie Estevez
Anne Marie Estevez
Stephanie Schuster
Patrick Harvey
Kathy H. Gao

*Attorneys for Defendants*

Morgan, Lewis & Bockius LLP
Attorneys at Law
Washington, D.C.

Case No. 3:17-cv-02664-RS
Case No. 3:17-cv-06124-RS

UBER'S MOTION TO EXCLUDE DR. COOPER UNDER FRE 702

**TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

SUMMARY OF DR. COOPER'S DISCLOSED OPINIONS ...................................................... 1

ARGUMENT ................................................................................................................................. 3

    I.    Dr. Cooper's Opinion That Uber Is Primarily Engaged In The Business of Transporting People Is An Inadmissible Legal Conclusion. ................................... 3

    II.    Dr. Cooper's Opinions About What The ADA Requires And How It Should Be Applied Are Inadmissible Legal Conclusions And Improper Argument. ............................................................................................................... 4

    III.    Dr. Cooper's Opinion That There Is A "Potential Supply" Of WAVs in New Orleans And Jackson Will Not Aid The Factfinder In Determining Any Fact At Issue. .................................................................................................... 5

    IV.    Dr. Cooper's Opinion That It Is "Reasonable" for Uber to "Provide UberWAV" is Inadmissible for Several Reasons. ..................................................... 6

CONCLUSION ............................................................................................................................. 8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*640 Octavia, LLC v. Pieper*,
  2019 WL 1201581 (N.D. Cal. 2019) ................................................................................ 7

*Aguilar v. Int'l Longshoremen's Union Loc. No. 10*,
  966 F.2d 443 (9th Cir. 1992) ............................................................................................ 3

*Bldg. Indus. Ass'n v. Wash. Bldg. Code Council*,
  683 F.3d 1144 (9th Cir. 2012) .......................................................................................... 3

*In re Citric Acid Litig.*,
  191 F.3d 1090 (9th Cir. 1999) .......................................................................................... 8

*Crow Tribe of Indians v. Racicot*,
  87 F.3d 1039 (9th Cir. 1996) ............................................................................................ 3

*Daubert v. Merrell Dow Pharm.*,
  509 U.S. 579 (1993) .......................................................................................................... 6

*Elsayed Mukhtar v. Cal. State Univ.*,
  299 F.3d 1053 (9th Cir. 2002) ...................................................................................... 3, 6

*Fortyune v. Am. Multi-Cinema, Inc.*,
  364 F.3d 1075 (9th Cir. 2004) ...................................................................................... 6, 7

*Guidroz–Brault v. Mo. Pac. R.*,
  254 F.3d 825 (9th Cir. 2001) ............................................................................................ 8

*Lopez v. Catalina Channel Express, Inc.*,
  974 F.3d 1030 (9th Cir. 2020) .......................................................................................... 4

*Lucido v. Nestle Purina Petcare Co.*,
  217 F. Supp. 3d 1098 (N.D. Cal. 2016) ........................................................................... 7

*Rodriguez v. Barrita, Inc.*,
  2012 WL 2308069 (N.D. Cal. 2012) ................................................................................ 5

*United States v. Diaz*,
  876 F.3d 1194 (9th Cir. 2017) ...................................................................................... 3, 5

*United States v. Lira-Barraza*,
  897 F.2d 981 (9th Cir. 1990) ............................................................................................ 4

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

Case No. 3:17-cv-02664-RS
Case No. 3:17-cv-06124-RS

ii

UBER'S MOTION TO EXCLUDE DR. COOPER UNDER FRE 702

*Whooley v. Tamalpais Union High Sch. Dist.*,
　399 F. Supp. 3d 986 (N.D. Cal. 2019) .................................................................................. 4

**Statutes**

42 U.S.C. 12184(b)(2)(A) ........................................................................................................ 2, 5, 6

42 U.S.C. § 12184(a) .................................................................................................................... 4

42 U.S.C. § 12184(b)(2) ................................................................................................................ 5

**Other Authorities**

3 Christopher B. Mueller & Laird C. Kirpatrick, *Federal Evidence* § 7:12 (4th ed.) ...................... 6

Fed. R. Evid. 702 ................................................................................................................. *passim*

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Washington, D.C.

iii

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs have disclosed James M. Cooper, PhD as a retained expert they wish to call in these related ADA cases in which Plaintiffs allege that Defendants Uber Technologies Inc. and Rasier, LLC (together "Uber") violated Title III of the ADA by not acceding to their demand to ensure that third-parties provide wheelchair-accessible vehicle ("WAV") service and accept requests using the Uber mobile application for riders in Jackson, Mississippi, and New Orleans, Louisiana and the surrounding suburbs. Whatever knowledge Dr. Cooper has about the transportation industry generally, the opinions disclosed in his expert report fail to meet the basic requirements of Federal Rule of Evidence ("FRE") 702 and should be excluded.

