William Most (CA # 279100)
AQUA TERRA AERIS LAW GROUP
4030 Martin Luther King Jr. Way
Oakland, CA 94609
T: (650) 465-5023
williammost@gmail.com

Garret S. DeReus (LA # 35105)*
Andrew D. Bizer (LA # 30396)*
*Admitted *pro hac vice*
BIZER & DEREUS, LLC
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996
gdereus@bizerlaw.com
andrew@bizerlaw.com

Karla Gilbride (CA # 264118)
PUBLIC JUSTICE, P.C.
1620 L St. NW, Ste. 630
Washington, DC 20036
T: 202-797-8600
kgilbride@publicjustice.net

Attorneys for Plaintiffs Scott Crawford,
Stephan Namisnak, and Francis Falls

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

SCOTT CRAWFORD,

Plaintiff,

v.

UBER TECHNOLOGIES, INC. and
RASIER, LLC,

Defendants.

Case No. 3:17-cv-02664-RS

**Opposition to Motion to Exclude Testimony of Dr. James Cooper Under FRE 702**

Hearing Date: July 15, 2021, 1:30 p.m.
Judge: Hon. Richard Seeborg
Courtroom #3, 17th Floor

STEPHAN NAMISNAK and FRANCIS
FALLS,

Plaintiffs,

v.

UBER TECHNOLOGIES, INC. and
RASIER, LLC,

Defendants.

Case No. 3:17-cv-06124-RS

**Opposition to Motion to Exclude Testimony of Dr. James Cooper Under FRE 702**

Hearing Date: July 15, 2021, 1:30 p.m.
Judge: Hon. Richard Seeborg
Courtroom #3, 17th Floor

## Table of Contents

TABLE OF CONTENTS…………………………………………………………..ii

TABLE OF AUTHORITIES…………………………………………………...iii

I.     INTRODUCTION………………………………………………...1

II.    LEGAL STANDARD………………………………………….2

III.   ANALYSIS……………………………………………………...3

     a.  Uber's Motion Should Be Denied as to Dr. Cooper's Opinions and
        Testimony which Uber Does Not Address……………………………..3

     b.  The Motion Should Be Denied Because Whether Uber Is in the Business
        of Transporting People Is a Mixed Question of Law and Fact, Not a
        Pure Legal Issue…………………………………………………………5

     c.  The Motion Should Be Denied Because any Testimony by Dr. Cooper That
        Purportedly Strays into Legal Conclusions Can Be Addressed by Objection
        at Trial……………………………………………………………………6

     d.  The Motion Should Be Denied Because Plaintiffs Have Never Said They
        Would Reject "Anything Less Than Equivalent Service."…………………7

     e.  The Motion Should Be Denied Because Whether It Would Be a "Reasonable
        Approach" for Uber to Provide WAV Service Is a Question of Fact
        Amenable to Expert Testimony……………………………………………9

IV.    CONCLUSION……………………………………………..…...10

CERTIFICATE OF SERVICE ................................................................ 11

1

## Table of Authorities

2

**Cases**

3

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
   509 U.S. 579 (1993) ................................................................................ 2, 10

4

5

*Deal v. Hamilton Cnty. Bd. of Educ.,*
   392 F.3d 840 (6th Cir. 2004) .................................................................. 2, 3

6

7

*EEOC v. UPS Supply Chain Solutions,*
   620 F.3d 1103 (9th Cir. 2010) ..................................................................... 9

8

*Elsayed Mukhtar v. Cal. State Univ., Hayward,*
   299 F.3d 1053 (9th Cir. 2002) ..................................................................... 3

9

10

*Fed. Trade Comm'n v. BurnLounge, Inc.,*
   753 F.3d 878 (9th Cir. 2014) ....................................................................... 2

11

12

*Freund v. Butterworth,*
   165 F.3d 839 (11th Cir. 1999) ..................................................................... 6

13

*Kennedy v. Collagen Corp.,*
   161 F.3d 1226 (9th Cir. 1998) ................................................................... 10

14

15

*Kivel v. U.S.,*
   878 F.2d 301 (9th Cir. 1989) ....................................................................... 5

16

17

*Martin v. Ind. Mich. Power Co.,*
   292 F.Supp.2d 947 (W.D.Mich.2002) ........................................................ 6

18

19

*Messic v. Novartis Pharms. Corp.,*
   747 F.3d 1193 (9th Cir. 2014) ..................................................................... 3

