1   MORGAN, LEWIS & BOCKIUS LLP        MORGAN, LEWIS & BOCKIUS LLP
    Anne Marie Estevez (*pro hac vice*)    Ethel J. Johnson (*pro hac vice*)
2   600 Brickell Avenue, Suite 1600       1000 Louisiana Street, Suite 4000
    Miami, FL 33131                       Houston, TX 77002
3   T:  305.415.3000                     T: 713.890.5000
    F:  305.415.3001                     F: 713.890.5001
4   annemarie.estevez@morganlewis.com    ethel.johnson@morganlewis.com

5   Stephanie Schuster (*pro hac vice*)    Kathy H. Gao (CA Bar No. 259019)
    Patrick A. Harvey (*pro hac vice*)     300 South Grand Avenue, 22nd Floor
6   1111 Pennsylvania Avenue NW           Los Angeles, CA 90071
    Washington, DC 20004                  T:  213.612.2500
7   T: 202.739-3000                       F:  213.612.2501
    F: 202.739-3001                       kathy.gao@morganlewis.com
8   stephanie.schuster@morganlewis.com
    patrick.harvey@morganlewis.com
9

10  *Attorneys for Defendants*

11
                    IN THE UNITED STATES DISTRICT COURT
12                 FOR THE NORTHERN DISTRICT OF CALIFORNIA
                          SAN FRANCISCO DIVISION
13

14  SCOTT CRAWFORD,

            Plaintiff,                    Case No. 3:17-cv-02664-RS
15
        v.                                **DEFENDANTS' MOTION FOR
16                                         PARTIAL SUMMARY JUDGMENT**

17  UBER TECHNOLOGIES, INC. and          Hearing Date: January 27, 2022, 1:30 p.m.
    RASIER, LLC,                          Judge: Hon. Richard Seeborg
18                                        Courtroom #3, 17th Floor
            Defendants.
19  ─────────────────────────────────
    STEPHAN NAMISNAK and FRANCIS
20  FALLS,                                Case No. 3:17-cv-06124-RS

            Plaintiffs,                   **DEFENDANTS' MOTION FOR
21                                         PARTIAL SUMMARY JUDGMENT**

22      v.                                Hearing Date: January 27, 2022 1:30 p.m.
                                          Judge: Hon. Richard Seeborg
23  UBER TECHNOLOGIES, INC. and          Courtroom #3, 17th Floor
    RASIER, LLC,
24
            Defendants.
25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

Case No-3:17-cv-02664-RS                          DEFENDANTS' MOTIONS FOR
Case No. 3:17-cv-06124-RS                        PARTIAL SUMMARY JUDGMENT

1

## **NOTICE OF MOTION**

2        PLEASE TAKE NOTICE that, in the courtroom of the Honorable Richard Seeborg, located

3   at 450 Golden Gate Avenue, San Francisco, CA 94102, or via a remote hearing as directed by the

4   Court, on January 27, 2022 at 1:30 p.m., or as soon  as counsel may be heard, Defendants Uber

5   Technologies, Inc. and Rasier, LLC's (together "Uber") will and hereby move the Court for partial

6   summary judgment under Federal Rule of Civil Procedure 56 in each of these related cases.  As

7   explained in detail in the accompanying Memorandum of Points and Authorities, based on the

8   undisputed facts and as a matter of law (1) Plaintiffs' claim under 42 U.S.C. § 12184(b)(1) is

9   unsupported by any evidence from which a factfinder could rule in Plaintiffs' favor; (2) Plaintiffs'

10  claim under 42 U.S.C. § 12184(b)(1) fails for lack of Article III standing and lack of statutory

11  standing.

