IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| SCOTT CRAWFORD<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC. *et al.*,<br><br>Defendants. | Case No-3:17-cv-02664-RS<br><br>**DECLARATION OF NIRAJ PATEL IN SUPPORT OF PARTIAL SUMMARY JUDGMENT** |
| STEPHAN NAMISNAK, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC. *et al.*,<br><br>Defendants. | Case No-3:17-cv-06124-RS |

I, Niraj Patel, hereby declare as follows:

1. I am over eighteen years old. I submit this declaration based on my personal knowledge. I make this declaration in support of Uber's Motion for Partial Summary Judgment in the above-referenced cases.

2. I have been an employee of Uber Technologies, Inc. ("Uber") since August 2014. I am currently the Director of Rider Operations for the U.S. and Canada for Uber. Before that, I was the Strategy and Planning Lead in the U.S. and Canada.

3. Uber is a multinational technology company. Uber develops proprietary software used to create digital marketplaces that are operated through app-based platforms. Using proprietary algorithms, Uber's mobile applications connect individual consumers in need of goods and services with those willing to provide them.

4. Uber's mobile applications support a well-known ridesharing marketplace. Independent third-party transportation providers ("Drivers") can use the Uber Driver App to connect them with riders making ride requests with the Uber Rider App (together, the "Uber Apps").

5. The Uber Rider App includes a variety of options to permit a rider to submit a ride request tailored to the size and type of vehicle they request. The most common option, UberX, connects riders with a standard, four-door vehicle. In some jurisdictions, "UberXL" is an additional option. The defining feature of the UberXL option is that the vehicle can seat more riders.

6. Uber has also piloted a WAV option in a few select jurisdictions permitting riders to request a ride, but only from a Driver with a wheelchair-accessible vehicle ("WAV"). Regardless of my title, I have supervised and managed the development of the WAV option for Uber since 2017.

7. In my experience leading the team, I have learned WAVs are typically minivans that have been modified to have a motorized ramp and modified seating allowing for the placement and securement of a heavy motorized wheelchair. WAVs can be purchased new or certain minivans

can be converted into a WAV with after-market modifications.

8. Uber prohibits Drivers on its UberX and UberXL platforms from onboarding certain vehicles to be used for accepting ride requests in New Orleans and Jackson, specifically "vans, box trucks, or similar vehicles" and vehicles with "aftermarket seating modifications, such as installed seats, seat belts, or BedRyder systems." For example, Uber would not allow a Driver to onboard a two door and two seat pickup truck with seats added to the bed of the pickup truck.

9. These same requirements exist in jurisdictions where Uber supports a WAV option, including Philadelphia, Chicago, and Washington, D.C. In cities where WAV is enabled, there are a separate set of requirements for WAV vehicles that are necessary to promote safety.

10. These vehicle requirements are inseparable from the request options available on the Uber Apps. For example, Uber could change its vehicle rules in New Orleans so that there was no debate that WAVs were allowed, by either expressly permitting WAVs or by removing the ban on seating modifications or vans.

11. In this scenario, Uber cannot know how many Drivers with WAVs would show up and seek to onboard their WAVs in Jackson or New Orleans. But Uber does not have a basis to believe the number would be significant and, in fact, it could be zero.

12. In all events, if Uber were to change the vehicle requirements in Jackson or New Orleans to allow WAVs, and even if a handful of Drivers onboarded WAVs, but Uber did not enable a WAV-specific request option, it would not matter to persons who need WAVs. This is because no riders would be able to target their ride requests specifically and only to Drivers with WAVs. A rider in a motorized wheelchair could make an X or XL request, but the request would generally go to the closest available Driver. In Jackson and New Orleans, there are usually dozens or hundreds of vehicles online at any time, the odds of being matched to one of the few WAVs on the platform would be extremely low, like well below 1/100. Instead, there is a very high likelihood that the rider's request would be presented to a driver who had a standard vehicle like a sedan.

13. In the highly likely (+99%) event that the rider's request was accepted by a driver in a standard vehicle, the rider could in theory cancel the trip and try again, hoping to be by chance connected to a driver with a WAV, but the odds for each trip would remain extremely small. Not

only would this process be frustrating for the particular Drivers and rider wanting a WAV alike, it would also be bad for the platform as it would become clogged with requests and immediate cancellations.

14. In cities where Uber decides to activate the WAV platform, the vehicle requirements that Plaintiffs identify are not an issue. In those markets, Uber, of course, allows WAVs on the WAV platform. In fact, WAVs are subject to their own special rules for WAVs only, such as that they be certified to an industry standard.

15. Thus, whether or not vehicles satisfy the basic vehicle eligibility rules is not the determining factor for a rider's ability to request a WAV trip and obtain one. The determining factor is the low supply of WAVs owned by the public. If there were a sufficient supply of WAVs, as there is of standard vehicles, Uber would be willing to enable the WAV platform and allow riders to create and submit requests to be sent only and specifically to Drivers in WAVs.

16. Uber has determined that it does not have a business case to turn on the WAV platform unless it has a basis to think supply is there, and the reality is that the supply is not there, unless Uber subsidizes it on a commercial scale, which is very costly.

17. Finally, I disagree with the premise that Uber's standard X and XL vehicle requirements prohibiting "vans, box trucks, or similar vehicles" and vehicles with "aftermarket seating modifications, such as installed seats, seat belts, or BedRyder systems" would preclude a typical converted minivan WAV from being onboarded on the X or XL platform. In a city that does not have a vehicle inspection requirement, Uber would likely not even know that a WAV was a WAV, as opposed to a regular pre-conversion minivan. Likewise, if a Driver with a WAV wanted to onboard that WAV to the X or XL platform and sought support at an Uber customer support center, that issue should be escalated and Uber would permit that vehicle to be onboarded, so long as it had four seats and otherwise met the standard age of vehicle requirement.

1  I declare under penalty of perjury that the foregoing is true and correct.

2

3

4  Executed on December 22, 2021

*Niraj Patel*
_____
Niraj Patel