William Most (CA # 279100)
AQUA TERRA AERIS LAW GROUP
4030 Martin Luther King Jr. Way
Oakland, CA 94609
T: (650) 465-5023
williammost@gmail.com

Karla Gilbride (CA # 264118)
PUBLIC JUSTICE, P.C.
1620 L St. NW, Ste. 630
Washington, DC 20036
T: 202-797-8600
kgilbride@publicjustice.net

Garret S. DeReus (LA # 35105)*
Andrew D. Bizer (LA # 30396)*
*Admitted *pro hac vice*
BIZER & DEREUS, LLC
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996
gdereus@bizerlaw.com
andrew@bizerlaw.com

Attorneys for Plaintiffs Scott Crawford,
Stephan Namisnak, and Francis Falls

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| SCOTT CRAWFORD,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UBER TECHNOLOGIES, INC. and RASIER, LLC,<br><br>　　　　　Defendants. | Case No. 3:17-cv-02664-RS<br><br>**Opposition to Defendants' Motion for Partial Summary Judgment Regarding "Screened Out" Claim**<br><br>Judge: Hon. Richard Seeborg<br>Courtroom #3, 17th Floor<br><br>Submission Date: Jan. 5, 2022, 10:00 a.m. |
| STEPHAN NAMISNAK and FRANCIS FALLS,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>UBER TECHNOLOGIES, INC. and RASIER, LLC,<br><br>　　　　　Defendants. | Case No. 3:17-cv-06124-RS<br><br>**Opposition to Defendants' Motion for Partial Summary Judgment Regarding "Screened Out" Claim**<br><br>Judge: Hon. Richard Seeborg<br>Courtroom #3, 17th Floor<br><br>Submission Date: Jan. 5, 2022, 10:00 a.m.. |

## I.      INTRODUCTION

In this case, Plaintiffs contend that Uber has violated the ADA's prohibition against "eligibility criteria that screen out or tend to screen out" any "class of individuals with disabilities from fully enjoying the specified public transportation services" unless "necessary for the provision of the services being offered." Dkt. 218 at ¶ 167, *citing* 42 U.S.C. § 12184(b)(1).[1] Uber moves for partial summary judgment on that "screened-out" claim, on two grounds.

First, Uber argues that Plaintiffs "lack any evidence" of their screened-out claim. But Plaintiffs have abundant evidence in the form of Uber's testimony and documents. For example, Uber's representatives testified both that (1) wheelchair-accessible vehicles ("WAVs") are typically vehicles with "modified seating"; and (2) that vehicles with "aftermarket seating modifications" are "not allowed to participate in Uber's products," with "no exceptions."

Second, Uber again raises the question of Plaintiffs' standing as a defense, but neither of Uber's standing arguments holds any water. Uber argues that Section 12184 only addresses criteria that directly apply to persons with disabilities, rather than the vehicles they ride in – but that argument is not supported by the text of the law. Uber also argues that Plaintiffs' injuries are not fairly traceable to the WAV-banning criteria. Uber reasons that even if the WAV-banning criteria were removed, Uber would also need to turn on the UberWAV functionality for Plaintiffs to achieve relief. But Uber has already made that argument – and had it rejected by the Ninth Circuit in *Namisnak v. Uber*, 971 F.3d 1088 (9th Cir. 2020).

Furthermore, Uber's motion relies on a core material fact that is genuinely disputed (and directly controverted by its own representatives' testimony). For these reasons and as described herein, the motion for partial summary judgment should be denied.

---

[1] Docket entries herein cite to *Crawford v. Uber,* 17-cv-02664-RS. There is, however, a corresponding docket entry for each in *Namisnak.*

## II. BACKGROUND

In their Motion for Summary Judgment, Plaintiffs presented the Court with evidence that Uber is violating the ADA because it uses "eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully enjoying the specified public transportation services." Dkt. 148 at 11, *citing* 42 U.S.C. § 12184(b)(1). This Court neatly summed up Plaintiff's argument as follows:

> In each city in which it operates, Uber sets out vehicle requirements for its various products – UberX, UberXL, etc. A driver whose vehicle does not meet those standards may not use the app. For example, to offer an UberX ride in New Orleans, a Driver must use a four-door vehicle with five, factory-installed seats and air conditioning. Because most WAVs are vans with aftermarket alterations, Plaintiffs contend Uber's explicit prohibition of the use of vans, box trucks, and aftermarket seating modifications in UberX rides in both Jackson and New Orleans, "screen[s] out . . . [a] class of individuals with disabilities."

