MORGAN, LEWIS & BOCKIUS LLP
Anne Marie Estevez (*pro hac vice*)
600 Brickell Avenue, Suite 1600
Miami, FL 33131
305.415.3000
annemarie.estevez@morganlewis.com

Stephanie Schuster (*pro hac vice*)
Patrick A. Harvey (*pro hac vice*)
1111 Pennsylvania Avenue NW
Washington, DC 20004
202.739-3000
stephanie.schuster@morganlewis.com
patrick.harvey@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP
Ethel J. Johnson (*pro hac vice*)
1000 Louisiana Street, Suite 4000
Houston, TX 77002
713.890.5000
ethel.johnson@morganlewis.com

Kathy H. Gao (CA Bar No. 259019)
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071
213.612.2500
kathy.gao@morganlewis.com

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| SCOTT CRAWFORD,<br><br>             Plaintiff,<br><br>    v.<br><br>UBER TECHNOLOGIES, INC. and RASIER, LLC,<br><br>             Defendants. | Case No. 3:17-cv-02664-RS<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date: January 5, 2022, 10:00 a.m.<br>Judge: Hon. Richard Seeborg<br>Via Zoom |
| STEPHAN NAMISNAK and FRANCIS FALLS,<br><br>             Plaintiffs,<br><br>    v.<br><br>UBER TECHNOLOGIES, INC. and RASIER, LLC,<br><br>             Defendants. | Case No. 3:17-cv-06124-RS<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date: January 5, 2022 10:00 a.m.<br>Judge: Hon. Richard Seeborg<br>Via Zoom |

Case No-3:17-cv-02664-RS
Case No. 3:17-cv-06124-RS

DEFENDANTS' REPLY IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 1

    I.    PLAINTIFFS FAIL TO PROFFER ANY EVIDENCE FROM WHICH A REASONABLE FACTFINDER COULD RULE IN THEIR FAVOR. .................. 1

        A.    Plaintiffs' Lack Of Evidence Is Dispositive, Not Irrelevant. ...................... 1

        B.    Plaintiffs Do Not Genuinely Dispute Any Material Fact. ........................... 3

    II.    PLAINTIFFS LACK STATUTORY STANDING. .............................................. 8

    III.    PLAINTIFFS ALSO LACK ARTICLE III STANDING. ..................................... 9

CONCLUSION ................................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*Am. Airlines Flow-Thru Pilots Coal. v. Allied Pilots Ass'n*,
   2021 WL 2930095 (N.D. Cal. 2021) ................................................................................. 1

*Bank of Am. Corp. v. City of Miami*,
   137 S. Ct. 1296 (2017) ....................................................................................................... 8

*Barnes v. Arden Mayfair, Inc.*,
   759 F.2d 676 (9th Cir. 1985) ............................................................................................. 2

*Beecham v. United States*,
   511 U.S. 368 (1994) ........................................................................................................... 4

*Chapman v. Pier 1 Imports Inc.*,
   631 F.3d 939 (9th Cir. 2011) ........................................................................................... 11

*City of Oakland v. Wells Fargo & Co.*,
   14 F.4th 1030 (9th Cir. 2021) ........................................................................................ 8, 9

*Cleveland v. Pol'y Mgmt. Sys.*,
   526 U.S. 795 (1999) ........................................................................................................... 3

*CREEC v. Hosp. Props. Tr.*,
   867 F.3d 1093 (9th Cir. 2017) ........................................................................................... 2

*Emery v. Caravan of Dreams, Inc.*,
   879 F. Supp. 640 (N.D. Tex. 1995) ................................................................................... 7

*Hall St. Assocs. v. Mattel, Inc.*,
   552 U.S. 576 (2008) ........................................................................................................... 4

*Kennedy v. Allied Mut. Ins. Co.*,
   952 F.2d 262 (9th Cir. 1991) ........................................................................................... 10

*Koester v. YMCA*,
   2016 WL 521450 (D. Mo. 2016) ...................................................................................... 7

*Lexmark Int'l Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) ........................................................................................................... 8

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ........................................................................................................... 9

*LVRC Holdings LLC v. Brekka*,
   581 F.3d 1127 (9th Cir. 2009) ........................................................................................... 2

*Sheils v. Univ. of Pa. Med. Ctr.*,
   1998 WL 134220 (E.D. Pa. 1998) .................................................................................... 8

*Town of Chester v. Laroe Estates, Inc.*,
   137 S. Ct. 1645 (2017) ................................................................................................... 10

