IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| SCOTT CRAWFORD,<br><br>  Plaintiff,<br><br>  v.<br><br>UBER TECHNOLOGIES, INC., *et al.*,<br><br>  Defendants. | Case No. 3:17-cv-02664-RS<br><br>**DECLARATION OF STEPHANIE SCHUSTER** |
| STEPHAN NAMISNAK, *et al.*,<br><br>  Plaintiffs,<br><br>  v.<br><br>UBER TECHNOLOGIES, INC., *et al.*,<br><br>  Defendants. | Case No. 3:17-cv-06124-RS<br><br>**DECLARATION OF STEPHANIE SCHUSTER** |

I, Stephanie Schuster, hereby declare as follows:

1. I am over eighteen years old. I submit this declaration based on my personal knowledge.

2. I am a partner at Morgan, Lewis & Bockius, LLP, and I represent Defendants Uber Technologies, Inc. and Rasier, LLC in the referenced cases.

3. I submit this declaration in support of Defendants' Reply in Support of Their Motion for Partial Summary Judgment.

4. Attached as **Exhibit L** is a true and correct excerpt of the transcript from the November 10, 2020 deposition of Robert Rupp as corporate designee for Defendants Uber Technologies, Inc. and Rasier, LLC.

5. A true and correct copy of a printout from Uber's Help site regarding the vehicle requirements for drivers is attached as **Exhibit M** and publicly available at https://help.uber.com/driving-and-delivering/article/vehicle-requirements?nodeId=2ddf30ca-64bd-4143-9ef2-e3bc6b929948.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 3, 2022

Stephanie Schuster

# EXHIBIT L

Page 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

*************************************************

SCOTT CRAWFORD and
JARVIS JERNIGAN, JR.,
    Plaintiffs,

VERSUS                          CASE NO: 3:17-cv-02664-RS

UBER TECHNOLOGIES, INC. and RAISER, LLC,
    Defendants.

                        AND

STEPHAN NAMISNAK, et al,
    Plaintiff,

VERSUS                          CASE NO: 3:17-cv-06124-RS

UBER TECHNOLOGIES, INC. and RAISER, LLC,
    Defendants.
*************************************************

30(b)(6) DEPOSITION OF ROBERT RUPP

TAKEN VIA ZOOM VIDEOCONFERENCE
ON TUESDAY, NOVEMBER 10, 2020
AT OR ABOUT 12:04 P.M. CST

AT COURT REPORTERS OF LOUISIANA, LLC
9522 BROOKLINE AVENUE - SUITE 217
BATON ROUGE, LOUISIANA 70809

REPORTED BY:  Janie J. Darby
  Certified Court Reporter
   Certificate No. 85140

## Page 2

```
              A P P E A R A N C E S

Representing Scott Crawford, Jarvis Jernigan,
Jr., and Stephan Namisnak:
    BIZER & DEREUS
    By:  Garret S. DeReus, Esq.
    3319 St. Claude Avenue
    New Orleans, Louisiana 70117
    Telephone:  (504) 619-9999
    Gdereus@bizerlaw.com

    AQUA TERRA AERIS LAW GROUP
    By:  William Brock Most, Esq.
    828 San Pablo Avenue - Suite 115-B
    Albany, California 94706
    Telephone:  (650) 465-5023
    williammost@gmail.com

Representing Uber Technologies, Inc.:

    MORGAN, LEWIS & BOCKIUS, LLP
    By:  Stephanie Schuster, Esq.
    1111 Pennsylvania Avenue, NW
    Washington, DC 20004
    Telephone:  (202) 739-3000
    Stephanie.schuster@morganlewis.com
    UBER TECHNOLOGIES, INC.
    Senior Litigation Counsel
    By:  Morgan Jackson, Esq.
    1455 Market Street - 4th Floor
    San Francisco, California 94103
```

## Page 3

I N D E X

|   | | Page |
|---|---|---|
| Caption | | 1 |
| Appearances | | 2 |
| Exhibits | | 3-4 |
| Agreement of Counsel | | 5 |
| Witness' Certificate | | 110 |
| Reporter's Certificate | | 112 |