**SUMMARY OF DR. COOPER'S DISCLOSED OPINIONS**

Dr. Cooper has a doctorate in Taxi Licensing and Control from Edinburgh Napier University in Scotland. Ex. A, Rule 26(a)(2)(B) Report of Dr. James Cooper dated January 14, 2021 ("Report") at 1.[1] Dr. Cooper currently is the director of Transport Research Partners and has been in that role since 2013. *Id.* He asserts that his research focuses on "ground transport, taxi and for hire vehicle analysis, accessible and social transportation, operation and policy development." *Id.* Most of his roles, experience, publications, and presentations relate to taxi service abroad, where the ADA does not apply. *See* Report 1–6. Despite listing numerous publications and presentations, only one presentation facially deals with accessibility: a 14-year old presentation in Paris called "Parataxi! The potential for focused taxi services to satisfy new demands for travel." *Id.* at 5. Dr. Cooper says the opinions disclosed in the Report are based on his research and experience as a transportation professional and his own "analysis of evidence and research specific to the subject" of the Report. *Id.* at 6–7.

Dr. Cooper's report leaves substantial ambiguity about the opinions he intends to offer in these cases. The section entitled "Opinion Summary" does not summarize the opinions he intends to offer at trial. *See id.* at 13–15. However, the "Conclusions" section of the report appears to include certain opinions:

---

[1] All exhibits attached to this motion are appended to the accompanying Declaration of Stephanie Schuster.

| Case No. 3:17-cv-02664-RS | 1 | UBER'S MOTION TO EXCLUDE DR. |
| Case No. 3:17-cv-06124-RS | | COOPER UNDER FRE 702 |

> The question therefore need establish whether Uber is a transport company, which I believe it can be demonstrated as being, and whether it is subject to equality legislation, in this instance the Americans with Disabilities Act, which I believe it is.
>
> Having stated my conclusions to both questions, it remains to demonstrate that reasonable accommodation can be made in the case of both complainants, in the interest of other wheelchair users, the wider community, and indeed to Uber itself. In this respect and specific to Jackson MS, and New Orleans LA, it would appear that all of infrastructure, potential supply and demand exist. I conclude that the reasonable approach for Uber would indeed be to provide UberWAV in both cities.

*Id.* at 27–28.

The first paragraph above suggests Dr. Cooper intends to offer a few opinions on the construction and application of the ADA, despite admitting that he "make[s] no claim to legal training" and is "not qualified in any area of law." *Id.* at 13.

The second paragraph appears to express Dr. Cooper's desire to opine on whether Plaintiffs have demanded a "reasonable accommodation" in these cases (even though Plaintiffs seek "reasonable modifications" under 42 U.S.C. § 12184(b)(2)(A)). Dr. Cooper concludes that it would be a "reasonable approach" for Uber to "provide UberWAV in both cities." Report 28. Dr. Cooper does not define what it means for Uber to "provide UberWAV" in those cities. Nor does he refer to the specific modifications Plaintiffs demanded in these cases—WAV service in New Orleans, Jackson, and their surrounding suburbs that satisfies the equivalent service standard of 49 C.F.R. § 37.105 and a fleet of up to 60 WAVs in each city. *Crawford* FAC ¶¶ 69, 73, 74; *Namisnak* SAC ¶¶ 70, 75 & Ex. E. In opining on the supposed reasonableness of "provid[ing] UberWAV," Dr. Cooper does not cite any particular cost, other financial burden, or administrative burden to Uber in doing so. *See* Report 27. He may also wish to opine on the "potential supply" of WAVs in New Orleans and Jackson. *Id.* at 26.