20

21

*Perry v. Schwarzenegger,*
   702 F. Supp. 2d 1132 (N.D. Cal. 2010) ...................................................... 4

22

*Reiffin v. Microsoft Corp.,*
   270 F. Supp. 2d 1132 (N.D. Cal. 2003) ...................................................... 7

23

24

*Sheehan v. City of S.F.,*
   743 F.3d 1211 (9th Cir. 2014) ..................................................................... 9

*Southland Sod Farms v. Stover Seed Co.,*
   108 F.3d 1134 (9th Cir. 1997) ................................................................... 10

*U.S. ex rel. Oliver v. The Parsons Corp.,*
   498 F.Supp.2d 1260 (C.D. Cal. 2006) ........................................................ 5

*U.S. v. Diaz,*
    876 F. 3d 1194 (9th Cir. 2017) ................................................................. 6

*United Energy Trading, LLC v. PG&E,*
    15-cv-02383 (N.D. Cal., Oct. 16, 2018) .............................................. 2

*Volk v. United States,*
    57 F. Supp. 2d 888 (N.D. Cal. 1999) ................................................ 3

*Whitehouse Hotel Ltd. P'ship v. Comm'r of Internal Revenue,*
    615 F.3d 321 (5th Cir. 2010) ............................................................. 3

**Rules**

Fed. R. Evid. 702 ...................................................................................... 2

## I.    Introduction

In its FRE 702 motion, Uber asks this Court to exclude Plaintiff's expert, Dr. James Cooper, from offering any expert testimony whatsoever at trial. R. Doc. 154 at 8.

Dr. Cooper is "a transportation professional specialized in ground transport, taxi and for hire vehicle analysis, accessible and social transportation, operation and policy development." R. Doc. 154-1 at 4. He has a Ph.D. in Taxi Licensing and Control from Napier University and a MSc in Transport from the University of Wales, Cardiff. *Id.* He has three published books and chapters, and more than forty-seven other publications, many of them directly addressing the intersection of accessibility and transportation. *Id.* at 5 – 9. He has served as the director of two transportation-related organizations, and was for more than a decade the Head of Taxi Studies at Edinburgh Napier University. *Id.* at 4. He has researched and written reports on the elasticity of demand in the for-hire vehicle market (*id.*), studied taxi and TNC demand and price elasticity in the United States (*id.*), and conducted a variety of other studies about the impact and methods of transportation network companies like Uber (*id.* at 5).

Plaintiffs retained Dr. Cooper as a transportation expert. Dr. Cooper reviewed and analyzed more than 55 documents. R. Doc. 154-1 at 31-33 (appendix). Dr. Cooper's expert report methodically reviews his background, education, experience, and work performed in this case. Dr. Cooper meticulously cites facts, research articles, court cases, and third-party sources in footnotes throughout his report. *Id.* at 9-31. Dr. Cooper evaluates numerous germane transportation issues in his report. For example, Dr. Cooper evaluates the scope of how demand-responsive passenger transportation operates. *Id.* at 11. Dr. Cooper evaluates the corporate structure of Uber and its subsidiaries. *Id.* at 11-12.  Dr. Cooper evaluates Uber's use of limitations on passengers, including an ability to blacklist or decline service request.  *Id.* at 12. Dr. Cooper looks at the "decisive

influence" Uber has over all aspects of its services.  *Id*. at 20. And these are just a sampling of the varied transportation issues Dr. Cooper offers specialized and expert testimony on.

In its Daubert motion, Uber seeks to exclude <u>all</u> of Dr. Cooper's expert testimony, without exception. R. Doc. 154 at 13 (seeking to exclude "Dr. Cooper from offering expert testimony"). Uber claims that it can only "divine" four opinions in all of Dr. Cooper's thirty-page report, and provides argument only as to those four opinions. *Id*. at 7-8. Those opinions are:

1. What kind of business Uber is in;

2. Uber's obligations under the ADA, and whether providing UberWAV in New Orleans and Jackson would fundamentally alter the nature of Uber's services;

3. Whether there is a potential supply of WAVs in New Orleans and Jackson; and

4. Whether it would be a reasonable approach to provide UberWAV in those cities.

As described below, none of Uber's arguments should bar Dr. Cooper from testifying – especially considering that the expert witness "'gatekeeper' doctrine was designed to protect juries and is largely irrelevant in the context of a bench trial." *Deal v. Hamilton Cnty. Bd. of Educ*., 392 F.3d 840, 852 (6th Cir. 2004); *see also Fed. Trade Comm'n v. BurnLounge, Inc.*, 753 F.3d 878, 888 (9th Cir. 2014) (in bench trial, "there is less danger that a trial court will be unduly impressed by the expert's testimony or opinion"). The motion should be denied.