12

13                                                    Respectfully submitted,

14                                                    MORGAN, LEWIS & BOCKIUS LLP
    Dated:  December 23, 2021
15                                                    By: s/ Anne Marie Estevez

16                                                        Anne Marie Estevez
                                                         Ethel J. Johnson
17                                                       Stephanie Schuster
                                                         Patrick A. Harvey
18                                                       Kathy H. Gao

19                                                       *Attorneys for Defendants*

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

MATERIAL FACTS NOT SUBJECT TO GENUINE DISPUTE ................................................. 2

ARGUMENT ............................................................................................................................. 4

      I.       PLAINTIFFS LACK ANY EVIDENCE TO SUPPORT THEIR NEW CLAIM. .................................................................................................... 4

      II.     PLAINTIFFS LACK CONSTITUTIONAL AND STATUTORY STANDING TO ASSERT THEIR NEW CLAIM. ................................................. 7

CONCLUSION ....................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*,
    465 F.3d 1123 (9th Cir. 2006)................................................................... 10

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................................... 4

*Bank of Am. Corp. v. City of Miami*,
    137 S. Ct. 1296 (2017)............................................................................... 7

*Beecham v. United States*,
    511 U.S. 368 (1994)................................................................................... 6

*Brinson v. Linda Rose Joint Venture*,
    53 F.3d 1044 (9th Cir. 1995)..................................................................... 4

*Canyon Cty. v. Syngenta Seeds, Inc.*,
    519 F.3d 969 (9th Cir. 2008)..................................................................... 7

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)................................................................................... 4

*City of Oakland v. Wells Fargo & Co.*,
    14 F.4th 1030 (9th Cir. 2021)..................................................................... 8

*Hall St. Assocs. v. Mattel, Inc.*,
    552 U.S. 576 (2008)................................................................................... 6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014)............................................................................... 7, 8

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)............................................................................. 7, 10

*Madjlessi v. Macy's, Inc.*,
    993 F. Supp. 736 (N.D. Cal. 1997) ........................................................... 5

*Nelson v. Pima Cmty. Coll.*,
    83 F.3d 1075 (9th Cir. 1996)..................................................................... 5

**Statutes**

42 U.S.C. § 12184(b)(1)..................................................................... *passim*

**Rules**

Fed. R. Civ. P. 56(a)................................................................................ 4

Fed. R. Civ. P. 56(c)...........................................................................................................4

**Regulations**

23 C.F.R. § 1340.3 ...........................................................................................................6

40 C.F.R. § 86.1803-01 ...................................................................................................6

49 C.F.R. § 523.2 .............................................................................................................6

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2     Plaintiffs bring a new claim, on the eve of trial, alleging Uber has engaged in discrimination

3 by maintaining generally applicable vehicle requirements that prohibit drivers from onboarding and

4 accepting UberX and UberXL ride requests in "vans" or other vehicles with "after-market seating

5 modifications." Plaintiffs claim that these requirements are discriminatory "eligibility criteria" that

6 "screen out most WAVs" (*i.e.*, wheelchair-accessible vehicles) from the UberX and UberXL

7 ridesharing marketplaces in violation of 42 U.S.C. § 12184(b)(1). The premise of Plaintiffs' claim

8 appears to be that without these requirements, persons who own WAVs would onboard those

9 WAVs and drive them, and that this would somehow benefit Plaintiffs as potential riders.

10 Plaintiffs' late-addition claim fails for several, independently sufficient reasons.

11     *First*, the claim is unsupported by any facts in the record. Indeed, Plaintiffs concede that

12 they have no evidence of any WAV driver who was denied eligibility or deterred from signing up

13 by the challenged vehicle requirements. Nor do Plaintiffs have any evidence that their

14 interpretation of the vehicle requirements is even correct. Uber, however, has offered substantial,

15 uncontroverted evidence that Plaintiffs' interpretation is incorrect: the challenged vehicle

16 requirements do not prohibit drivers from using WAVs to sell rides in the UberX or UberXL

17 marketplaces.