Dkt. 197 at 11.

The Court did not rule on screened-out claim , finding instead that it had not been properly plead in Plaintiffs' complaints. On October 18, 2021, this Court granted Plaintiffs leave to amend the complaints to include the screened-out claim (Dkt. 217), and Plaintiffs did so (Dkt. 271, ¶¶ 141-146, 166-169).

## III. Analysis

**A. Uber's motion should be denied because it relies on a crucial disputed fact.**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Here, Uber's motion for partial summary judgment relies on the following material fact: "Uber's vehicle requirements in New Orleans and Jackson would not prohibit a Driver from using a WAV to sell rides in the UberX marketplace or UberXL marketplace."[2]

But Plaintiffs absolutely dispute that fact. Indeed, it is contradicted by <u>Defendants' own 30(b)(6) witness</u>, who agreed that "to the extent that a WAV vehicle had aftermarket seating modifications, it would not qualify for the terms advertised for UberX in New Orleans."[3] He testified that if a "vehicle does not meet Uber's requirements it's not allowed to participate in Uber's products,"[4] and that Uber knows of "no exceptions."[5] That, plus Uber's affidavit conceding that WAVs are typically vehicles with "modified seating,"[6] means that Uber's material fact is disputed by Uber's own representative – and so its motion should be denied.

**B.     The motion should be denied because Plaintiffs' screened-out claim is supported by Defendants' documents and 30(b)(6) testimony.**

In their amended complaints, Plaintiffs identified three Uber criteria that tend to screen out WAVs:

- Uber's prohibition of vehicles that do not have "five factory-installed seats";
- Uber's prohibition of vehicles that are "vans, box trucks, or similar vehicles"; and
- Uber's prohibition of vehicles with "aftermarket seating modifications."[7]

---

[2] Dkt. 227 at pg. 8.
[3] Dkt. 148-5 (30(b)(6) Dep. of Robert Rupp) at 34:6-13.
[4] *Id*. at 24:20-23. *See also id*. at 51:2-6 ("Q. Okay. And Uber actually uses these requirements. If a vehicle doesn't meet these requirements, they are not allowed to drive for Uber's products, correct? A. That's correct.")
[5] *Id*. at 24:24-25 ("Q. No exceptions? A. Not to my knowledge.")
[6] Dkt. 227-2 (Patel Affidavit) at ¶ 7.
[7] Dkt. 218 at ¶ 142; *see also* Dkt. 227-1 at 45 (Uber's vehicle requirements).

Uber does not deny that it has any of these prohibitions.[8] And it agrees that "WAVs are typically minivans that have been modified to have a motorized ramp and modified seating allowing for the placement and securement of a heavy motorized wheelchair."[9]

But Uber argues that its prohibitions do not actually bar WAVs, for a few reasons. First, it contends that most WAVs are minivans, and "Uber does not regard 'minivans' as 'vans.'"[10] But Uber's argument ignores the fact that it prohibits vans and also vehicles "similar" to vans – and Uber does not deny that minivans are similar to vans. Furthermore, Uber's claim that minivans are clearly acceptable is controverted by its own website, which says: "We do not accept stickers, pick-ups, vans, minivans and vans. We can not make any exceptions."[11] And in any case, how Uber regards minivans vs. vans is largely irrelevant. That is because the common-sense understanding of drivers is what will actually tend to screen out WAVs, rather than the subjective understanding of Uber executives. *See Vathana v. EverBank*, 09-cv-02338-RS, R. Doc. 131 at *11 (N.D. Cal., Mar. 9, 2012) ("[w]ords should be given their natural meaning or the meaning most commonly understood in relation to the subject matter and circumstances, and reasonable construction is preferred to one that is unreasonable.").