*VFD Consulting, Inc. v. 21st Servs.*,
   425 F. Supp. 2d 1037 (N.D. Cal. 2006) ........................................................................... 8

**Statutes**

42 U.S.C. § 12184(b)(1) ........................................................................................... *passim*

**Regulations**

28 C.F.R. § pt. 36, Appendix C ............................................................................................ 2

**INTRODUCTION**

In its opening brief, Uber demonstrated that it is entitled to summary judgment on Plaintiffs' claim under 42 U.S.C. § 12184(b)(1) because Plaintiffs (1) lack evidence to support their claim; and (2) cannot demonstrate the proximate causation necessary for statutory standing or the fairly traceable causation necessary for Article III standing. Plaintiffs argue otherwise, but their arguments are based on assumptions and rank speculation—about what Uber's vehicle requirements prohibit, the characteristics of most WAVs, how unknown hypothetical WAV drivers would interpret Uber's vehicle requirements, and what would happen if Uber's vehicle requirements were changed—not evidence. Plaintiffs fail to demonstrate a genuine dispute of material fact relating to this newly added claim. Uber's motion should be granted.

**ARGUMENT**

**I. PLAINTIFFS FAIL TO PROFFER ANY EVIDENCE FROM WHICH A REASONABLE FACTFINDER COULD RULE IN THEIR FAVOR.**

**A.    Plaintiffs' Lack Of Evidence Is Dispositive, Not Irrelevant.**

Plaintiffs lack *any evidence* that Uber's vehicle requirements have—ever—screened out or tended to screen out drivers who want to sell WAV rides on the UberX or UberXL platforms. They conceded as much in discovery, *see* Uber Br. 4–7, and they do not purport to have such evidence in their opposition brief. That is reason alone to grant Uber's motion. Without any such evidence, Plaintiffs cannot possibly persuade a reasonable factfinder that Uber's vehicle requirements screen out or tend to screen out drivers with WAVs from UberX or UberXL.[1]

Plaintiffs' speculation that Uber's vehicle requirements "have a natural and predictable discriminatory effect" of dissuading would-be drivers with WAVs from signing up for UberX or UberXL, Pl. Br. 7, is insufficient to overcome this dispositive lack of evidence. Plaintiffs are entitled only to those reasonable inferences that are grounded in admissible evidence. *See Am. Airlines Flow-Thru Pilots Coal. v. Allied Pilots Ass'n*, 2021 WL 2930095, at *5 (N.D. Cal. 2021)

---

[1] Plaintiffs made these concessions about their lack of knowledge of any WAV drivers who were turned away notwithstanding their counsel's representation to the Court, during argument on Plaintiffs' motion for leave to amend, that Plaintiffs "knew at the outset of the case … that WAV drivers were turned away, if they had WAV vehicles, from using the platform." Oct, 15, 2021 Hr'g Tr. 3:25–4:3 (*Crawford*, ECF No. 238).

(Seeborg, C.J.) ("While reasonable inferences that could be drawn from admissible circumstantial evidence might in theory suffice [to show a reasonable jury could find for the plaintiff], mere conjecture or speculation will not."). The Court "need not draw inferences that are based solely on speculation." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1136 (9th Cir. 2009). A reasonable inference cannot be supported by "only threadbare conclusory statements instead of significant probative evidence." *Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 680–81 (9th Cir. 1985).

Plaintiffs' speculation is not supported by any evidence. There is no evidence, for example, of a disproportionate number of UberX and UberXL drivers using WAVs versus standard vehicles (when compared to the number of drivers owning such vehicles in Plaintiffs' cities generally). There is no evidence of any would-be driver ever expressing concern—to Uber or anyone else—that Uber's vehicle requirements prohibit WAVs from UberX and UberXL. And there is no evidence that a single would-be driver actually was dissuaded from signing up.

Nor can Plaintiffs excuse their lack of evidence by invoking inapplicable deterrent-effect standing principles. No court has ever entertained an "eligibility criteria" claim on a theory that the criteria merely deter—but do not exclude—persons with disabilities.[2] But were a mere deterrence theory viable under 42 U.S.C. § 12184(b)(1), Plaintiffs would still need *actual evidence of deterrence* to withstand summary judgment. For example, in Plaintiffs' hypothetical suit over a building with a "no wheelchairs permitted" sign, Pl. Br. 7, the bare minimum evidence necessary to prove deterrence would be testimony from a wheelchair user that he knew of the sign *and* would have entered the building but for that knowledge. *See CREEC v. Hosp. Props. Tr.*, 867 F.3d 1093, 1098–99 (9th Cir. 2017) ("actual knowledge" of barriers and "intent to visit" but for alleged noncompliance are required). That bare minimum is lacking here. Plaintiffs do not have evidence of a single would-be WAV driver who knew of the vehicle requirements and, but for those requirements, would have signed up for UberX or UberXL.