E X A M I N A T I O N

EXAMINATION BY MR. MOST:                          6

E X H I B I T S

Exhibit 21 - Second Revised Notice of    16
  30(b)(6) Deposition

Exhibit 24 - Drive with Uber - Be your   95
  own boss

Exhibit 27 - Vehicle Requirements for    27
  New Orleans

Exhibit 28 - Vehicle Requirements for    46
  Jackson, MS

Exhibit 29 - Engineering More Reliable   58
  Transportation with Machine
  Learning and AI with Uber

Exhibit 31 A New Class of Vehicle:       61
  Production Ready Self-Driving"

Exhibit 32 - A principled approach to    60
  Safety

## Page 4

E X H I B I T S (continued):

Exhibit 33 - On the Road to Washington,  66
  D.C.
Exhibit 40 - Tech Crunch article
  entitled "Uber orders up to 24,000    62
  Volvo XC90s to driverless fleet"
Exhibit 42 - E-Mails Correspondence       80
Exhibit 44 - E-Mail Correspondence        86
Exhibit 50 - Exalt spreadsheet            82

## Page 5

S T I P U L A T I O N

It is stipulated and agreed by and between counsel for the parties hereto that the deposition of the aforementioned witness is hereby being taken under the Federal Rules of Civil Procedure, for all purposes, in accordance with law;

That the formalities of sealing, certification, and filing are specifically waived;

That the formalities of reading and signing are specifically not waived;

That all objections are hereby reserved until such time as this deposition, or any part thereof may be used or sought to be used in evidence.

\* \* \* \* \*

Janie J. Darby, Certified Court Reporter, in and for the State of Louisiana, officiated in administering the oath to the witness.
\* \* \* \* \*



**Page 6**

1  ROBERT RUPP,
2  after first having been duly sworn, was
3  examined and did testify as follows:
4  EXAMINATION BY MR. MOST:
5    Q.  Good afternoon, Mr. Rupp.
6    A.  Good afternoon.
7    Q.  My name is William Most. I'm an
8  attorney. I represent the plaintiffs in the
9  two cases that we are here for today. Am I
10  pronouncing your last name right? Is it
11  Rupp?
12    A.  That's correct.
13    Q.  And I heard Stephanie refer to you
14  as Bob. Would you like me to call you Bob or
15  Robert or Mr. Rupp?
16    A.  I prefer Bob. Thanks.
17  MR. MOST:
18    All right. Stephanie, this is a
19  question for you. Can we stipulate that
20  the deposition was properly noticed and
21  the court reporter is duly qualified?
22  MS. SCHUSTER:
23    Yes.
24  MR. MOST:
25    Okay. Thank you.

**Page 7**

1  EXAMINATION BY MR. MOST:
2    Q.  Good morning, Bob. Are you --
3  Well, good morning. Are you on the west
4  coast or are you on the east coast? Where
5  are you located?
6    A.  I'm based in New York City.
7    Q.  Okay. Well, then good afternoon.
8  Bob, could you give us your name and title?
9    A.  Yes. Bob Rupp. I'm Senior Manager
10  at Uber.
11    Q.  Are you manager over a particular
12  unit or division?
13    A.  I manage the Strategy and Analytics
14  team for our vehicles program.
15    Q.  Great. And, Bob, have you ever
16  given a deposition before?
17    A.  I have.
18    Q.  Approximately how many depositions
19  have you given?
20    A.  One.
21    Q.  When was that?
22    A.  About one year ago.
23    Q.  Okay. And what kind of case was
24  that in?
25    A.  I guess it was a case about a child

**Page 8**

1  that had passed away in an auto accident.
2    Q.  And was it an auto accident
3  involving Uber in some way?
4    A.  The accident involved a driver who
5  had signed up for Uber.
6    Q.  Okay. So you took that deposition
7  in your capacity as an employee of Uber?
8    A.  Correct.
9    Q.  And so you realize you are under
10  oath today?
11    A.  I do.
12    Q.  You understand that your answers
13  here today have the same force as if we were
14  in a courtroom with a judge and jury?
15    A.  I do.
16    Q.  Is there anything that will prevent
17  you from giving me your full attention today?
18    A.  There is not.
19    Q.  Are you taking any medications or
20  suffering from any illness that would prevent
21  you from understanding my questions and
22  answering them truthfully and fully?
23    A.  I'm not.
24    Q.  Is there anything else that will
25  prevent you from giving me complete,