In total, based on the Report, Uber has divined a total of four opinions it believes Dr. Cooper may attempt to offer at trial:

 1. Uber is a "transport company, primarily engaged in the business of transporting people." Report 25.

 2. Uber has a "duty to provide accessibility under the meanings of the Americans with Disabilities Act" and launching UberWAV in New Orleans and Jacksons would not

"fundamentally alter the nature of Uber's goods/services." *Id.*  In addition, failing to comply with "[s]ection 37.105 of the ADA … constitutes a breach of disability legislation." *Id.*

3. "[A] potential supply of [wheelchair accessible] vehicles can exist in both New Orleans and Jackson markets." *Id.* at 26.

4. It would be a "reasonable approach" for Uber to "provide UberWAV in both cities." *Id.* at 28.

## ARGUMENT

As the proponent of Dr. Cooper's expert testimony, Plaintiffs have "the burden of establishing its admissibility." *Bldg. Indus. Ass'n v. Wash. Bldg. Code Council*, 683 F.3d 1144, 1154 (9th Cir. 2012).  Expert opinion testimony is admissible only if all of the following are true: (1) the witness is qualified to testify about the topics she intends to address; (2) the expert's specialized knowledge will help the jury "to understand the evidence or to determine a fact in issue"; (3) "the testimony is based on sufficient facts or data"; (4) "the testimony is the product of reliable principles and methods"; and (5) "the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  All four of Dr. Cooper's disclosed opinions are inadmissible under FRE 702.

### I. Dr. Cooper's Opinion That Uber Is Primarily Engaged In The Business of Transporting People Is An Inadmissible Legal Conclusion.

The proper role of an expert is to "interpret and analyze *factual* evidence." *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) (emphasis added).  By contrast, "matters of law" are "inappropriate subjects for expert testimony." *Aguilar v. Int'l Longshoremen's Union Loc. No. 10*, 966 F.2d 443, 447 (9th Cir. 1992).  In Rule 702's terms, opinions on ultimate questions of law are inadmissible because they do "not *aid* the [factfinder] in making a decision, but rather attempt[] to substitute the expert's judgment for the [factfinder's]." *Elsayed Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1066, n.10 (9th Cir. 2002) (emphasis in original).[2]  The Ninth Circuit has "repeatedly affirmed that 'an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law.'" *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir.

---

[2] *Overruled on other grounds by Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457 (9th Cir. 2014) (en banc).

1  2017) (quoting *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004)
2  (emphasis in original).

3        In these cases, Plaintiffs contend that Uber is subject to Title III of the ADA because they
4  claim Uber is a private entity that is "primarily engaged in the business of transporting people."  42
5  U.S.C. § 12184(a).   Dr. Cooper offers an opinion on whether Uber is "primarily engaged in the
6  business of transporting people."  Report 25.  But what that statutory phrase means and whether it
7  embraces Uber are legal questions for the Court to decide. *See, e.g.*, *Lopez v. Catalina Channel
8  Express, Inc.*, 974 F.3d 1030, 1033 (9th Cir. 2020) ("The interpretation of [the ADA] is a
9  question of law.");  *United States v. Lira-Barraza*, 897 F.2d 981, 985 (9th Cir. 1990) (all questions
10 of statutory interpretation and construction are "questions of law"); *Whooley v. Tamalpais Union
11 High Sch. Dist.*, 399 F. Supp. 3d 986, 997 (N.D. Cal. 2019) (Seeborg, J.) (whether defendant is a
12 "business establishment" for purposes of the California Unruh Civil Rights Act "is a question of
13 law").  As a matter of settled law, Dr. Cooper's opinion on this legal issue is therefore an
14 inadmissible expert opinion that will not aid the Court in resolving any question of fact.  Fed. R.
15 Evid. 702(a).

16 **II.  Dr. Cooper's Opinions About What The ADA Requires And How It Should Be Applied Are Inadmissible Legal Conclusions And Improper Argument.**

18       Dr. Cooper's report also includes a variety of opinions that are merely *legal* arguments
19 about what the ADA requires of covered entities and how it should apply in these cases.  He claims
20 all Transportation Network Companies (or, "TNCs") "have a duty to provide accessibility under
21 the meanings of the Americans with Disabilities Act."  Report 25.  He claims that a failure to
22 comply with a "[s]ection 37.105 of the ADA … constitutes a breach of disability legislation."[3] *Id.*
23 at 10.  And he claims that because Uber includes an uberWAV option in its apps elsewhere, doing
24 so in New Orleans and Jackson would not "fundamentally alter the nature of Uber's
25 goods/services." *Id.* at 25.