## II.   Legal Standard

To testify at trial as an expert, Rule 702 of the Federal Rules of Evidence requires that the witness be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Expert opinion testimony is reliable if such knowledge has a "basis in the knowledge and experience of [the relevant] discipline." *United Energy Trading, LLC v. PG&E*, 15-cv-02383, R. Doc. 258 at *2 (N.D. Cal., Oct. 16, 2018), *citing Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 592 (1993). There are a range of factors for evaluating expert reliability, and the "standard is flexible." *Id*. And "Rule 702 should be applied with a 'liberal thrust' favoring

admission," subject to the normal rules of reliability. *Messic v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014).

When considering expert testimony offered pursuant to Rule 702, the trial court acts as a "gatekeeper" by "making a preliminary determination of whether the expert's testimony is reliable." *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002).

But where the matter will proceed by bench trial, as in this instance, "the importance of the trial court's gatekeeper role is significantly diminished . . . because, there being no jury, there is no risk of tainting the trial by exposing a jury to unreliable evidence." *Whitehouse Hotel Ltd. P'ship v. Comm'r of Internal Revenue*, 615 F.3d 321, 330 (5th Cir. 2010); *Volk v. United States*, 57 F. Supp. 2d 888, 896 n. 5 (N.D. Cal. 1999) ("[T]he Daubert gatekeeping obligation is less pressing in connection with a bench trial" where "the 'gatekeeper' and the trier of fact [are] one and the same."); *Deal v. Hamilton Cnty. Bd. of Educ.*, 392 F.3d 840, 852 (6th Cir. 2004) ("The 'gatekeeper' doctrine was designed to protect juries and is largely irrelevant in the context of a bench trial.")

## III.    Analysis

### A.    Uber's Motion Should Be Denied as to Dr. Cooper's Opinions and Testimony which Uber Does Not Address.

Uber's motion asks that Dr. Cooper be excluded from offering any expert testimony whatsoever. R. Doc. 154 at 8. But to support that request, Uber only offers argument regarding four specific opinions: (1) what of business Uber is in; (2) Uber's obligations under the ADA and what would fundamentally alter its services; (3) whether there is a supply of WAVs in New Orleans and Jackson; and (4) whether it would be a reasonable approach to provide UberWAV in those cities. Uber contends these are the only four onions it has "divined" from Dr. Cooper's thirty-page expert report. R. Doc. 154 at 7.

Dr. Cooper's actual testimony, however, will be far broader than those four opinions. In addition to those topics, his report also addresses:

- The broader scope of how demand-responsive passenger transportation operates (R. Doc. 154-1 at 10-11);

- The corporate structure of Uber and its subsidiaries (*id*. at 11-12);

- Uber's use of call centers as an alternative to in-app booking (*id*. at 11);

- Uber's use of limitations on passengers, including an ability to blacklist or decline service request (*id*. at 12);

- Uber's use of a feature to hide aspects of its operations from government regulators (*id*.);

- Challenges faced by wheelchair users in accessing transportation (*id*. at 13);

- The range of methods by which Uber could supply WAVs (*id*. at 14);

- Potential partnerships with public paratransit entities (*id*. at 14-15);

- The non-financial benefits associated with the development of UberWAV (*id*. at 16);

- The "decisive influence" Uber has over all aspects of its services (*id*. at 20);

- Contradictions in Uber's claims about WAV cost (*id*. at 23);

- WAV mandates that have been applied to Uber, and the results thereof (*id*. at 25); and

- Options for cross subsidies from an accessibility fund (*id*. at 27).

*Etc*.

Because Uber provides no argument or rationale for the exclusion of any opinions other than the enumerated four, this Court should as an initial matter deny Uber's request to prevent Dr. Cooper from offering any expert testimony generally. *See Perry v. Schwarzenegger*, 702 F. Supp. 2d 1132, 1137 (N.D. Cal. 2010) ("Because proponents make no argument that they (as opposed to the state defendants or plaintiffs) will be irreparably injured absent a stay, proponents have not given the court any basis to exercise its discretion to grant a stay.")