18     *Second*, Plaintiffs cannot directly or concretely link the challenged UberX and UberXL

19 vehicle requirements to their alleged injury—deterrence from using the Uber Rider App because

20 they cannot use it to specifically and reliably request WAV rides. Plaintiffs are not would-be WAV

21 drivers. Rather, Plaintiffs' new theory depends on speculation regarding a host of contingencies

22 following clarification of Uber's vehicle requirements. That speculation is not even plausible, and

23 it demonstrates that Plaintiffs' alleged injuries are not fairly traceable to or proximately caused by

24 the challenged vehicle requirements. Plaintiffs therefore lack both Article III and statutory

25 standing. And in all events, Plaintiffs concede that drivers with WAVs on the UberX or UberXL

26 platforms would not redress their injury; Plaintiffs require the ability to have their ride requests sent

27 only to drivers with WAVs because otherwise, as alleged in the complaints, there is "no way" for

28 them "to find a trained driver or accessible vehicle through the app."

The evidence in the record supports dismissal of this late-addition claim, and the Court should enter summary judgment in Defendants' favor to narrow the issues to be tried.

## MATERIAL FACTS NOT SUBJECT TO GENUINE DISPUTE

Facts relevant to this motion are included in the Argument section below. The key material facts, not genuinely in dispute, are summarized below.

1. Uber Technologies, Inc. develops proprietary software applications used to access digital marketplaces. One such marketplace is the ridesharing marketplace supported by two mobile applications, together the "Uber Apps." One app, the Uber Driver App, is designed for Drivers to receive ride requests and decide whether to accept or reject them. The other, the Uber Rider App, allows riders to create and submit location-based ride requests to Drivers. Declaration of Niraj Patel ¶¶ 4–5 ("Patel Decl.").

2. The Uber Apps include a variety of options permitting riders and drivers to access different marketplaces based on the size and type of vehicle. The most common option, UberX, is for rides in standard, four-door vehicles. Patel Decl. ¶ 5. Uber maintains vehicle requirements for the UberX and UberXL marketplaces that are broad and allow dozens, if not hundreds, of different vehicle makes and models. Exs. A–B.[1]

3. WAVs are typically minivans that have a ramp or lift and modified seating allowing space for the placement and securement of a heavy motorized wheelchair. WAVs can be purchased new or certain standard minivans can be converted into a WAV after-market. Patel Decl. ¶ 7.

4. In certain jurisdictions, including Philadelphia, Chicago, and Washington, D.C., Uber also supports a marketplace called "WAV" (previously "UberWAV") through which a rider can request a ride from a Driver with a WAV and have his or her request sent to drivers with WAVs only. *Crawford*, ECF No. 218 ("Crawford SAC") ¶¶ 62–63; *Namisnak*, ECF No. 181 ("Namisnak TAC") ¶¶ 65–66.

5. Plaintiffs have not downloaded the Uber Rider App but allege they are deterred from downloading the Uber Rider App and creating an Uber account because they cannot use it to request

---

[1] The exhibits cited in this brief are attached to the accompanying declaration of Stephanie Schuster.

1    a ride in a WAV.  Crawford SAC ¶¶ 166–67; Namisnak TAC ¶¶ 174–75.

2        6.    Plaintiffs will not download the Uber Rider App unless Uber ensures, at the very

3    least, "reliable" or "mostly equivalent" service.  Crawford Dep. Tr. 43:7-12 (*Crawford*, ECF

4    No. 171-8); Namisnak Dep. Tr. 56:25–57:12 (*Crawford*, ECF No. 171-6); Falls Dep. Tr. 62:22–

5    63:5 (*Crawford*, ECF No. 171-7).

6        7.    Uber prohibits drivers in New Orleans, Louisiana and Jackson, Mississippi and on

7    the UberX and UberXL platforms from onboarding certain types of vehicles, including "vans, box

8    trucks, or similar vehicles" and vehicles with "aftermarket seating modifications, such as installed

9    seats, seat belts, or BedRyder systems."  Ex. C (New Orleans vehicle requirements); Ex. D (Jackson

10   vehicle requirements); Crawford SAC ¶¶ 142–43 Namisnak TAC ¶¶ 149–50.