Second, Uber contends that its prohibition on vehicles with "aftermarket seating modifications, such as installed seats, seat belts, or BedRyder systems" will not screen out WAVs because that prohibition should be read to only ban modifications that <u>add</u> seats, but not modifications that remove seats.[12] This is a strange reading of the phrase, and is inconsistent with the generally-understood meaning of the term "such as."[13] It is especially strange in the context

---

[8] Dkt. 227-2 at ¶ 8.
[9] Dkt. 227-2 at ¶ 7.
[10] Dkt. 227 at 11.
[11] Ex. B at 2.
[12] Dkt. 227 at 11.
[13] *U.S. v. Technic Services, Inc.*, 314 F.3d 1031, 1045 (9th Cir. 2002) ("The use of the phrase 'such as' implies that the ensuing list is not exhaustive, but is only illustrative."); *Leslie Salt Co.*

of Uber's prohibition on vehicles that do not have "five factory-installed seats," a prohibition that Uber ignores entirely in its motion. That less-than-five-seat prohibition alone tends to screen out WAVs, and the failure to address that criteria means that Uber's motion can be denied for that reason.

Uber also argues that Plaintiffs' screened-out claim is unsupported by any "actual evidence."[14] But as described in Plaintiffs' motion for summary judgment, Uber's 30(b)(6) witness provided abundant testimony to support the screened-out claim. Specifically, he testified that if a "vehicle does not meet Uber's requirements it's not allowed to participate in Uber's products,"[15] and that Uber knows of "no exceptions."[16] He testified that for a vehicle to participate in UberX in New Orleans or Jackson, it must "have five factory-installed seats" and not violate Uber's prohibition on "vans, box trucks, or similar vehicles, [and] aftermarket seating modifications."[17] If "a vehicle doesn't meet these criteria, Uber will not allow it to participate in Uber's UberX product."[18] As a result, "to the extent that a WAV vehicle had aftermarket seating modifications, it would not qualify for the terms advertised for UberX in New Orleans."[19]

---

*v. US*, 700 F. Supp. 476 (N.D. Cal. 1989) ("the phrase 'such as' in front of those terms is interpreted, as it should be, to mean that the list is not exclusive"); *Wachter v. Wachter*, 607 S.E.2d 818, 216 W.Va. 489 (W. Va. 2004) ("By utilizing the phrase 'such as,' the legislature has made clear that the factors listed for consideration are not intended to be an exhaustive list."); *Doe v. Kohn, Nast & Graf, P.C.*, 862 F.Supp. 1310, 1320 (E.D.Pa.1994) ("The use of the words `such as' indicates that this list is illustrative and is not intended to be exclusive."); *Abenante v. Fulflex, Inc.*, 701 F.Supp. 296, 301 (D.R.I.1988) ("The use of the language `such as' is descriptive rather than exclusive."), *etc*.

[14] Dkt. 227 at pg. 9.
[15] Dkt. 148-5 (30(b)(6) Dep. of Robert Rupp) at 24:20-23. *See also id*. at 51:2-6 ("Q. Okay. And Uber actually uses these requirements. If a vehicle doesn't meet these requirements, they are not allowed to drive for Uber's products, correct? A. That's correct.")
[16] *Id*. at 24:24-25 ("Q. No exceptions? A. Not to my knowledge.")
[17] *Id.* at 28:23-29:7.
[18] *Id.* at 29:8-11.
[19] *Id.* at 34:6-13.

When this testimony is paired with Uber's affidavit that WAVs are typically minivans with "modified seating,"[20] it is clear that Plaintiffs' claim is supported by evidence. Uber's motion should be denied.

### C. Plaintiffs' inability to point to individual drivers is irrelevant.

Much of Defendants' summary judgment memorandum is focused on Plaintiffs' inability to articulate specific drivers that did not sign up for UberWAV because of Uber's policy. As Plaintiffs pointed out in their interrogatory responses, however, Uber's policy will have a natural and predictable discriminatory effect. Suppose Plaintiffs were suing over a physical sign at the entrance to a building stating, "no wheelchairs permitted inside." Would Plaintiffs be obligated to locate and parade through a host of wheelchair users to "prove" that the policy articulated on the sign has a deterrent effect? Of course not.