---

[2] The statutory phrase "tend to screen out" does not reach mere deterrence. As DOJ explains, the phrase captures facially neutral criteria that nevertheless actually "prevent or limit" the eligibility of persons with disabilities. *See* 28 C.F.R. § Pt. 36, App. C ("For example, requiring presentation of a driver's license as the sole means of identification for purposes of paying by check would violate this section *in situations where, for example, individuals with severe vision impairments or developmental disabilities or epilepsy are ineligible to receive a driver's license* ….") (emphasis added).

### B. Plaintiffs Do Not Genuinely Dispute Any Material Fact.

Plaintiffs' lack of evidence of any excluded or even deterred WAV drivers is dispositive of their claim. *See Cleveland v. Pol'y Mgmt. Sys.*, 526 U.S. 795, 805–06 (1999) ("Summary judgment for a defendant is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to her case, and on which she will bear the burden of proof at trial."). That lack of evidence, moreover, is unsurprising because Uber's vehicle requirements do not, in fact, preclude drivers from using WAVs in the UberX and UberXL marketplaces. Plaintiffs insist that they "absolutely dispute that fact," Pl. Br. 4, but they fail to offer any evidence.

**Minimum Seat Requirements.** Plaintiffs appear to abandon any claim that the UberXL minimum seating requirement violates 42 U.S.C. § 12184(b)(1), and they barely mention the UberX minimum, which requires at least five factory-installed seats (including one for the driver). Plaintiffs' assertion that Uber's motion "ignores entirely" this vehicle requirement, Pl. Br. 6, is false. As Uber stated in its opening brief: "Plaintiffs' theory as to how the minimum seating requirements screen out WAVs is not alleged in the complaints. But, in any event, the record is devoid of evidence showing that WAVs can't satisfy these minimums for UberX or UberXL." Uber Br. 7 n.3. Indeed, not only do Plaintiffs fail to even allege how the five-seat minimum bars WAVs; they also fail to explain their theory in their brief. The only place Plaintiffs have attempted to elaborate on this issue claim is in their pre-trial Proposed Findings of Fact and Conclusions of Law (filed two days after their opposition brief), where Plaintiffs assert that "most WAVs have fewer than five seats." *Crawford*, ECF No. 197 ¶¶ 192, 195.[3] Plaintiffs, of course, do not proffer *any* evidence about the number of seats "most WAVs have," so the record remains devoid of evidence showing that WAVs can't satisfy Uber's minimum seating requirements.[4]

---

[3] The cited paragraphs, which are the second of paragraphs numbered 192 and 195, appear on pages 58 and 59 of ECF No. 197.

[4] Even if plaintiffs had evidence that WAVs only had four seats, a five-seat-minimum rule is necessary for the UberX marketplace. The UberX option is for riders in groups as large as four. Riders traveling in a party of four expect that their party will fit into whichever vehicle the responding driver uses, and the five-seat minimum ensures that this expectation is consistently met. That would not be the case if some vehicles had enough seats for parties of four and some did not. In that scenario, riders and drivers would cancel after the rider arrived at the pick-up location, wasting time and degrading the efficiency of the UberX ridesharing platform.

1    **No "After-Market Seating Modifications."**  Uber's rule against UberX and UberXL vehicles with "after-market seating modifications" prohibits vehicles with seats added after-market, as each offered example illustrates: "such as installed seats, seatbelts, or BedRyder Systems." Exs. C–D.  This reading is neither "strange" nor inconsistent with the use of the phrase "such as," as Plaintiffs contend.  Pl. Br. 5.  The phrase "such as" signifies that the list is *illustrative* of the category it describes.  Consistent with other well-understood principles of construction, those examples illustrate that the rule against "after-market seating modifications" prohibits vehicles with passenger seats *added* aftermarket.  *Cf. Beecham v. United States*, 511 U.S. 368, 371 (1994) (*noscitur a sociis*); *Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008) (*ejusdem generis*).[5] Plaintiffs do not contend, and certainly submit no evidence, that WAVs involve the addition of seats after-market.