**Page 9**

1  accurate, and truthful answers?
2    A.  There's not.
3    Q.  And we are going to go through this
4  deposition, but probably like the one you had
5  before, there is no need for us to do it
6  start to finish continuously. We can take
7  breaks at any point. If you want to take a
8  break to use the restroom, get a cup of
9  coffee, anything you need, just let me or
10  your attorney know and we will make that
11  happen.
12    A.  Thank you.
13    Q.  However, if we take a break, I will
14  ask you about who you talked to during the
15  break and what you talked about even if it's
16  your attorney, and there is not necessarily
17  the expectation of confidentiality during
18  those breaks. So I may ask you about that if
19  we take a break.
20    And, Bob, you are already doing
21  this great, but if I ask you a question,
22  please wait for me to finish before you
23  answer. In turn, I will do my best to wait
24  for you to finish answering before I ask you
25  the next question. That way we have a clear

**Page 26**

THE WITNESS:
    The requirements are listed on Uber's website for New Orleans, and I can briefly summarize them. We require that drivers provide three documents: A registration for the vehicle and a proof of insurance document which must include the driver's name and the VIN of the vehicle, and depending on the geography, in some cities we require a vehicle inspection.

EXAMINATION BY MR. MOST:
   Q.  Okay. And that's a physical inspection. The prospective driver brings their vehicle to a particular physical place and it gets inspected?
   A.  In New Orleans --
THE WITNESS:
    Sorry, Stephanie, did I interrupt you?
MS. SCHUSTER:
    No.
THE WITNESS:
    Okay. In New Orleans there are designated locations that are

**Page 27**

discoverable online on publically available sites that are able to complete a brake tag check. So those locations complete the inspection. I believe in Jackson, Mississippi, there is no vehicle inspection requirement.

EXAMINATION BY MR. MOST:
   Q.  Okay. So in New Orleans there is third-party inspection services that a prospective driver brings their car to to get checked out, and then that third party gives a thumbs up to Uber; is that right?
   A.  They complete a form which the driver then uploads to Uber's onboarding app.
   Q.  Okay. Great. You mentioned Uber's vehicle requirements are available online. I want to see if this is what you are referring to. So I'm looking at Exhibit 27. And this is a printout from Uber's website, and it says vehicle requirements, New Orleans. Do you see this on this document?
   A.  I do.
   Q.  Okay. And as we go throughout the day, I'll be pulling up documents. If you need me to scroll up or scroll down so you

**Page 28**

can more clearly look at the document, just let me know and I'll do that for you.
    Is this the document that you were referring to that lists the vehicle requirements for New Orleans?
   A.  It looks like it, yes.
   Q.  Okay. And so it says that the minimum requirements for a driver's vehicle in New Orleans is that it has to be 12 years old or newer, valid registration, and valid insurance, correct?
   A.  That's correct. It says that.
   Q.  Okay. And are those requirements that Uber places on vehicles in New Orleans?
   A.  I believe the vehicle requirement for age is actually 15 years or newer. So the website may be out of date.
   Q.  Okay. So those are the big picture requirements and then it looks like there's more specific requirements for various products like UberX; is that correct?
   A.  That's correct.
   Q.  So, for example, UberX has the additional requirements of the vehicle must be a four-door vehicle, have five