26       Dr. Cooper's attempts to tell the Court what the law is, and how to apply it, are patently
27 improper opinion testimony about the interpretation and application of law for the same reasons

---

[3] The Americans with Disabilities Act does not include any section 37.105.

1  Dr. Cooper's improper opinion about whether Uber is "primarily engaged in the business of
2  transporting people." These legal conclusions and assertions of legal arguments, in the guise of
3  expert testimony, invade the exclusive province of this Court and must be excluded. *Diaz*, 876 F.3d
4  at 1199 (opinions that "attempt to instruct the jury on the law, or how to apply the law to the facts
5  of the case" are impermissible legal conclusions); *Rodriguez v. Barrita, Inc.*, 2012 WL 2308069,
6  at *2 n.1 (N.D. Cal. 2012) (Seeborg, J.) ("An affidavit from an architectural expert who is not a
7  member of the bar is not a proper vehicle for advancing legal arguments.").

**III.   Dr. Cooper's Opinion That There Is A "Potential Supply" Of WAVs in New Orleans And Jackson Will Not Aid The Factfinder In Determining Any Fact At Issue.**

Dr. Cooper asserts that "a potential supply of vehicles can exist in both New Orleans and Jackson markets." Report 26. As Dr. Cooper explains this assertion: "Not only is it likely that supply will be encouraged as the observed demand for WAVs becomes apparent, actual use replacing its suppression, but also that Uber has available such mechanisms as may be needed to support and encourage that supply." *Id.* at 26–27. This opinion also fails to "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).

Plaintiffs claim Uber violated 42 U.S.C. § 12184(b)(2) by not acceding to their requests to use Uber's "resources, internal knowledge, and business know-how" to (i) modify the Uber Rider App in Jackson and New Orleans to include a WAV request option; (ii) ensure that fleets of 30–60 WAVs and 20–60 WAVs were available to respond to ride requests on the Uber platform in New Orleans and Jackson, respectively; and (iii) provide WAV service in New Orleans and Jackson that meets the equivalency standard of 49 C.F.R. § 37.105. *Crawford* FAC ¶¶ 69, 73, 74; *Namisnak* SAC ¶¶ 70, 75 & Ex. E. In deposition, however, Plaintiffs made clear that they are not interested in anything less than equivalent service. Ex. C at 56:18–58:3; Ex. D at 62:12–13, 67:22–68:2; Ex. E at 57:13–52:2, 59:7–15, 62:6–18. To prove their claims, Plaintiffs must prove their demand for equivalent service is, among other things, "reasonable." 42 U.S.C. § 12184(b)(2)(A); *id.* § 12182(b)(2)(A)(ii).

That there might be WAVs in New Orleans and Jackson is not probative of the reasonableness question or any fact in issue. What matters for purposes of assessing reasonableness

is whether there *are enough WAVs* in those cities *to meet Plaintiffs' demand* for equivalent service (or even their now-disclaimed demand for up to 60 WAVs). *See Fortyune*, 364 F.3d at 1083 (analyzing the specific modification Plaintiff requested). But Dr. Cooper does not opine on whether there are *enough* WAVs in New Orleans and Jacksons to meet Plaintiffs' demands. Instead, Dr. Cooper merely opines that a "*potential* supply" might exist. Report 26. Indeed, given that Dr. Cooper bases this opinion on letters from *Uber's* counsel, referring Plaintiffs to WAV transportation providers in their cities (*see id.*), the question whether there is *any* potential supply of WAVs in those cities is not a fact "in issue." Fed. R. Evid. 702(a). But the more fundamental problem is that Dr. Cooper's proffered testimony is completely disconnected from Plaintiffs' actual claims and thus are not "sufficiently tied to the facts of the case[s]" to be admissible. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 591 (1993).

**IV. Dr. Cooper's Opinion That It Is "Reasonable" for Uber to "Provide UberWAV" is Inadmissible for Several Reasons.**

Dr. Cooper concludes his report by asserting that it would be a "reasonable approach" for Uber to "provide UberWAV in both cities." Report 28. To the extent Dr. Cooper intends to opine on whether Plaintiffs' requested modifications are "reasonable" under 42 U.S.C. § 12184(b)(2)(A), such opinion is inadmissible for at least four, independently sufficient reasons.