**B.** **The Motion Should Be Denied Because Whether Uber Is in the Business of Transporting People Is a Mixed Question of Law and Fact, Not a Pure Legal Issue.**

Uber seeks to exclude any opinion by Dr. Cooper as to whether Uber is in the "business of transporting people." *Crawford*, R. Doc. 154 at 8-9. It argues that his opinion on this point would speak to an "ultimate issue of law" and so should be excluded. *Id.*

Dr. Cooper provides pages of detailed and exhaustive report about the factual and expert opinions underlying his ultimate conclusion. R. Doc. 154-1 at 9-30. Dr. Cooper looks at decisive influence factors, including Uber's control of operational parameters, including the setting of fares, the use of dynamic pricing, materials that have been learned through court cases, and statements by Uber, its board members, and its subsidiaries. *Id.* at 20-21. Uber does not argue that Dr. Cooper's detailed assessment and analysis is flawed. Instead, Uber simply takes issue with Dr. Cooper summary, provided after the completion of his analysis, where he wraps up his analysis by stating that "Uber is a transportation company, primarily engaged in the business of transportation people." Dr. Cooper can certainly testify about his factual analysis, methodologies, and research—all of which is highly relevant to the issue of whether Uber is providing transportation.

But even Dr. Cooper's ultimate conclusion is not inadmissible because it is *not* a pure issue of law. This Court has already determined that whether Uber is "primarily engaged in the business of transporting people" is a "a mixed question of law and fact." *Crawford*, ECF No. 80 at 7. And an expert opining as to a mixed question of law and fact does not present the same problems as a pure issue of law. *See Kivel v. U.S.*, 878 F.2d 301, 304 (9th Cir. 1989) ("The district court heard conflicting expert testimony and then reached its own conclusion as to what was reasonable. Clearly, 'reasonable' is a mixed question of fact and law."); *U.S. ex rel. Oliver v. The Parsons Corp.*, 498 F.Supp.2d 1260, 1281 (C.D. Cal. 2006) ("Further expert analysis is necessary to resolve this mixed question of law and fact."); *but see Freund v. Butterworth*, 165 F.3d 839, fn. 34 (11th

Cir. 1999) (allowing expert testimony would be "inconsistent with our recognition that the issue involved is a mixed question of law and fact.")

While Dr. Cooper's ultimate conclusion is that "Uber is a transportation company, primarily engaged in the business of transportation people," his primary value is in his detailed and thorough assessment of the facts and factors that go into this assessment. It will be helpful for this Court to learn, from a renowned transportation expert, about Uber's control of operational parameters, its setting of fares, its use of dynamic pricing, materials that have been learned through court cases, and statements by Uber, its board members, and its subsidiaries.  Moreover, Dr. Cooper's summarizing conclusion presents "minimal if not nonexistent" danger given that this case will be tried without a jury. *Martin v. Ind. Mich. Power Co.*, 292 F.Supp.2d 947, 959 (W.D.Mich.2002) (concluding that dangers that legal expert testimony presents are "minimal if not nonexistent" where a court is the trier of fact)

Furthermore, Uber has repeatedly proffered <u>non-expert</u> testimony and argument about what business Uber is in. *See, e.g.*, *Crawford*, R. Doc. 157 (Dec. of Niraj Patel, describing what would "be a radical departure from Uber's business model"); *Crawford*, R. Doc. 63 at 28 (arguing that Uber's business is "primarily technology, and explicitly not on a business model of owning vehicles and employing drivers."); *Crawford,* R. Doc. 80 at 6 (noting that "Uber views itself as a technology company"). Uber can hardly offer *non-expert* witnesses to testify about the nature of Uber's business model, and then object to Plaintiff's *expert* witness testifying on the same topic. Uber's motion should be denied.

**C.**     **The Motion Should Be Denied Because any Testimony by Dr. Cooper That Purportedly Strays into Legal Conclusions Can Be Addressed by Objection at Trial.**

Federal Rule of Evidence 704(a) specifies that "[a]n opinion is not objectionable just because it embraces an ultimate issue." An expert cannot opine, however, on a legal conclusion or a "ultimate issue of law." *U.S. v. Diaz*, 876 F. 3d 1194 (9th Cir. 2017).