11       8.    In Philadelphia Chicago, and Washington, D.C., among others, the same vehicle

12   requirements prohibiting vans and certain aftermarket seating modifications apply and are in effect.

13   Ex. E (Philadelphia vehicle requirements); Ex. F (Chicago vehicle requirements); Ex. G

14   (Washington, D.C. vehicle requirements)

15       9.    Plaintiffs cannot drive.  Crawford SAC ¶ 1; Namisnak TAC ¶ 3.

16       10.   Plaintiffs do not intend to create an account with Uber to become a driver. *See* Ex. H

17   (Crawford Resp. to RFA Nos. 1–2); Ex. I (Namisnak & Falls Resp. to RFA Nos. 1–2).

18       11.   Plaintiffs do not know any individuals who were told by Uber that they cannot seek

19   and accept ride requests in a WAV using the Uber Driver App.   Ex. H (Crawford Resp. to RFA

20   No. 3); Ex. I (Namisnak & Falls Resp. to RFA No. 3).

21       12.   Plaintiffs do not personally know any individuals with a WAV in the United States

22   who were told by Uber that they cannot participate in UberWAV.  Ex. H (Crawford Resp. to RFA

23   No. 4); Ex. I (Namisnak & Falls Resp. to RFA No. 4).

24       13.   Plaintiffs admit that having WAVs available in the UberX marketplace would not

25   provide them with all the relief they are seeking in the litigation.  Ex. H (Crawford Resp. to RFA

26   Nos. 5–7); Ex. I (Namisnak & Falls Resp. to RFA Nos. 5–7)

27       14.   Uber's vehicle requirements in New Orleans and Jackson would not prohibit a

28   Driver from using a WAV to sell rides in the UberX marketplace or UberXL marketplace.

1    Declaration of Robert Rupp ¶ 11 (*Crawford*, ECF No. 174-12) ("Rupp Decl."); Rupp Dep.

2    Tr. 31:24–32:12 (*Crawford*, ECF No. 173-11).

3         15.    Where the WAV marketplace is live, drivers are allowed to onboard WAVs, subject

4    to a separate set of quality and safety standards specific to WAVs.  Patel Decl. ¶ 14.

5                                        **ARGUMENT**

6         Summary judgment is appropriate when there are no genuine issues of material fact and the

7    moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty*

8    *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  After the moving party points out the absence of evidence

9    supporting the opposing party's case, *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the

10   opposing party must demonstrate that there is a genuine issue of material fact, *see Anderson*,

11   477 U.S. at 248.  Plaintiffs can resist summary judgment by pointing to materials in the record that

12   could be presented in a form that would be admissible in evidence.  *See* Fed. R. Civ. P. 56(c).  On

13   the other hand, "mere allegations" will not suffice to show a genuine issue for trial.  *Brinson v.*

14   *Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995).

15   **I.    PLAINTIFFS LACK ANY EVIDENCE TO SUPPORT THEIR NEW CLAIM.**

16        Plaintiffs' theory of liability under 42 U.S.C. § 12184(b)(1) is that Uber's generally

17   applicable vehicle requirements "screen out most WAVs" from the UberX and UberXL ridesharing

18   marketplaces.  Crawford SAC ¶ 146; Namisnak TAC ¶ 153.  Specifically, Plaintiffs challenge the

19   vehicle requirements prohibiting "vans" and "after-market seating modifications" and requiring a

20   minimum number of seats (4 for UberX and 7 for UberXL).  Crawford SAC ¶¶ 142–43, 146;

21   Namisnak TAC ¶¶ 148–49, 153.  Plaintiffs' "screen out" theory, however, is unsupported by any

22   actual evidence.  On the contrary, the uncontroverted evidence in the record shows that Uber's

23   generally applicable vehicle requirements do not, in fact, prohibit WAVs.