This case is no different. Courts are required to draw reasonable inferences "in the light most favorable to the party opposing the [summary judgment] motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam). Moreover, "[w]hile judges in summary judgment proceedings are not to make credibility determinations, they are not to ignore common sense and human experience." *HCP of Illinois, Inc. v. Farbman Grp. I, Inc.*, 978 F. Supp. 2d 943, 946 N.1 (N.D. Ill. 2013) (citing *Hobgood v. Illinois Gaming Bd.*, 731 F.3d 635, 646 (7th Cir.2013) (court need not "abandon good reason and common sense in assessing" proffered legitimate excuse)). Here, this Court need not receive a parade of drivers to draw a reasonable inference that a "no vans or aftermarket modifications" policy, with "no exceptions," will screen out WAVs.

---

[20] Dkt. 227-2 at ¶ 7.

**D.      The motion should be denied because Plaintiffs have standing to bring the screened-out claim.**

Uber challenges Plaintiffs' standing to bring the screened-out claim. To establish standing, Plaintiffs must show "(1) a concrete and particularized injury that is actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the defendant's challenged conduct; and (3) a likelihood that a favorable decision will redress that injury." *Namisnak v. Uber*, 971 F.3d 1088, 1092 (9th Cir. 2020). This Court has noted that the "Supreme Court has instructed us to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits 'are the primary method of obtaining compliance with the Act.'" Dkt. 80 at *3, *citing Doran v. 7–Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008)

Here, Uber makes two standing arguments – and its first argument is a creative one. Uber points out that the ADA prohibits criteria that screen out or tend to screen out "individuals with disabilities." Uber then argues that the statutory criteria are not met for Plaintiffs because they are not personally screened-out of Uber's services; *i.e.*, the screening-out only applies to the vehicles Plaintiffs could ride in, not the Plaintiffs themselves.[21]

As a pure statutory construction matter, Uber is wrong: the statute does not say that the criteria must apply directly to the person with a disability. It says that the criteria need only "screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully enjoying the specified public transportation services."[22] And a transportation company like Uber screening out the vehicles of persons with disabilities necessary prevents those persons from fully enjoying the transportation service. It would be absurd to argue that a "no wheelchairs" rule does not tend to screen out persons with disabilities,

---

[21] Dkt. 227 at 12.
[22] 42 U.S.C. 12184(b)(1). Emphasis added.

on the reasoning that *chairs* are being screened out, not people.[23] That is, however, the argument Uber appears to be making here.

Uber's second argument is that Plaintiffs' injuries are not "fairly traceable" to the WAV-screening-out criteria. They argue that if the WAV-screening-out criteria were removed, it would still be difficult for Plaintiffs to obtain rides unless Uber activated the UberWAV functionality in their cities.[24] But Uber has also argued that there is "not a ready supply of Drivers to offer WAV rides requested on the Uber platform," and so Plaintiffs' request to turn on the UberWAV option in New Orleans and Jackson would be futile.[25]

Uber thus asks this Court to play a game of Catch-22, arguing both that:

- Plaintiffs would not be helped if Uber turned on UberWAV without WAVs; and
- Plaintiffs would not be helped if Uber removed the WAV-banning criteria without turning on UberWAV.

Fortunately, the Ninth Circuit already considered this Catch-22. The Ninth Circuit explained that in Uber's earlier appeal, "Uber argue[d] that causation is lacking because even if Uber offered uberWAV in New Orleans, Plaintiffs' ability to obtain rides would depend on drivers with wheelchair-accessible vehicles offering rides through the service. And Plaintiffs' alleged injury is not redressable, Uber argues, for the same reason." *Namisnak, supra*, 971 F.3d at 1094.

---

[23] This argument has also been rejected by the U.S. Department of Justice. They explain that criteria can violate the screening-out prohibition even if they apply to something other than the person with a disability themselves. U.S. Dept. of Justice, Title III Regulations (1991 Preamble and Section-by-Section Analysis) at pg. 223 ("For example, requiring presentation of a driver's license as the sole means of identification for purposes of paying by check would violate this section in situations where, for example, individuals with severe vision impairments or developmental disabilities or epilepsy are ineligible to receive a driver's license and the use of an alternative means of identification, such as another photo I.D. or credit card, is feasible."). Available online at https://www.ada.gov/regs2010/titleIII_2010/titleIII_2010_regulations.pdf
[24] Dkt. 227 at 13-15.
[25] Dkt. 195-8 at 22.