Plaintiffs' assertions that Uber's designee, Robert Rupp, conceded that the rule against after-market seating modifications screens out WAVs, Pl. Br. 4, is false.[6]  The full transcript shows that Plaintiffs failed in their game of "gotcha":

> EXAMINATION BY MR. MOST
>
> Q. Okay. Sorry. So someone with a WAV vehicle in New Orleans would not be able to, for example, drive UberX because it would violate the no aftermarket seating modification requirement for UberX in New Orleans; is that correct?
>
> [Objection omitted]
>
> THE WITNESS:
>
> **I don't believe that's correct.**

Ex. L at 31:24–32:12 (emphasis added).  Counsel tried again, and again failed to elicit evidence showing that WAVs are prohibited by the rule:

---

[5]    The prohibition on added seats and the requirement of a minimum of five factory-installed seats are complementary.  There must be at least five factory-installed seats; seats cannot be added to reach the minimum.  Factory-installed seats may be removed, and the vehicle may still qualify for UberX, so long as, post-removal, at least five factory-installed seats remain.

[6]    Plaintiffs failed to include the relevant testimony as an exhibit to their opposition, and the docket entry they cite does not include the testimony they purport to quote from page 34.  *See* Pl. Br. 3 (citing *Crawford*, ECF No. 148-5, which is an excerpt of the Rupp deposition transcript that excludes pages 31–38).  Defendants provide the Court with the relevant portion of the transcript as Exhibit L, attached to the Declaration of Stephanie Schuster.

1    EXAMINATION BY MR. MOST:

2    Q. Okay. So at least we can agree that a WAV vehicle would not meet these requirements as listed and advertised on Uber's website, correct?

3    MS. SCHUSTER:

4    Objection. Assumes facts not in evidence. You can answer.

5    THE WITNESS:

6    The language listed here would indicate that no aftermarket seating modification are allowed. **It's unclear to me whether the wheelchair accessible vehicle includes aftermarket seating modifications or how you would define aftermarket seating modifications.**

7    EXAMINATION BY MR. MOST:

8    Q. Okay. But to the extent that a WAV vehicle had aftermarket seating modifications, it would not qualify for the terms advertised for UberX in New Orleans, correct?

9    A. Based on this website, that's true. However, it's unclear to me whether this website is accurate and comprehensive.

Tr. 33:15–34:13 (emphasis added).

Thus, Mr. Rupp testified only that "*to the extent that a WAV vehicle had* aftermarket seating modifications" it would be prohibited by the rule against after-market seating—same as any vehicle. He did not testify to what extent WAVs have after-market seating modifications. Rather, as shown above, Mr. Rupp testified that WAVs do not. *Id.* at 31:24–32:12.

In all events, even if Plaintiffs were correct (and they are not) that the rule against "after-market seating modifications" covers more than added seats, Plaintiffs still fail to point to evidence that such a rule precludes WAVs. Plaintiffs highlight Niraj Patel's testimony that WAVs have "'modified seating allowing for the placement of a heavy motorized scooter'" (*i.e.*, removed seats), Pl. Br. 9 (quoting Patel Decl. ¶ 7), but Mr. Patel's testimony doesn't demonstrate that these modifications are always (or even typically) made *after market*. In fact, in the same paragraph Plaintiffs quote, Mr. Patel testifies that "WAVs *can be purchased new* or certain minivans can be converted into a WAV" after market. Patel Decl. ¶ 7 (emphasis added). Plaintiffs fail to address much less refute or even cast doubt on that testimony. They offer no evidence, for example, that "most WAVs have undergone after-market seating modifications to make space for large power

wheelchairs," even though this is a fact they urge the Court to find at trial. *Crawford*, ECF No. 197 ¶¶ 194, 197.[7]  So even if the rule against after-market seating modifications were applicable, Plaintiffs still lack any evidence that it screens out drivers with WAVs.

**No "Vans."**  In their recently amended complaints, Plaintiffs allege that "Uber's 'no vans' rule" screens out WAVs.  Crawford SAC ¶ 146; Namisnak SAC ¶ 153.  Uber demonstrated that most WAVs are minivans and that it does not regard minivans as vans.  Indeed, Uber submitted as evidence the lists of eligible vehicles for both Jackson, Mississippi and New Orleans, Louisiana (Exs. A–B), which shows many minivans are eligible for UberX and UberXL.  *See* Uber Br. 6.  Plaintiffs ignore this evidence entirely.