**Page 29**

factory-installed seats, air conditioning, no vans, box trucks, or similar vehicles, no aftermarket seating modifications, and some other requirements. These are all requirements for vehicles in UberX in New Orleans, correct?
   A.  Correct.
   Q.  And so if a vehicle doesn't meet these criteria, Uber will not allow it to participate in Uber's UberX product, correct?
   A.  That's correct.
   Q.  Similarly on Page 4 of this document, we have the requirements for UberXL, correct?
   A.  Correct.
   Q.  And like UberX, this requires a certain number of seats, in this case seven seats, and no aftermarket modifications, and no vans, correct?
   A.  That's correct.
   Q.  Okay. We talked earlier about WAV vehicles, correct?
   A.  Correct.
   Q.  And WAV vehicles are often vans that have aftermarket modifications to make

**Page 30**

1  them accessible for wheelchairs, correct?
2     MS. SCHUSTER:
3        Objection, scope.
4     THE WITNESS:
5        From what I understand, wheelchair
6     accessible vehicles can be both vans --
7     can be both vans and in some cases mini
8     vans that have been retrofitted to
9     include a ramp.
10 EXAMINATION BY MR. MOST:
11    Q.  Okay.  By retrofitted, you mean
12 aftermarket modification?
13    MS. SCHUSTER:
14       Objection, scope.
15    THE WITNESS:
16       I --
17 EXAMINATION BY MR. MOST:
18    Q.  I mean I think those words mean the
19 same thing.  Do they mean the same thing to
20 you?
21    MS. SCHUSTER:
22       Same objection.
23    THE WITNESS:
24       Are you asking personally?  They do
25    mean similar things to me personally.

**Page 31**

1     However, I'm not an expert in the
2     construction process for wheelchair
3     accessible vehicles.
4  EXAMINATION BY MR. MOST:
5     Q.  Sure.  And you don't know of any
6  distinction that Uber has between the word
7  retrofitted and aftermarket modification, do
8  you?
9     MS. SCHUSTER:
10       Objection, scope.
11    THE WITNESS:
12       I wouldn't want to speculate.
13 EXAMINATION BY MR. MOST:
14    Q.  Okay.  But you don't know of a
15 distinction that Uber uses between those two
16 terms?
17    A.  I don't --
18    MS. SCHUSTER:
19       Same objection.
20 EXAMINATION BY MR. MOST:
21    Q.  And so if some -- I'm sorry.  I
22 interrupted you.
23    A.  I was just saying I don't.
24    Q.  Okay.  Sorry.  So someone with a
25 WAV vehicle in New Orleans would not be able

**Page 32**

1  to, for example, drive UberX because it would
2  violate the no aftermarket seating
3  modification requirement for UberX in New
4  Orleans; is that correct?
5     A.  I --
6     MS. SCHUSTER:
7        Objection.  You can answer.
8     THE WITNESS:
9        I don't believe that's correct.  I
10    think the language on the website is
11    less clear than it could be because of
12    the --
13 EXAMINATION BY MR. MOST:
14    Q.  Okay.  How so?
15    A.  Because I believe that a driver
16 with a wheelchair accessible vehicle who, I
17 guess, attempted to onboard that vehicle in
18 New Orleans -- Actually I don't want to
19 speculate.  I don't know.
20    Q.  Okay.  Well, finish your thought.
21 You know of a particular WAV vehicle that was
22 being onboarded in New Orleans?
23    A.  I don't know the specific vehicle
24 that was being onboarded and so I don't want
25 to speculate.

**Page 33**

1     Q.  Okay.  But you know that there was
2  a WAV vehicle that was onboarding in New
3  Orleans?
4     A.  I don't.
5     Q.  So what were you describing just
6  now?
7     A.  I was speculating about how Uber
8  would react were a wheelchair accessible
9  vehicle submitted to the system, but I prefer
10 not to speculate.
11    Q.  And good.  We don't want you to
12 speculate.  We want to know what you know.
13 So I'm not going to get mad at you for trying
14 to not speculate.
15       Okay.  So at least we can agree
16 that a WAV vehicle would not meet these
17 requirements as listed and advertised on
18 Uber's website, correct?
19    MS. SCHUSTER:
20       Objection.  Assumes facts not in
21    evidence.  You can answer.
22    THE WITNESS:
23       The language listed here would
24    indicate that no aftermarket seating
25    modification are allowed.  It's unclear

**Page 34**

to me whether the wheelchair accessible vehicle includes aftermarket seating modifications or how you would define aftermarket seating modifications.