*First*, Dr. Cooper's opinion that a proposed modification is "reasonable" amounts to "a thinly disguised attempt to tell the [factfinder] what verdict to reach." 3 Christopher B. Mueller & Laird C. Kirpatrick, *Federal Evidence* § 7:12 (4th ed.). Which is to say, this is another improper legal opinion that "attempts to substitute the expert's judgment for the [factfinder's]," rather than aid the Court in resolving a fact in issue. *Elsayed*, 299 F.3d at 1066 n.1.

*Second*, Dr. Cooper's opinion will not help the Court "understand the evidence or determine a fact in issue." Fed. R. Evid. 702(a). At issue is whether Plaintiffs' specific demands—equivalent service and up to 60 WAV Drivers—are "reasonable." But Dr. Cooper does not offer an opinion about whether it is reasonable for Uber to meet those demands; he simply opines that it is reasonable for Uber to "provide UberWAV in both cities." Report 28. This opinion, too, is not "sufficiently tied to the facts of the case[s]" to be admissible. *Daubert*, 509 U.S. at 591.

1    *Third*, Dr. Cooper does not demonstrate the necessary qualifications to opine on the "reasonableness" of a modification. Dr. Cooper's purported qualifications are limited to his experience. *See* Report 6–7. Accordingly, to be qualified as an expert, he needed to "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Lucido v. Nestle Purina Petcare Co.*, 217 F. Supp. 3d 1098, 1102 (N.D. Cal. 2016) (citing Fed. R. Evid. 702, 2000 Advisory Committee Notes). Dr. Cooper does not do any of that. He does not identify any prior experience analyzing the "reasonableness" of a proposed modification under the ADA or even the "reasonableness" of anything relating to wheelchair accessible vehicle service. Nor does he explain how or why that experience gives him a basis to opine on the reasonableness of a modification in these cases. Dr. Cooper offers only the thinnest explanation for why "providing UberWAV" would be reasonable. *See* Report 20 (noting that "UberWAV" is available in other cities). But the Court's "gatekeeping function requires more than simply 'taking the expert's word for it.'" *640 Octavia, LLC v. Pieper*, 2019 WL 1201581, at *2 (N.D. Cal. 2019) (quoting Fed. R. Evid. 702 Advisory Committee Notes).

*Finally*, Dr. Cooper's opinion on reasonableness is not "based on sufficient facts or data." Fed. R. Evid. 702(c). Reasonableness requires a case-by-case inquiry that considers, among other factors, "the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1083 (9th Cir. 2004). Cost, therefore, is a critical element in determining whether a modification is "reasonable." *See id.*

Only three paragraphs of Dr. Cooper's 30-page report address costs at all. *See* Report 27. And nowhere in that abbreviated discussion does Dr. Cooper state what it would cost Uber to "provide UberWAV" in New Orleans or Jackson, even though he claims to have reviewed a "number of statements" in unidentified "Uber documentation" that "address costs." *Id.* Dr. Cooper does not provide any basis for ignoring those statements. Nor does he explain why he ignored, among other things, Uber's 30(b)(6) testimony regarding the costs associated with Uber's pilot WAV program. Ex. B at 125:12–15 ("The question is how does WAV not be a substantial loss.

1  And so like before you talk about making a profit you have to not be burning a whole lot of
2  money"). Or why he disregarded Uber's business records—the budgets prepared specifically for
3  WAV—that document and detail Uber's costs associated with WAV. *See* Exs. 2 & 3 to Defs.'
4  Mot. for Summ. J. Without any serious accounting of the actual cost to Uber to meet Plaintiffs'
5  demands, Dr. Cooper's "reasonableness" opinion is not based on sufficient facts or data to be
6  admissible. *See, e.g.*, *Guidroz–Brault v. Mo. Pac. R.*, 254 F.3d 825, 830–31 (9th Cir. 2001)
7  (excluding expert testimony "not sufficiently founded on the facts" of the case); *In re Citric Acid*
8  *Litig.*, 191 F.3d 1090, 1102 (9th Cir. 1999) ("When an expert opinion is not supported by sufficient
9  facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise
10 render the opinion unreasonable, it cannot support a jury's verdict.")

## **CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' motion *in limine* and exclude Dr. Cooper from offering expert testimony under Federal Rule of Evidence 702.

Dated: April 19, 2020

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By: s/ Anne Marie Estevez
Anne Marie Estevez
Stephanie Schuster
Patrick Harvey
Kathy H. Gao

*Attorneys for Defendants*