Here, Uber objects to three short passages from Dr. Cooper's thirty-page expert report that it contends contain legal conclusions. *Crawford*, R. Doc. 154 a 9. Two of those passages, totaling twenty-six words, probably *are* legal conclusions: that TNCs "have a duty to provide accessibility under the meanings of the Americans with Disabilities Act" and that a failure to comply with "[s]ection 37.105 of the ADA … constitutes a breach of disability legislation." *Id.*

The third passage is not a legal conclusion, however. That passage speaks to whether providing UberWAV in New Orleans and Jackson would "fundamentally alter the nature of Uber's goods/services." *Id.* This Court held that "[w]hether providing WAV service will 'fundamentally alter' the nature of Uber's business is a question of fact . . . ." *Crawford*, R. Doc. 80 at 8. As a question of fact, that issue is appropriate for expert testimony.

If Dr. Cooper should offer legal conclusions rather than ultimate issue opinions at trial, that can be handled by trial objections. It is not a reason to completely exclude him from testifying at trial. *See, e.g, Reiffin v. Microsoft Corp.*, 270 F. Supp. 2d 1132 (N.D. Cal. 2003) (striking a single paragraph that offered an impermissible legal conclusion, and allowing the remainder of the declaration to stand). The motion should be denied.

**D.    The Motion Should Be Denied Because Plaintiffs Have <u>Never</u> Said They Would Reject "Anything Less Than Equivalent Service."**

Uber objects to Dr. Cooper's opinion that a "a potential supply of vehicles can exist in both New Orleans and Jackson markets." *Crawford*, R. Doc. 154 at 10. They argue that the opinion is not relevant because Plaintiffs have "made clear that they are not interested in anything less than equivalent service," and merely a "potential supply" would not speak to whether there could be fully equivalent service. *Id.*

That comes as a surprise to Plaintiffs, who have **<u>never</u>** taken such a position. Take for example the following testimony, which Uber cites for the proposition that Plaintiff Stephan Namisnak is "not interested in anything less than equivalent service":

But I'd like to underscore that what I'm looking for is to get Uber, you know, to be able to, you know, from wherever I am in the New Orleans area, to be able to get on the phone and for something that's similar to what any other Uber customer would enjoy in terms of service and response time, to be able to get a ride.

And if there's, you know, not as many accessible vehicles out there as there are accessible ones, if my ride takes a few minutes longer, then as a disabled person, that's the kind of thing that I have to deal with. Should I have to? Not necessarily, but I do. And I'm not unreasonable if it's going to take a few minutes longer because there's not quite as many. So it's not about the exact number, it's about the equivalency of service within a roughly similar time that I can reliable get a car and get, you know, from where I am to where I need to be.

Ex. C to Uber's Motion at 56:18–58:3.

Does that testimony suggest *in any way* that Mr. Namisnak is "not interested in anything less than equivalent service"? Not even remotely. Mr. Namisnak explained that he is aiming for "roughly similar" and would be okay with some number of "minutes longer" than non-WAV customers. Cf. *Crawford*, R. Doc. 148-16 (Falls Dep.) at 62:19-63:5 (explaining that he would download the app for UberWAV even if the wait time was longer for disabled people than non-disabled people because "I'm just trying to get where I need to be at."); *Crawford*, R. Doc. 148-12 (Crawford Dep.) at 43:7-12 (explaining that he would use Uber's service if "it were reliable, and mostly equivalent").

Because Uber's motion is premised on a complete and utter fabrication of what it wants Plaintiff's position to be, the motion should be denied.

Finally, Uber argues that whether there are WAVs in New Orleans and Jackson "is not probative of the reasonableness question or any fact at issue." But the "potential supply" of WAVs in New Orleans and Jackson is highly germane. A repeated argument by Uber is that there are insufficient WAVs in New Orleans and Jackson. Dr. Cooper explained that supply of WAVs changes and develops over time and a relationship exists "between nascent demand, suppressed demand and developing supply." R. Doc. 154-1 at 14. That is to say, while there may not be plethora of WAVs "on the road" at this very moment, that fact is not static. As Dr. Cooper

1    explained "[r]eliance on one option alone, or its presentation as lacking sufficient supply (supply

2    shortage) in one of multiple options, would under-estimate the potential supply available to the

3    company." *Id.* at 30. Dr. Cooper's testimony is directly connected to Plaintiffs' claims and he

4    should not be excluded as an expert.  The motion should be denied.