24        Plaintiffs lack any knowledge or evidence of any would-be WAV driver who was

25   prohibited, or dissuaded, by the challenged vehicle requirements from using a WAV to sell UberX

26   or UberXL rides:

27   •   Plaintiffs concede that they lack evidence of any person who unsuccessfully attempted to

28       onboard a WAV to sell UberX or UberXL rides.  Ex. J (Crawford Resp. to Interrog. Nos. 1–

3); Ex. K (Namisnak & Falls Resp. to Interrog. Nos. 1–3).

- Plaintiffs concede that they lack evidence of any person who was told she couldn't onboard a WAV to sell X or XL rides. *Id.*; Ex. H (Crawford Response to RFA No. 3) (admitting that Plaintiffs "do not know any individuals who were told by Uber that they cannot seek and accept ride requests in a WAV using the Uber Drivers' App"); Ex. I (Namisnak & Falls Resp. to RFA No. 3) (same).

- Plaintiffs concede they have no evidence of any driver who would onboard a WAV but for the challenged vehicle requirements.  Ex. J (Crawford Resp. to Interrog. No. 6); Ex. K (Namisnak & Falls Resp. to Interrog. No. 6).

In lieu of evidence, Plaintiffs offer only speculation: "the basis of Plaintiff's theory is that Defendant's [sic] discriminatory policy will have a natural and predictable discriminatory effect. It is Plaintiff's experience that if a restaurant has a step at the entrance and no ramp, he will be deterred from attempting to enter the restaurant.  The same notion is applicable here." *Id.* Plaintiffs' comparison to deterrence standing is faulty.  Plaintiffs were at least able to point to actual evidence—their testimony—to support their claims to deterrence standing in this case.  *See Crawford*, ECF No. 197 at 3–6; *Namisnak*, ECF No. 160 at 3–6.  Plaintiffs' assumption that a person with a WAV exists and wants to onboard that WAV on the Uber platform in New Orleans and Jackson is not evidence.  It is bare speculation and thus patently insufficient to defeat summary judgment.  *See, e.g.*, *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment."); *Madjlessi v. Macy's, Inc.*, 993 F. Supp. 736, 742–43 (N.D. Cal. 1997) (granting summary judgment in ADA case because plaintiff's "contention is supported by nothing more than [her] own speculation," and "[s]uch speculation does not preclude summary judgment").

All the actual evidence disproves Plaintiffs' speculation in any event.  Uber does not have a "no WAV" rule.  *See* Exs. C–D.  Plaintiffs' theory that rules prohibiting "vans" and vehicles with "after-market [seating] modifications" implicitly screen out WAVs is meritless.  The premises of Plaintiffs' theory—that "most WAVs are vans that have been altered through after-market modifications," Crawford SAC ¶ 145; Namisnak TAC ¶ 152—are false.

*First*, most WAVs are *minivans*, and consistent with federal law, Uber does not regard "minivans" as "vans." Patel Decl. ¶ 7; Rupp Decl. ¶ 11; *see, e.g.*, 23 C.F.R. § 1340.3 (distinguishing between "passenger car, pickup truck, *van, minivan* or sport utility vehicle) (emphasis added).[2] Uber's website includes a list of vehicles that satisfy the generally applicable vehicle requirements, and that lists identifies many minivans as "eligible vehicles" for UberX and UberXL—like the Toyota Sienna, the Chrysler Pacifica, the Kia Carnival, the Honda Odyssey, and the Dodge Caravan. Exs. A–B. These are also the same vehicles that are frequently used by entities that convert minivans to WAVs. Those vehicles are eligible, notwithstanding the prohibition on "vans," because minivans are not "vans."