The Ninth Circuit firmly rejected that argument, explaining that:

> Uber, and Uber alone, can rectify any alleged violation of the ADA by providing an uberWAV option. Plaintiffs' alleged injury is therefore directly traceable to Uber's refusal to offer uberWAV in New Orleans. And an injunction would redress that injury by requiring Uber to offer access to its services. That another cause may exist for Plaintiffs' alleged injuries— the possibility that Uber drivers will not drive wheelchair-accessible vehicles—does not change that conclusion.

*Id.* The same logic holds here, requiring denial of Uber's motion.[26]

In any case, Uber's second premise is false. Removing the WAV-banning criteria would still aid Plaintiffs even if UberWAV were not turned on. As Plaintiffs explained in their interrogatory responses:

> Uber allowing WAVs to participate in UberX would allow WAV owners (including, potentially Plaintiffs or their families) to derive revenue from their WAVs, thus incentivizing more drivers to purchase WAVs. The more WAVs that there are in Plaintiffs' community generally, the better, as it is more likely Plaintiff will be able to obtain a WAV ride, whether through Uber, through borrowing and sharing, direct contract, or through another service.[27]

Furthermore, even if this Court does not require Uber to take affirmative action to promote WAV participation on its platform, the Court might require fashion a remedy that involves Uber removing the WAV-banning criteria and activating the UberWAV app functionality in New Orleans and Jackson. That might not achieve fully-equivalent service, but it would make it likely that Plaintiffs could obtain some WAV rides through Uber's system – which is sufficient to establish standing. *See Namisnak, supra*, 971 F.3d at 1094 (redressability "satisfied where it is 'likely, as opposed to merely speculative, that the injury will be redressed

---

[26] Uber's argument is also contrary to *Chapman v. Pier 1 Imports (US), Inc.*, 631 F. 3d 939 (9th Cir. 2011) (*en banc*). In that case, the Ninth Circuit held that "an ADA plaintiff who establishes standing as to encountered barriers may also sue for injunctive relief as to unencountered barriers related to his disability." Id. at 944. Here, Plaintiffs' standing to seek reasonable modifications from Uber is established. *Namisnak, supra*. Accordingly, even if the WAV-banning criteria are a barrier that Plaintiffs have not yet reached because UberWAV has not been activated in their cities, Plaintiffs still have standing per *Chapman*.
[27] Dkt. 227-1 at 109, 118.

by a favorable decision.'"); *see also* Dkt. 80 at 6 (denying Defendants' standing arguments in part because it is not "possible to determine conclusively that there are *no other* reasonable modification options available that would enable Uber to meet the requirements of the ADA.") (Emphasis in original.)

For similar reasons, the court in *Equal Rights Center v. Uber*, 525 F. Supp. 3d 62 (D.D.C. 2021) rejected Uber's standing arguments regarding plaintiffs claims, including its Section 12184(b)(1) screened-out claim. The court reasoned that "it is plausible that the Court could fashion an appropriate remedy that would redress Case's asserted injury. Consequently, this Court finds that ERC has adequately alleged that Case has suffered an injury in fact that is 'fairly traceable' to Uber's conduct and that is redressable 'by a favorable judicial decision.'" *Id*. So too here. Uber's motion should be denied.

### IV. Conclusion

For the reasons above, this Court should deny Defendants' motion for partial summary judgment.

By Plaintiffs, by and through their counsel,

/s/ *William Most*_____
William Most (CA # 279100)
AQUA TERRA AERIS LAW GROUP
4030 Martin Luther King Jr. Way
Oakland, CA 94609
williammost@gmail.com
(504) 509-5023

Karla Gilbride (CA # 264118)
PUBLIC JUSTICE, P.C.
1620 L St. NW, Ste. 630
Washington, DC 20036
T: 202-797-8600
kgilbride@publicjustice.net

Bizer & DeReus, LLC
Garret S. DeReus (LA # 35105)*
gdereus@bizerlaw.com
Andrew D. Bizer (LA # 30396)*
andrew@bizerlaw.com
*Admission *pro hac vice*
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

**CERTIFICATE OF SERVICE**

I hereby certify that on December 28, 2021, a copy of the foregoing was filed electronically with the Clerk of Court via the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

                        */s/ William Most*
                        William Most