Instead, Plaintiffs submit a portion of Uber's help site that states Uber does accept "stickers, pick-ups, vans, minivans and vans."  Pl. Ex. B.  This document cannot create a genuine dispute of fact.  Plaintiffs did not disclose this document as a potential exhibit at trial, *see Crawford*, ECF No. 230 at H.I, and it's not admissible: Plaintiffs have not laid any foundation that this page accurately reflects Uber's vehicle requirements in Jackson or New Orleans.  On the contrary, the page states that vehicle requirements "vary from city to city."  Pl. Ex. B.  Nor could Plaintiffs lay the necessary foundation at trial.  In fact, Plaintiffs' exhibit is a dead webpage, not accessible from Uber's help site.  (The link to the list of eligible vehicles on the page takes the user to a Brazilian page identifying requirements for would-be drivers in Portuguese.)  No New Orleans or Jackson driver navigating Uber's Help site would be directed to this page.[8]  Such drivers would see the following, which is the "Vehicle Requirements" page that actually is accessible from Uber's Help site:

---

[7]   The cited paragraphs, which are the second of paragraphs numbered 194 and 197, appear on 58 and 59 of ECF No. 197.

[8]   Plaintiffs disclosed their Exhibit B, in support of their claim added via late amendment, for the first time in their December 28, 2021 opposition.  The Court ordered Defendants to file this reply by January 3, 2022.  During the few days in between, spanning a holiday week, Defendants were unable to obtain a signed declaration attesting to these facts in time for filing.  Defendants will supplement the record with that declaration as soon as they are able.

> **Vehicle Requirements**
>
> HELP WITH A TRIP
> ACCOUNT AND APP ISSUES
> CUSTOMER AND MERCHANT ISSUES
> EARNINGS AND PAYMENTS
> A GUIDE TO DRIVING AND DELIVERING
> HELP WITH A FOUND ITEM
> SAFETY
> BOOKING APPOINTMENTS
> ACCESSIBILITY
>
> DRIVING & DELIVERING > A GUIDE TO DRIVING AND DELIVERING >
>
> If you'd like to drive on the Uber platform, the vehicle you are using should meet the following requirements:
>
> - The vehicle must have 4 doors and be able to transport a minimum of 4 passengers
> - The vehicle should be 15 model years old or newer
> - The vehicle should not be salvaged, reconstructed, or rebuilt. Rental vehicles are not allowed on the Uber platform.
> - The vehicle should not have any cosmetic damage, missing pieces, commercial branding or taxi paint jobs.
>
> Should you choose to drive a vehicle you do not personally own, you must be listed as an insured driver on this vehicle's insurance policy. Please note that Uber cannot approve a vehicle if the driver's name is not on the insurance document.
>
> SIGN IN TO GET HELP

Ex. M.

Plaintiffs' position that "[h]ow Uber regards minivans vs. vans is largely irrelevant," Pl. Br. 5, misunderstands the law. The statute concerns eligibility "criteria," which connotes "a standard of judging," and "thus implies the necessity of making a judgment." *Emery v. Caravan of Dreams, Inc.*, 879 F. Supp. 640, 643–44 (N.D. Tex. 1995), *aff'd*, 85 F.3d 622 (5th Cir. 1996). Thus, courts construe the ADA's "eligibility criteria" provision "as applying only to those rules or policies that are or could be used to make a specific or conscious decision as to whether or not to permit an individual or individuals to have access to goods, services," etc. *Id.* at 644; *accord Koester v. YMCA*, 2016 WL 521450, at *5 (D. Mo. 2016). As Uber is the party making decisions as to what satisfies its eligibility criteria, its understanding of those criteria is dispositive, not irrelevant. And, again, Plaintiffs lack any evidence of any WAV owner who interpreted these rules as prohibiting WAVs and relied on that interpretation to not attempt to onboard a WAV.

Plaintiffs also argue, contrary to the allegations in their complaints, that Uber's prohibition of "similar vehicles," in the rule against "vans, box trucks, and similar vehicles," that impermissibly screens out WAVs. Pl. Br. 5 ("minivans are similar to vans"). This unalleged theory is more sandbagging, and it is unpersuasive in any event. Vans and box trucks are commercial vehicles, and so are the "similar vehicles" to which the rule applies. More to the point, Plaintiffs' new, unalleged theory fails to grapple with Uber's evidence—the lists of eligible vehicles in Jackson and New Orleans that plainly includes minivans. Exs. A–B.