EXAMINATION BY MR. MOST:

Q. Okay. But to the extent that a WAV vehicle had aftermarket seating modifications, it would not qualify for the terms advertised for UberX in New Orleans, correct?

A. Based on this website, that's true. However, it's unclear to me whether this website is accurate and comprehensive.

Q. Okay. Well, you're prepared to talk about the conditions, makes, models, and other standards for vehicles in New Orleans, correct?

A. I am.

Q. Okay. Is there --

A. Could we take a brief break?

Q. We can, although if you talk to counsel or someone else during the break, I will ask you about it, so. But we can certainly take a break. How much time would you like, Bob?

**Page 35**

A. I understand. Five minutes would be great.

Q. Yes. Of course.

A. Thanks. I'll be back at 1:50 on reset.

Q. You don't have to be that precise. Just take your time.

A. Okay. Thanks.

(At this time a recess was taken.)

MR. MOST:
Janie, are we back on the record?

THE COURT REPORTER:
Yes.

EXAMINATION BY MR. MOST:

Q. And, Bob, I'll just ask you this after every break. Did you talk to anyone after the break?

A. I did. I spoke with Stephanie.

Q. Okay.

MR. MOST:
Stephanie, are you comfortable with me asking him about the content of your conversation?

MS. SCHUSTER:
I'm not.

**Page 36**

MR. MOST:
You are going to contend it's privileged?

MS. SCHUSTER:
Correct.

MR. MOST:
Okay.

EXAMINATION BY MR. MOST:

Q. Bob, did you look at any documents during the break?

A. I did not.

Q. Did you talk to anyone besides Stephanie?

A. No.

MR. MOST:
Stephanie, I'm going to ask him what the two of you discussed and you can just instruct him not to answer, but I do want to get the question on the record because I think that's not privileged.

EXAMINATION BY MR. MOST:

Q. So, Bob, what's going to happen is I'm going to ask you what you talked to Stephanie about, and then probably Stephanie

**Page 37**

is going to tell you not to answer before you say anything and then we will move on, okay?

A. (Nods head affirmatively).

Q. Bob, what did you -- What was the content of your conversation with Stephanie during the break?

MS. SCHUSTER:
Objection. Don't answer that. Calls for privileged information.

MR. MOST:
Okay. Great.

EXAMINATION BY MR. MOST:

Q. And, Bob, this is a question I meant to ask at the beginning, and this is not particular to you at all. I ask this of every deponent. Have you ever been arrested in the past?

A. I have not.

Q. Okay. So we are still looking at Exhibit 27, which is vehicle requirements. So we have looked through this document and you spotted one issue that you thought was not correct, which is that the requirement in New Orleans is actually 15 years or younger rather than 12 years, right?

### Page 110

```
 1        don't have any questions to pose to the
 2        witness.
 3            MR. MOST:
 4               Okay.  And I'll ask that all the
 5        exhibits we circulated be attached as
 6        exhibits to this deposition.  And, Bob,
 7        thank you very much for your time.  I
 8        appreciate it.  I know you took a big
 9        chunk of your afternoon here.  So thank
10        you for taking the time.
11               Same to you, Stephanie, Janie, and
12        Morgan.
13                *   *   *   *   *   *
14        (Whereupon, the testimony of the witness
   was completed at 2:50 p.m. CST.)
15
```

### Page 111

```
 1                    REPORTER'S PAGE
 2            I, JANIE J. DARBY, Certified Court
 3   Reporter, in and for the State of Louisiana,
 4   the officer before whom this sworn testimony
 5   was taken, do hereby state:
 6            That due to the spontaneous
 7   discourse of this proceeding, where
 8   necessary, dashes (--) have been used to
 9   indicate pauses, changes in thought, and/or
10   talkovers; that same is the proper method for
11   a Court Reporter's transcription of a
12   proceeding, and that dashes (--) do not
13   indicate that words or phrases have been left
14   out of this transcript;
15            That any words and/or names which
16   could not be verified through reference
17   material have been denoted with the phrase
18   "(phonetically spelled)."
```