5    **E.    The Motion Should Be Denied Because Whether It Would Be a "Reasonable**
6         **Approach" for Uber to Provide WAV Service Is a Question of Fact Amenable to**
         **Expert Testimony.**
7
8         Uber finally objects to Dr. Cooper's summation that it would be a "reasonable approach"

9    for Uber to "provide UberWAV in both cities." *Crawford*, R. Doc. 154 at 11-13.

10        Uber first argues that the question of what is "reasonable" is a question of law not

11   appropriate for expert testimony. *Id.* at 11. But "the reasonableness of an accommodation is

12   ordinarily a question of fact," not a question of law. *Sheehan v. City of S.F.*, 743 F.3d 1211, 1233

13   (9th Cir. 2014) ("the reasonableness of an accommodation is ordinarily a question of fact,"), *rev'd*

14   *in part on other grounds*, *citing EEOC v. UPS Supply Chain Solutions*, 620 F.3d 1103, 1110 (9th

15   Cir. 2010).

16        Uber next argues that Plaintiffs seek nothing less than "equivalent service and up to 60

17
18   WAV Drivers," and so Dr. Cooper's opinion is irrelevant. *Id.* at 11. As described above, that is a

19   complete fabrication of Plaintiff's position and can be disregarded.

20        Finally, Uber complains that Dr. Cooper's qualifications are insufficient and Uber

21   complains that an insufficient portion of Dr. Cooper's report is dedicates to the issue of cost.  *Id.*

22   at 12 (complaining that "[o]nly three paragraphs… address costs at all."). Dr. Cooper has been

23   involved in transportation study and research for more than four decades, and has conducted

24   numerous studies in the field – some of which directly involve cost modeling. *E.g.*, R. Doc. 154-1

at 7 ("Report 1 - Technical Report Cost Model; Report 2 - Analytical Report, Economic Analysis,

Quality Review"). Uber's criticism of Dr. Cooper's expertise, and whether he sufficiently focused

on costs, is a merits-based attack that goes to the weight of his testimony – not whether he should be allowed to give it at all. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1228 (9th Cir. 1998) (trial court must "distinguish between the threshold question of admissibility of expert testimony and the persuasive weight to be accorded such testimony"); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 (9th Cir. 1997) ("asserted defects" in assumptions underlying expert testimony "go to the weight, and not the admissibility" of that testimony).

Finally, Uber asserts that Dr. Cooper "disregarded" Uber's business records. R. Doc. 154, p. 13. Dr. Cooper did not "disregard" Uber's business records, as is evidenced by the fact that Dr. Cooper reviewed numerous business records from Uber. Unquestionably, Dr. Cooper did not review all 30,000+ pages of materials produced by Uber during discovery. But Dr. Cooper provided a 30-page report that cites dozens of sources and provides explanation of numerous relevant transportation issues. To the extent that Uber subjectively believes that Dr. Cooper should have focused on alternative or different source documents, the solution to said purported defect is "vigorous cross-examination" and the "presentation of contrary evidence." Uber was free to have their own expert testify on the topics raised in Dr. Cooper's report, but Uber declined to identify any experts.

## IV.    Conclusion

For the reasons above, this Court should grant deny Defendants' motion to exclude testimony of Dr. Cooper.

By Plaintiffs, by and through their counsel,

/s/ *William Most_____*                    /s/ *Garret S. DeReus_____*
William Most (CA # 279100)                       Bizer & DeReus, LLC
AQUA TERRA AERIS LAW GROUP                       Garret S. DeReus (LA # 35105)*
4030 Martin Luther King Jr. Way                  gdereus@bizerlaw.com
Oakland, CA 94609                                Andrew D. Bizer (LA # 30396)*
williammost@gmail.com                            andrew@bizerlaw.com
(504) 509-5023                                   *Admission *pro hac vice*

Karla Gilbride (CA # 264118)                     3319 St. Claude Ave.
PUBLIC JUSTICE, P.C.                             New Orleans, LA 70117
1620 L St. NW, Ste. 630                           T: 504-619-9999; F: 504-948-9996
Washington, DC 20036
T: 202-797-8600
kgilbride@publicjustice.net

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2021, a copy of the foregoing was filed electronically with the Clerk of Court via the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.


        */s/ Garret S. DeReus*
         GARRET S. DEREUS