*Second*, Uber's prohibition against "after-market seating modifications" is a prohibition against vehicles with passenger seats *added* aftermarket, as each example in the full requirement shows: "No aftermarket seating modifications, such as *installed seats, seat belts, or BedRyder Systems*." Exs. C–D (emphasis added); *cf. Beecham v. United States*, 511 U.S. 368, 371 (1994) ("That several items in a list share an attribute counsels in favor of interpreting the other items as possessing that attribute as well."); *Hall St. Assocs. v. Mattel, Inc*., 552 U.S. 576, 586 (2008) ("[W]hen a statute sets out a series of specific items ending with a general term, that general term is confined to covering subjects comparable to the specifics it follows."). While some WAVs may have after-market modifications to make space for a wheelchair, there is no evidence of WAVs involving the addition of seats after-market. Moreover, not all WAVs become WAVs via after-market modifications. *See* Patel Decl. ¶ 7.

For these reasons, Uber has never construed the rules prohibiting "vans" and "after-market seating modifications" as prohibiting drivers from using WAVs to sell rides on the UberX or

---

[2]    *See also, e.g.*, 49 C.F.R. § 523.2 ("Van means a vehicle with a body that fully encloses the driver and a cargo carrying or work performing compartment. The distance from the leading edge of the windshield to the foremost body section of vans is typically shorter than that of pickup trucks and sport utility vehicles."); 40 C.F.R. § 86.1803-01 ("Van means a light-duty truck or complete heavy-duty vehicle having an integral enclosure, fully enclosing the driver compartment and load carrying device, and having no body sections protruding more than 30 inches ahead of the leading edge of the windshield.").

1    UberXL marketplaces.  Rupp. Decl. ¶ 11; Rupp. Dep. Tr. 31:24–32:12.[3]

2         Finally, further proof that Plaintiffs' speculation is wrong lies in the vehicle requirements

3    in the cities where Uber supports a WAV ridesharing marketplace.  The exact same vehicle

4    requirements Plaintiffs challenge here apply in cities where there is a WAV-specific option, like

5    Washington, D.C., Philadelphia, and Chicago.  Exs. E–G.  Yet, as Plaintiffs affirmatively allege,

6    drivers with WAVs in those cities use the Uber Driver App to receive ride requests sell rides.

7    Crawford, SAC ¶¶ 62–63; *Namisnak*, TAC ¶¶ 65–66.  The record simply does not support

8    Plaintiffs' speculation that the requirements even screen out Drivers with WAVs.

9    **II.    PLAINTIFFS LACK CONSTITUTIONAL AND STATUTORY STANDING TO ASSERT THEIR NEW CLAIM.**

10        Plaintiffs cannot link the challenged vehicle requirements to their purported injury and,

11   therefore, cannot prove at trial either the "fairly traceable" causation necessary for Article III

12   standing, *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), or the more-demanding

13   proximate causation necessary for statutory standing, *see Lexmark Int'l, Inc. v. Static Control*

14   *Components, Inc.*, 572 U.S. 118, 132 (2014); *Canyon Cty. v. Syngenta Seeds, Inc.,* 519 F.3d 969,

15   975 (9th Cir. 2008).

16        The causal chain is necessarily attenuated here.  The statute prohibits eligibility criteria that

17   "screen out … *individuals with disabilities*," not criteria that screen out particular types of vehicles.

18   42 U.S.C. § 12184(b)(1) (emphasis added).  Plaintiffs do not claim that the vehicle requirements

19   have screened *them* out from eligibility: Plaintiffs admit that they have no desire or intent to sign

20   up as drivers to sell rides on the Uber platform, and neither Plaintiff is able to drive.  Ex. H

21   (Crawford Resp. to RFA No. 2); Ex. I (Namisnak & Falls Resp. to RFA No. 2); Crawford Dep.

22   Tr. 13:9–10 (*Crawford*, ECF No. 156-05; Namisnak Dep. Tr. 21:2–4 (*Crawford*, ECF No. 156-03).

23   That admission alone dooms statutory standing, which demands a "*direct* relationship between the

24   injury asserted and the injurious conduct alleged." *Bank of Am. Corp. v. City of Miami*, 137 S. Ct.