## II. PLAINTIFFS LACK STATUTORY STANDING.

Plaintiffs' alleged injuries are too many steps removed from the vehicle requirements to have been proximately caused by those vehicle requirements. Uber. Br. 7–8. Plaintiffs do not directly respond to Uber's proximate cause argument, thereby conceding the point. *See, e.g., VFD Consulting, Inc. v. 21st Servs.*, 425 F. Supp. 2d 1037, 1055 (N.D. Cal. 2006). Plaintiffs set up and respond to a straw man instead, claiming Uber's argument is akin to an argument that a "no wheelchairs" rule challenge would fail because it prohibits chairs instead of people. Pl. Br. 8–9. Of course, Uber never made such an argument. Uber argued that Plaintiffs' alleged injury— deterrence from using the Uber Rider App to request WAV rides—was not, as a matter of law, proximately caused by the challenged vehicle requirements applicable to users and potential users of the Uber Driver App.

Nor can Plaintiffs avoid their duty to prove proximate cause because "the statute does not say that the criteria must apply directly to a person with a disability." Pl. Br. 8. Proximate cause is an element of *every* statutory cause of action unless Congress affirmatively says otherwise. *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1305 (2017); *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014). Proximate cause demands a "*direct* relationship between the injury asserted and the injurious conduct alleged." *Miami*, 137 S. Ct. at 1306 (emphasis added). The requisite direct relationship generally is limited to "the first step of the causal chain." *City of Oakland v. Wells Fargo & Co.*, 14 F.4th 1030, 1035 (9th Cir. 2021) (en banc).[9]

Here, the first step of the causal chain is the hypothetical WAV driver, whom Plaintiffs speculate would not be able to use his WAV to sign up for UberX or UberXL. Plaintiffs' alleged injury is multiple steps removed. Uber Br. 10 (flow chart); *see Sheils v. Univ. of Pa. Med. Ctr.*, 1998 WL 134220, at *3 (E.D. Pa. 1998) (eligibility criteria claim fails when plaintiffs fail to show "that the criteria will screen out[] or tend to screen out *them*") (emphasis in original). Even the way Plaintiffs describe the causal chain reveals the absence of proximate cause. They contend that

---

[9] Only where indirect harm flows "automatically" from direct harm will a court consider diverging "from the general tendency … to not go beyond the first step" in the proximate cause analysis. *City of Oakland*, 14 F.4th at 1035–36, 1039; *see Lexmark*, 572 U.S. at 139–40. Plaintiffs' alleged harm does not follow at all, much less automatically, from an exclusion of a would-be WAV driver from signing up to provide UberX or UberXL rides. Plaintiffs do not argue otherwise.

Uber's vehicle requirements "have a natural and predictable discriminatory effect" by, first, excluding WAV drivers; then diminishing the number of WAVs on the road; which diminishes the likelihood a WAV rider would obtain a WAV trip via the UberX or UberXL marketplaces; which diminishes the likelihood Plaintiffs would cease to be deterred and would sign up and use the Uber Rider App. *See* Pl. Br. 7. The "natural and predictable" effect Plaintiffs posit is, at most, an argument about foreseeability, and it is settled that "foreseeability alone is not sufficient to establish proximate cause." *City of Oakland*, 14 F.4th at 1032.

### III.  PLAINTIFFS ALSO LACK ARTICLE III STANDING.

Plaintiffs also fail to demonstrate the less demanding "fairly traceable" causation necessary for Article III standing. The Ninth Circuit's holding that Plaintiffs plausibly alleged standing at the pleading stage, and not in relation to the newly added eligibility criteria claim, is not on point. *See* Pl. Br. 10. The Ninth Circuit analyzed the plausibility of Plaintiffs' allegations that they would use the Uber Rider App if it included a WAV option. Plaintiffs' new claim is not about a WAV option. It is about the UberX and UberXL marketplaces, what would happen if Uber rewrote its UberX and UberXL vehicle requirements, and the odds that Plaintiffs, if they ever downloaded the app, would obtain a WAV trip from an UberX or UberXL request. Plaintiffs do not *even allege* that their claimed injury was caused by the vehicle requirements. On the contrary, they allege that the absence of the specific WAV option, not the UberX and UberXL vehicle requirements, caused their injury: "*Even if there are drivers on the road who have such a vehicle* or training, there is no way for Jackson users with a disability to find a trained driver or accessible vehicle through the app. For this reason, Dr. Crawford is excluded from Uber's services." Crawford SAC ¶ 6 (emphasis added); Namisnak TAC ¶ 9 (same).