### Page 112

```
 1                C E R T I F I C A T E
 2
 3       This certification is valid only for a
   transcript accompanied by my original
 4 signature and original raised seal on this
   page.
 5       I, Janie J. Darby, Certified Court
   Reporter, in and for the State of Louisiana,
 6 as the officer before whom this testimony was
   taken, do hereby certify that ROBERT RUPP,
 7 after having been duly sworn by me upon the
   authority of R.S. 37:2554, did testify as
 8 hereinbefore set forth in the foregoing 111
   pages; that the testimony was reported by me
 9 in the stenotype reporting method, was
   prepared or transcribed by me or under my
10 personal direction and supervision, and is a
   true and correct transcript to the best of my
11 ability and understanding; that the
   transcript has been prepared in compliance
12 with the transcript format guidelines
   required by statute or by rules of the board;
13 that I have acted in compliance with the
   prohibition on contractual relationships, as
14 defined by Louisiana Code of Civil Procedure
   Article 1434 and in rules and advisory
15 opinions of the board; and that I am not
   related to counsel or the parties herein, nor
16 am I otherwise interested in the outcome of
   this matter.
17
18    I hereby certify that the foregoing
19 transcript has been signed and stamped by me
20 on November 30, 2020.
21
22
23
                     JANIE J. DARBY
24                   CERTIFIED COURT REPORTER
                     CERTIFICATE NUMBER 85140
25
```

### Page 113

```
 1   Errata Sheet
 2
 3   NAME OF CASE: SCOTT CRAWFORD, ET AL vs UBER TECHNOLOGIES, INC., ET AL
 4   DATE OF DEPOSITION: 11/10/2020
 5   NAME OF WITNESS: Robert Rupp
 6   Reason Codes:
 7       1. To clarify the record.
 8       2. To conform to the facts.
 9       3. To correct transcription errors.
10   Page _____ Line _____ Reason _____
11   From _____ to _____
12   Page _____ Line _____ Reason _____
13   From _____ to _____
14   Page _____ Line _____ Reason _____
15   From _____ to _____
16   Page _____ Line _____ Reason _____
17   From _____ to _____
18   Page _____ Line _____ Reason _____
19   From _____ to _____
20   Page _____ Line _____ Reason _____
21   From _____ to _____
22   Page _____ Line _____ Reason _____
23   From _____ to _____
24
25                    _____
```

# EXHIBIT M



Help

NEW ORLEANS  SIGN IN  SIGN UP

# We're here to help

Driving & Delivering

Describe your issue

SEARCH

- HELP WITH A TRIP
- ACCOUNT AND APP ISSUES
- CUSTOMER AND MERCHANT ISSUES
- EARNINGS AND PAYMENTS
- A GUIDE TO DRIVING AND DELIVERING
- HELP WITH A FOUND ITEM
- SAFETY
- BOOKING APPOINTMENTS
- ACCESSIBILITY

DRIVING & DELIVERING    >    A GUIDE TO DRIVING AND DELIVERING    >

# Vehicle Requirements

All vehicles operating on the Uber platform must meet the following requirements:

- Your Vehicle must have 4 doors and be able to transport a minimum of 4 passengers
- Your vehicle must be 8 model years old or newer
- Your vehicle cannot be salvaged, reconstructed, or rebuilt. Rental vehicles are not allowed on the Uber platform.
- Your vehicle cannot have any cosmetic damage, missing pieces, commercial branding or taxi paint jobs.

Should you choose to drive a vehicle you do not personally own, you must be listed as an insured driver on this vehicle's insurance policy. Please note that Uber cannot approve a vehicle if the driver's name is not on the insurance document.

SIGN IN TO GET HELP



# Help

**SIGN UP TO RIDE**

**BECOME A DRIVER**

ENGLISH ▼

Visit Uber.com

Safety

Ride

Careers

Drive

Uber API

Business Travel

Newsroom

Delivery

Our Story

Food

Media

Helping Cities

Find a City

© 2022 Uber Technologies Inc.

Privacy

Terms