25

26   ---
[3]    Plaintiffs' theory as to how the minimum seating requirements screen out WAVs is not
27   alleged in the complaints.  But, in any event, the record is devoid of evidence showing that WAVs
     can't satisfy these minimums for UberX or UberXL.  And while UberXL has a higher minimum,
     that seat minimum is a necessary component of the UberXL ridesharing option.  A defining feature
28   of the UberXL option is the ability to request rides only in vehicles that seat large groups of
     passengers. Patel Decl. ¶ 5.

1   1296, 1306 (2017) (emphasis added); *see City of Oakland v. Wells Fargo & Co.*, 14 F.4th 1030,

2   1036 (9th Cir. 2021) (en banc).  Statutory standing generally fails where the alleged "harm is purely

3   derivative of misfortunes visited upon a third person by the defendant's acts." *Lexmark*, 572 U.S.

4   at 133.

5          Indeed, Plaintiffs do not allege any injury uniquely or directly associated with the

6   challenged vehicle requirements.  Rather, as in their prior complaints, the sole injury Plaintiffs

7   allege is deterrence from using the Uber Rider App because they are unable to use it to make WAV

8   ride requests.  Crawford SAC ¶¶ 166–67; Namisnak TAC ¶¶ 174–75.  Plaintiffs have explained

9   that they will continue to be deterred until Uber ensures, at the very least, a highly "reliable"

10  platform (in terms of being able to get a WAV ride when requested) and service that is "mostly

11  equivalent" (in terms of wait times for WAV rides).  Crawford Dep. Tr. 43:7–12 (*Crawford*, ECF

12  No. 171-8) (Crawford would use Uber if "it were reliable and mostly equivalent"); Namisnak Dep.

13  Tr. 56:25–57:12 (*Crawford* ECF No. 171-6) (Namisnak would request a WAV if one would

14  respond "within a roughly similar time that I can reliabl[y] get a car"); Falls Dep. Tr. 62:22–63:5

15  (*Crawford*, ECF No. 171-7) (Falls would use the App if he "could call him and he could pick me

16  up and bring me back home safely instead of me trying to push down the street and wind up either

17  getting robbed").

18         The link between the vehicle requirements and Plaintiffs' alleged deterrence is not even

19  plausibly alleged in the complaints.  On this score, it bears repeating that Plaintiffs' claim under

20  42 U.S.C. § 12184(b)(1) is focused on the *UberX and UberXL* ridesharing marketplaces.  Crawford

21  SAC ¶¶ 141–46; Namisnak TAC ¶¶ 148–53.  It has nothing whatsoever to do with a "WAV"

22  request option or whether Uber is obligated to make such an option available in Plaintiffs'

23  hometowns.  And Plaintiffs make clear in their complaints that it is the absence of the specific

24  "WAV" option that has caused their alleged injuries:

25         As a result of Uber's refusal to make UberWAV available, persons with disabilities
           in Jackson have no ability to call a wheelchair accessible vehicle or specially trained
26         driver through the Uber app.  *Even if there are drivers on the road who have such
           a vehicle or training, there is no way for Jackson users with a disability to find a
27         trained driver or accessible vehicle through the app.  For this reason, Dr. Crawford
28         is excluded from Uber's services.*

Crawford SAC ¶ 6 (emphasis added); Namisnak TAC ¶ 9 (same for Namisnak, Falls, and New Orleans).  That concession shows Plaintiffs' alleged deterrence is not even "fairly traceable" to the challenged requirements for UberX and UberXL vehicles, so Plaintiffs lack Article III standing.