Plaintiffs also bear a heavier burden of proof at summary judgment that requires evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The only "evidence" Plaintiffs point to is their own speculation stated an interrogatory response:

> Uber allowing WAVs to participate in UberX would allow WAV owners (including, potentially Plaintiffs or their families) to derive revenue from their WAVs, thus incentivizing more drivers to purchase WAVs. The more WAVs that there are in Plaintiffs' community generally, the better, as it is more likely Plaintiff

will be able to obtain a WAV ride, whether through Uber, through borrowing and sharing, direct contract, or through another service.

Pl. Br 10 (quoting Ex. I (Resp. to Interrogatory No. 7); Ex. J. (Resp. to Interrog. No. 7)).[10] Thus, Plaintiffs speculate that if persons who own WAVs are able drive their WAVs on the UberX platform (they are, *see supra*, Section I.B), perhaps other people will see these drivers earning income and then decide to buy WAVs for themselves, potentially leading to there being more WAVs on the road generally, so that Plaintiffs might be able to get a WAV ride by making an UberX request, borrow a newly acquired WAV (even though none of the Plaintiffs is able to drive), or obtain rides in these vehicles through some other, unknown or unstated means.

No aspect of Plaintiffs' rank speculation is supported by actual evidence. Plaintiffs have no evidence of the economics to suggest that the hypothetical persons referenced in their interrogatory response would go out and buy a WAV. Plaintiffs have no evidence to controvert Uber's evidence that the odds of a rider matching with a WAV on the UberX platform would be "well below 1/100." Patel Decl. ¶ 12. Plaintiffs have no evidence of how they would borrow a WAV or obtain a WAV ride through "direct contract" or through "some other service." Thus, Plaintiffs do not (and cannot) show that any claimed injury is "fairly traceable" to the vehicle requirements or that it is *likely* that an order removing the vehicle requirements would provide redress. Plaintiffs merely speculate that more WAVs on the UberX or UberXL platforms would increase their odds of matching with a driver with a WAV (*i.e.*, by making it "more likely"), but, again, they offer *no evidence*.

Lastly, Plaintiffs' standing to bring their Section 12184(b)(2)(A) claim does not give them standing to bring their Section 12184(b)(1) claim. A "plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017). The vehicle requirements for UberX and UberXL are not analogous to barriers within a building that a plaintiff is deterred from entering because of an

---

[10] Plaintiffs' sworn assertions that "potentially Plaintiffs" may drive WAVs to make money on Uber's platform also contradicts their own allegations, testimony, and admissions that they cannot drive and do not desire to create an account with Uber to become a driver. *E.g.*, Crawford SAC ¶ 1; Namisnak TAC ¶ 3; Ex. H (Resp. to RFA Nos. 1–2); Ex. I (same). Plaintiffs cannot flatly contradict themselves to avoid summary judgment. *See, e.g.*, *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 267 (9th Cir. 1991) (courts disregard "'sham' testimony that flatly contradicts earlier testimony in an attempt to 'create' an issue of fact and avoid summary judgment").

| Case No. 3:17-cv-02664-RS<br>Case No. 3:17-cv-06124-RS | 10 | DEFENDANTS' REPLY IN SUPPORT OF MOTION<br>FOR PARTIAL SUMMARY JUDGMENT |

inaccessible entrance.  *See* Pl. Br. 10 n.26.  They are alleged barriers Plaintiffs concede they would never encounter as either drivers or riders.  *See Chapman v. Pier 1 Imports Inc.*, 631 F.3d 939, 953 (9th Cir. 2011) (en banc) (deterrence standing does not extend to "barriers the plaintiff is not reasonably likely to encounter" or "in areas he is unlikely to enter").

## **CONCLUSION**

Summary judgment should be entered in Defendants' favor on Plaintiffs' claim under 42 U.S.C. § 12184(b)(1).

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

Dated: January 3, 2022

By:  s/ Anne Marie Estevez
Anne Marie Estevez
Ethel J. Johnson
Stephanie Schuster
Patrick A. Harvey
Kathy H. Gao

*Attorneys for Defendants*