Plaintiffs' concession is spot on.  Were Uber to change the UberX and UberXL vehicle requirements to expressly clarify that WAVs are permitted, there is no way to know how many drivers would sign up with WAVs to provide UberX and UberXL rides; there is no basis to believe the number would significant and, in fact, it could be (and, based on Uber's experience, likely would be close to) zero.  Patel Decl. ¶ 11.  But even if a handful of WAV drivers signed up for UberX and UberXL, without a WAV request option there is no way for riders to target their requests to these WAV-driving drivers.  Patel Decl. ¶ 12; *accord* Crawford SAC ¶ 6; Namisnak TAC ¶ 9.  Rather, a hopeful WAV-rider's UberX or UberXL request would generally go to the closest available drivers.  Patel Decl. ¶ 12.  With dozens or hundreds of drivers logged on to UberX and UberXL—Uber's most popular request options—at any given time, the overwhelming odds are the responding driver will not be one of the few UberX or UberXL drivers with WAVs.  *Id.*[4]

Indeed, as Plaintiffs' concession necessarily recognizes, the vehicle requirements for UberX and UberXL are not what matters for riders' ability to obtain WAV rides.  What matters is the supply of WAVs.  Uber would enable the WAV request option if there were sufficient supply, but Uber's experience demonstrates there is not, unless Uber subsidizes supply at great cost.  *See* Patel Decl. ¶¶ 15–16.  Plaintiffs effectively concede as much because they are unable to identify a single person in their cities who has a WAV and wants to drive it on the Uber platform.  Ex. J (Crawford Resp. to Interrog. No. 1); Ex. K (Namisnak & Falls Resp. to Interrog. No. 1).

As depicted below, Plaintiffs' claim rests on a speculative chain of contingencies that is too attenuated for constitutional or statutory standing—and for which there is no evidence in any event.  *See supra*, at pp. 4–7 (Plaintiffs lack any proof that the challenged vehicle requirements actually

---

[4]    Even if this hypothetical rider were to request a trip, cancel in the likely event of having his request accepted by a driver in a standard vehicle, and request again hoping a WAV driver responded, the odds of obtaining a WAV ride would still be extremely low.  Not to mention that such repeated requests and cancellations would have a negative effect on the entire UberX and UberXL marketplaces, bogging down drivers with cancelled requests and discouraging them from continuing to accept ride requests on the Uber platform, rather than easily switching to a competitor's ridesharing platform.

1   deterred drivers with WAVs from signing up).



16       This demonstrates that Plaintiffs cannot show either causation or that it is "likely instead of

17   "'merely speculative'" that an order removing the vehicle requirements would redress their injury.

18   *Lujan*, 504 U.S. at 561; *see Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*,

19   465 F.3d 1123, 1125 (9th Cir. 2006) ("There can be no redressability, and thus no standing,

20   where … any prospective benefits depend on an independent actor who retains broad and legitimate

21   discretion the courts cannot presume either to control or to predict.").  Indeed, Plaintiffs admit that

22   increasing the number of WAVs on the UberX platform—the outcome Plaintiffs speculate could

23   happen if the vehicle restrictions were removed—would not give Plaintiffs *all* the relief they seek.

24   Ex. H (Crawford Resp. to RFA No. 5) (admitting that driver with a WAV "that only received UberX

25   trip requests" would not provide "<u>all</u>" the relief sought); *Id.* (Crawford Resp. to RFA No. 6)

26   (admitting that "having a small number of WAVs on the UberX platform" would not provide "<u>all</u>

27   the relief Plaintiff is seeking in this case"); Ex. I (Namisnak & Falls Resp. to RFA Nos. 5–6) (same).

28   Plaintiffs cannot plausibly show causation or redressability to survive summary judgment.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### **CONCLUSION**

Summary judgment should be entered in Defendants' favor on Plaintiffs' claim under 42 U.S.C. § 12184(b)(1).

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

Dated: December 23, 2021

By: s/ Anne Marie Estevez

Anne Marie Estevez
Ethel J. Johnson
Stephanie Schuster
Patrick A. Harvey
Kathy H. Gao

*Attorneys for Defendants*